IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BLAKE SMITH, | ) | No. CV-F-06-1756 OWW/DLB |
| | ) | |
| | ) | ORDER GRANTING DEFENDANTS' |
| | ) | MOTION TO DISMISS FIRST AND |
| Plaintiff, | ) | SECOND CAUSES OF ACTION WITH |
| | ) | PREJUDICE AS PREEMPTED BY |
| vs. | ) | L.M.R.A. § 301 (Doc. 11) |
| | ) | |
| | ) | |
| PACIFIC BELL TELEPHONE | ) | |
| COMPANY, INC., et al., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

Plaintiff Blake Smith has filed a Complaint for Wrongful
Termination.  Defendants are Pacific Bell Telephone Company,
Inc., AT&T Communications of California, Inc., SBC Telecom, Inc.,
Communications Workers of America Local 9333 Union, AFL-CIO,
Communications Workers of America District 9 Union, AFL-CIO,
Shane Spencer, and Alan Brown.

Defendants Pacific Bell Telephone Company, Inc., AT&T
Communications of California, Inc., SBC Telecom, Inc. Shane
Spencer and Alan Brown move to dismiss the First and Second

1

Causes of Action pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, on the ground that they are preempted by Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185.[1]   This motion is joined by Defendant Communications Workers of America Local 933 Union, AFL-CIO, and by Defendant Communications Workers of America District 9 Union AFL-CIO.[2]

For the reasons set forth below, the motion to dismiss is GRANTED.

**A.   <u>Background</u>.**

In its General Allegations, the Complaint alleges in pertinent part:

> 11.  From on or about September 15, 1997 to on or about November 22, 2005, Plaintiff was employed, pursuant to both a written and oral employment agreement, by Defendants, PAC BELL, INC., AT&T, INC. AND SBC, INC. AND DOES 1 through 25, as, among other positions, a cable marker.  Plaintiff and Defendants further entered into a yearly bonus agreement on or about January 1, 2005, including subsequent modifications based on performance.

> 12.  At all times herein mentioned, Plaintiff performed his duties and obligations under the employment agreement referenced above, and Defendants, and each of them, knew Plaintiff had fulfilled all of the duties and conditions under the agreement.

---

[1]The Complaint also alleges causes of action for breach of the collective bargaining agreement, breach of the duty of fair representation, fraud, and defamation.

[2]In addition, Defendants move to dismiss the First and Second Causes of Action against Shane Spencer and Alan Brown on the ground that neither individual is a party to any contract with Plaintiff. Plaintiff does not respond to this ground for dismissal. Accordingly, Plaintiff concedes that dismissal of these causes of action against Defendants Spencer and Brown is required.

The First Cause of Action of the Complaint is for breach of the
implied covenant of good faith and fair dealing against all
Defendants and alleges in pertinent part:

> 15.   The employment agreement referred to
> above contained an implied covenant of good
> faith and fair dealing, which obligated
> Defendants to perform the terms and
> conditions of the agreement fairly and in
> good faith and to refrain from doing any act
> that would prevent or impede Plaintiff from
> performing any and all of the conditions of
> the contract that he agreed to perform, or
> any act that would deprive Plaintiff of the
> benefits of the contract.

> 16. Plaintiff performed all the duties and
> conditions of the employment agreement.

> 17.   Defendants knew that Plaintiff had
> fulfilled all his duties and conditions under
> the contract.

> 18.   On or about November 22, 2005,
> Plaintiff's employment was terminated by
> Defendants because, the defendants alleged,
> without proof, that based solely on GPS
> technology that the Defendant had lied about
> dropping his keys at the rear of the SBC
> Truck/Van.

> 19.   Specifically, on or about October 17,
> 2005, Plaintiff locked the door on the cab of
> the PAC BELL, SBC, or AT&T (hereinafter 'SBC,
> Truck/Van') vehicle with his key to protect
> his work equipment including a laptop
> computer and personal valuables which
> included the Plaintiff's checkbook, car keys,
> house keys and wallet, which were in his
> backpack.  It was necessary to use the key
> because the SBC, Truck's/Van's are not
> equipped with Power Door locks or a Solenoid
> for a push button mechanism on a key ring.
> The equipment is very Low-Tech.

> 20.   Plaintiff maintains that he dropped his
> keys at the rear of his SBC Truck/Van after
> grabbing necessary equipment.  The Plaintiff
> did not hear the keys hitting the pavement

3

because the area in which he was working was not yet developed.  It was all unpaved dirt in a new housing development.  The Plaintiff marked cables to make sure that cables were not accidentally dug up or cut in the process of this development.  The Plaintiff then attempted to mark cables for his employer, which was part of the duties he was expected to perform within the course of his employment ....

21.  Shortly thereafter, within a matter of seconds, the Plaintiff later determined that his keys fell out of his pocket and to the unpaved ground.  The Plaintiff wore loose fitting jeans in order to squat down to mark the cables and to be more effective and efficient at his job.  The Plaintiff then saw a white male ride by him on a bicycle.  (The Plaintiff now suspect that this white male was following PAC BELL/SBC/ATT&T employees to steal equipment, this will be explained in greater detail as the case progresses.)

22.  The Plaintiff proceeded to carry his cable marking equipment approximately 150-200 feet to the cable location and in so doing he heard and then witnessed some activity by his SBC, Truck/Van.  The activity was as follows.

23.  A White Male was seen near his bicycle squatting near the ground at the rear of the Truck/Van.  Plaintiff witnessed a white male, which the authorities will later determine to be an ex-SBC employee, reach down at the rear of the truck and pick up a shining object, the keys, from the ground.  This same individual unlocked the truck and proceeded to drive away while Plaintiff was approximately 150-200 feet away servicing and marking cables.

24.  Plaintiff gave chase to apprehend the vehicle but due to his distance and the ever increasing speed of the moving truck he was unable to close the distance between him and the SBC AT&T Truck/Van.

25.  Plaintiff immediately contacted the authorities to apprehend the suspect and the truck and the authorities recovered the

4

vehicle unharmed with the exception of a missing laptop computer.  The Plaintiff's backpack with his checkbook was still in the vehicle.

26.  On October 17, 2005, Plaintiff and JOHN MATERANGELO, former union shop steward, overheard a cell phone conversation between Plaintiff's Supervisor's [sic] Defendants SHANE SPENCER and ALAN BROWN that SPENCER was going to prove by Global Positioning Satellite (hereinafter 'GPS') that the Plaintiff was lying.  SHANE SPENCER apparently did not like the Plaintiff because of previous reports that were made about working and safety conditions.  The Plaintiff was continually subjected to a Hostile work environment and he had to seek medical attention for the stress that was placed on him.

27.  PAC BELL, SBC and AT&T fired the Plaintiff purportedly on the basis of the GPS tracking technology.  PAC BELL, AT&T and SBC and CWA had a written agreement which was distributed to all employees and the plaintiff as an Intended Third Party Beneficiary of said agreement, under which it was not to fire employees solely based on GPS tracking technology.  Despite this written agreement the Plaintiff was fired purportedly for lying about the location of his keys.

28.  Private GPS is simply not accurate enough to determine where one's keys are in relation to a vehicle.  Private GPS can only track up to 10 meters or 33 feet out of safety concerns over government officials.

29.  The Plaintiff further alleges and intends to prove, the Defendants [sic] GPS was not time synchronized with 9-1-1, the Plaintiff's cell phone provider and the Union yard.  Each of these time lines must converge at the exact same instant for the Defendants to have a basis to fire the Plaintiff, the truth is that the data does not prove their theory out.  This entire case is based on a snap shot of data which is reflected as a few minutes or maybe even seconds because the Defendants [sic] GPS data report rounds all

5

1    of its data up to the nearest minute.

2       30.  Further, the GPS and tracking devices
        only collect this snap shot of data every 5-7
3       minutes and within this interval the
        Plaintiff locked his truck, set his cones and
4       walked approximately 150-200 feet to the
        location of the job site.  There is simply no
5       way for the Defendants to refute this and
        prove that Mr. Smith is lying and that they
6       acted reasonably in terminating him.

7       31.  Thus, without good cause and
        justification and in reliance on faulty and
8       unreliable data, PAC BELL, AT&T and SBC
        wrongfully terminated Blake Smith the
9       Plaintiff in this suit.

10      32.  Defendant CWA and District 9 did not
        defend the Plaintiff as it was required to do
11      under the written contract (See **Exhibit A**,
        CBA 2004 Contract, Article 7, remainder too
12      voluminous for inclusion as exhibit,
        incorporated by reference as though fully
13      stated herein).  The Plaintiff was entitled
        to expedited arbitration due to his immediate
14      dismissal however, CWA and District 9 drug it
        proverbial feet and insisted on going through
15      their long, ineffective, and futile grievance
        process.  Plaintiff has been patiently wading
16      through the first three stages of the
        grievance process to date and now he has been
17      told that the last stage of arbitration will
        not occur.

18
        33.  The Plaintiff cannot afford to wait and
19      see what the union CWA and District 9 is
        going to do for him.  Every day that goes by
20      is another day in which he has to worry about
        where the money is going to come from to pay
21      his mounting bills.

22      34.  In addition, Plaintiff's bonus for the
        year with Defendants AT&T and SBC was about
23      to be due and payable on January 1, 2006, and
        Plaintiff would therefor have realized an
24      economic benefit, at Defendants' expense.
        Because of his termination, Plaintiff was
25      unable to continue his gainful employment or
        receive the bonus as agreed and consequently
26      he lost a substantial economic gain, which he

                              6

had been promised and to which he was
entitled.  Additionally, Plaintiff lost the
benefit of his continued employ, related
income and benefits.  Because of his
termination, Plaintiff was unable to continue
in his gainful employment and the benefit of
his earned bonus and consequently he lost a
substantial economic gain, which he had been
promised and to which he was entitled.
Plaintiff is informed and believes, and
thereon alleges, that Defendants' motives
were malicious and extraneous to the
employment relationship and were intended to
deprive Plaintiff of the benefits thereof,
while protecting Defendants' own economic
interests.

The Second Cause of Action is for breach of the implied covenant

of good faith and fair dealing not to terminate without good

cause and is alleged against all Defendants.  After incorporating

the preceding averments, the Second Cause of Action alleges in

pertinent part:

36.  Plaintiff was reasonably assured by
Defendants' actions, statements and conduct
that he would not be terminated arbitrarily.
Based on the foregoing, Plaintiff was led to
conclude that he and Defendants had entered
into an implied contract that Plaintiff would
not be discharged unless there was good cause
to do so.

37.  Plaintiff was employed by Defendants for
approximately eight (8) years.  Based on the
oral representations and promises and conduct
of Defendants, as set forth above, Plaintiff
had an employment contract with Defendants
that he would be employed by Defendants so
long as his performance was satisfactory, and
that Defendants would not discharge him
without good and just cause.

38.  The employment agreement referred to
above contained an implied covenant of good
faith and fair dealing, which obligated
Defendants to perform the terms and
conditions of the agreement fairly and in

7

good faith and to refrain from doing any act that would prevent or impede Plaintiff from performing any and all of the conditions of the contract that he had agreed to perform, or any act that would deprive Plaintiff of the benefits of the contract.

39.  Plaintiff performed all the duties and conditions of the employment agreement.  In fact, when the alleged lie is said to have occurred Plaintiff was working within his scope of employment as a cable marker.

40.  Defendants knew that Plaintiff had fulfilled all his duties and conditions under the contract.

41.  Into the relationship between each employer and employee, the State of California implies a covenant of good faith and fair dealing.  This covenant requires that each party to the employment agreement act with fairness and good faith toward the other, and that neither party should take any action to prevent the other from reaping the benefits of the relationship.

42.  Without misconduct on the part of Plaintiff and without good, just or legitimate cause, Defendants breached the subject employment agreement by engaging in conduct separate and apart from performance of obligations under the agreement, without good faith and in contravention of the implied agreement not to terminate Plaintiff's employ except for good cause, by among other things: Defendants terminated Plaintiff based on conjecture and faulty GPS terminology ... and to prevent Plaintiff from realizing the continued benefits of his employ including, but not limited to, the payment of bonuses that would have been realized had Defendants not terminated Plaintiff's employ prior to the end of 2005. Plaintiff is informed and believes, and thereon alleges, that Defendant's [sic] motives were retaliatory in nature due to his previously reporting unsafe work conditions as described more particularly herein, in addition to economic in nature and extraneous to the employment relationship and were

1        intended to deprive Plaintiff of the benefits
2        thereof, while protecting Defendant's [sic]
         future economic interests.

3  Exhibit A to the Complaint referenced in these causes of action

4  is a partial copy of the CBA, setting forth provisions of Article

5  7, "Problem Resolution Procedures".

6      **B.   <u>Governing Standards</u>**.

7      A motion to dismiss under Rule 12(b)(6) tests the

8  sufficiency of the complaint. *Novarro v. Black*, 250 F.3d 729,

9  732 (9th Cir.2001).  Dismissal of a claim under Rule 12(b)(6) is

10 appropriate only where "it appears beyond doubt that the

11 plaintiff can prove no set of facts in support of his claim which

12 would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-

13 46 (1957).  Dismissal is warranted under Rule 12(b)(6) where the

14 complaint lacks a cognizable legal theory or where the complaint

15 presents a cognizable legal theory yet fails to plead essential

16 facts under that theory. *Robertson v. Dean Witter Reynolds,*

17 *Inc.*, 749 F.2d 530, 534 (9th Cir.1984).  In reviewing a motion to

18 dismiss under Rule 12(b)(6), the court must assume the truth of

19 all factual allegations and must construe all inferences from

20 them in the light most favorable to the nonmoving party.

21 *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002).  However,

22 legal conclusions need not be taken as true merely because they

23 are cast in the form of factual allegations. *Ileto v. Glock,*

24 *Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003).  Immunities and other

25 affirmative defenses may be upheld on a motion to dismiss only

26 when they are established on the face of the complaint. *See*

9

1  *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *Jablon v.*

2  *Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)  When ruling

3  on a motion to dismiss, the court may consider the facts alleged

4  in the complaint, documents attached to the complaint, documents

5  relied upon but not attached to the complaint when authenticity

6  is not contested, and matters of which the court takes judicial

7  notice.  *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-706 (9th

8  Cir.1988).

9  **C.  Preemption**.

10  Section 301 of the LMRA provides federal jurisdiction over

11  "[s]uits for violation of contracts between and employer and a

12  labor organization."  A suit for breach of a collective

13  bargaining agreement is governed exclusively by federal law under

14  Section 301.  *Franchise Tax Bd. v. Construction Laborers Vacation*

15  *Trust*, 463 U.S. 1, 23 (1983).  As explained in *Builders &*

16  *Contractors v. Intern. of Elec. Workers*, 109 F.3d 1353 (9th

17  Cir.1997):

18  Federal law exclusively governs a suit for
breach of a collective bargaining agreement

19  under § 301 and preempts any state cause of
action based on a collective bargaining

20  agreement or whose outcome depends on
analysis of the terms of the agreement ...

21  Though preemption under § 301 of the LMRA is
implied, not express, the policy in favor of

22  national uniformity in labor law is so
powerful that it displaces state law with

23  respect to claims involving the
interpretation or enforcement of collective

24  bargaining agreements ....

25  Although the language of § 301 is limited to
'[s]uits for violation of contracts,' it has

26  been construed quite broadly to cover most

10

> state-law actions that require interpretation
> of labor agreements ... Many § 301 suits do
> not assert breach of the collective
> bargaining agreement and are nevertheless
> held preempted because they implicate
> provisions of the agreement ....

*Id.* at 1356-1357.  However, despite the breadth of Section 301

preemption, not every claim which requires a court to refer to

the language of a collective bargaining agreement is necessarily

preempted.  *Id.* at 1357.

     In *Livadas v. Bradshaw*, 512 U.S. 107 (1994), the Supreme

Court distinguished between claims which require interpretation

or construction of a labor agreement and those which require a

court simply to "look at" the agreement.  *Id.* at 123-126.

"[W]hen the meaning of contract terms is not the subject of

dispute, the bare fact that a collective bargaining agreement

will be consulted in the course of state-law litigation plainly

does not require the claim to be extinguished."  *Id.* at 124.  To

effectuate the goals of Section 301, preemption should be applied

only to "state laws purporting to determine 'questions relating

to what the parties to a labor agreement agreed, and what legal

consequences flow from breaches of that agreement'" and to tort

suits which allege "breaches of duties assumed in collective

bargaining agreements."  *Id.* at 123.  However, *Livadas* reiterated

that the "pre-emption rule has been applied to assure that the

purposes animating § 301 will be frustrated neither by state laws

purporting to determine 'questions relating to what the parties

to a labor agreement agreed, and what legal consequences were

11

intended to flow from breaches of that agreement ..., nor by parties' efforts to renege on their arbitration promises by 'relabeling' as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements ...." *Id.*

In *Cramer v. Consolidated Freightways, Inc.,* 255 F.3d 683 (9th Cir.2001), *cert. denied*, 534 U.S. 692 (2002), the Ninth Circuit explained the demarcation between claims preempted by Section 301 and those that are not:

> If the plaintiff's claim cannot be resolved without interpreting the CBA - as, for example, in *Allis-Chalmers*, where the suit involved an employer's alleged failure to comport with its contractually established duties - it is preempted ... Alternatively, if the claim may be litigated without reference to the rights and duties established in a CBA - as, for example, in *Lingle*, where the plaintiff was able to litigate her retaliation suit under state law without reference to the CBA - it is not preempted ... The plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense.
>
> Moreover, alleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim: adjudication of the claim must require interpretation of a provision of the CBA. A creative linkage between the subject matter of the claim and the wording of the CBA is insufficient; rather, the proffered interpretation argument must reach a reasonable level of credulity ... The argument does not become credible simply because the court may have to consult the CBA to evaluate it; 'look[ing] to' the CBA merely to discern that none of its terms is reasonably in dispute does not require preemption ....

12

1     ...

2     ... A state law claim is not preempted under
§ 301 unless it necessarily requires the

3     court to interpret an existing provision of a
CBA that can reasonably be said to be

4     relevant to the resolution of the dispute.

5 *Id.* at 691-693.

6     Plaintiff's claims for breach of the implied covenant of

7 good faith and fair dealing are preempted under these standards.

8 These causes of action allege that Plaintiff's termination was

9 without good cause.  The CBA provides that an employee may be

10 terminated only for good cause.  *See* Exhibit A, § 7.12 ("If the

11 Arbitrator finds that a dismissal was made without just cause",

12 the Arbitrator may take the steps set forth in that section).

13     In *Milne Employees Ass'n v. Sun Carriers,* 960 F.2d 1401,

14 1411 (9th Cir.1991), *cert. denied*, 508 U.S. 959 (1993), the Ninth

15 Circuit, after noting that a claim for breach of the implied

16 covenant developed in the employment context under California law

17 to protect the job security of at-will employees, held:

18     No comparable lack of job security ...
generally exists for unionized employees,

19     whose employment relationship is governed by
the collective bargaining agreement ...

20     Therefore, we have generally held that
section 301 preempts the California state

21     cause of action for breach of the implied
covenant of good faith and fair dealing when

22     an employee enjoys comparable job security
under a collective bargaining agreement.

23 *Id.* at 1411.

24     Dismissal of these causes of action is required because

25 "good cause" is not an implied term in the CBA, it is an express

26

term.  In *Guz v. Bechtel National, Inc.*, 24 Cal.4th 317, 349-350 (2000), the California Supreme Court rejected the argument that the implied covenant of good faith and fair dealing can impose substantive terms and conditions beyond those to which the contract parties actually agree":

> The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made* ... The covenant thus cannot '"be endowed with an existence independent of its contractual underpinnings."' ... It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.

Because the Complaint requires examination of the CBA's terms to determine the merits of Plaintiff's breach of covenant claims, the First and Second Causes of Action are preempted by Section 301.

Plaintiff argues that these causes of action are not preempted under the authorities cited above because the causes of action are not inconsistent with Section 301.  Plaintiff contends that the Supreme Court in *Allis-Chalmers v. Lueck*, 471 U.S. 202 (1985), cited three points in favor of preemption, none which applies to these causes of action.

Plaintiff points to the Supreme Court's conclusion that preemption under Section 301 is required because "only that result preserves the central role of arbitration in our 'system of industrial self-government."  471 U.S. at 219.  Plaintiff

14

1  argues that this concern does not apply "as the Union has

2  declined to proceed with arbitration."

3      However, as discussed below, that the Union declined to

4  proceed with arbitration is actionable under Plaintiff's cause of

5  action for breach by the Unions of their duty of fair

6  representation.

7      Plaintiff further points to the Supreme Court's statement:

8          Congress has mandated that federal law govern
           the meaning given to contract terms.  Since
9          the state tort purports to give life to these
           terms in a different environment, it is pre-
10         empted.

11  471 U.S. at 218-219.  Plaintiff asserts that "[i]t's a little

12  difficult to say which 'different environment' is of concern to

13  the Court" because "[t]he words of the collective bargaining

14  agreement are not being used to define the state causes of

15  action" which "live in state law independent of any collective

16  bargaining agreement."  If, Plaintiff asserts, the Supreme Court

17  meant different forums by the term "different environment",

18         that problem is not here.  In <u>Allis-Chalmers</u>,
           the case originated in and was litigated
19         through the entire State Court system of
           Wisconsin prior to reaching the U.S. Supreme
20         Court.  Here all causes of action are
           together in the same complaint before a
21         Federal Court in California.

22      This argument is without merit.  There are numerous cases

23  applying Section 301 preemption to actions by employees filed in

24  federal court against the employer for breach of the covenant of

25  good faith and fair dealing, which causes of action have been

26  dismissed as preempted by Section 301.

15

1    Plaintiff further contends that the two state law causes of
2  action are not intended to define the contractual relationship
3  between the employer and the union, citing *Allis-Chalmers:* "If
4  the state law tort purports to define the meaning of the contract
5  relationship, that law is preempted."  471 U.S. at 213.
6  Plaintiff argues:

7         That limited point is determined by federal
          law.  In this case, we are trying to define
8         the relationship between the employee on one
          side and the employer and the Union, on the
9         other side, where the Union has decided to
          cease all further efforts on behalf of the
10        employee.

11  Plaintiff further notes that *Allis-Chalmers* reiterated that the
12  "'dimensions of § 301 require the conclusion that substantive
13  principles of federal labor law must be paramount in the area
14  covered by the statute [so that] issues raised in suits of a kind
15  covered by § 301 [are] to be decided according to the precepts of
16  federal labor policy'" and that "'in enacting § 301 Congress
17  intended doctrines of federal labor law uniformly to prevail over
18  inconsistent local rules.'" 471 U.S at 209-210.   Plaintiff
19  argues:

20        Neither of these California causes of action
          is intended to alter the meaning of the words
21        of the collective bargaining agreement as it
          may be interpreted by the Federal courts.
22        Plaintiff agrees that allowing these two
          causes of action may affect the amount of
23        damages eventually found by a jury.  But that
          does not effect a 'change in interpretation'
24        of the words of the collective bargaining
          agreement.  Nor does it ' ... exert a
25        disruptive influence upon both the
          negotiation and administration of collective
26        bargaining agreements,' ... Here, we argue,

management and the union are on the same
side!  There is no worry over what was
conceded and what was won in negotiations.
All parties are simply being held to the
requirements of fairness upon which the
fabric of society lies.  The fact that
California law might extract a larger
monetary judgment from the defendants than if
this case arose in Oregon is not relevant and
not important.  The California causes of
action do not threaten the role of collective
bargaining in this state and do not impose
inconsistent local rules on the parties.  The
only thing it might do is subject parties to
larger damage awards but only if additional
facts are proved.

Plaintiff further argues that the two causes of action are

independent of the causes of action for breach of the collective

bargaining agreement and breach of the duty of fair

representation, again contending that "[t]hat limited point is

determined by federal law."  However, Plaintiff asserts:

While the state causes of action for breach
of the implied covenants are dependent on a
finding of a breach of the collective
bargaining agreement, the inquiry does not
end there.  After the plaintiff proves a
breach of the collective bargaining
agreement, which will entitle plaintiff to
damages as provided by section 301, a second
inquiry must be made, to determine whether or
not, the behavior of the employer constitutes
breach of the implied covenants.  The jury
will make that determination, not by
reference to the collective bargaining
agreement, but by factual analysis of the
behaviors, actions and/or inactions of the
employer and its agents.

In so arguing, Plaintiff cites *Lingle v. Norge Division of*

*Magic Chef, Inc.*, 486 U.S. 399 (1988).

In *Lingle*, petitioner was discharged for filing an allegedly

false workers' compensation claim.  The union representing

17

1  petitioner filed a grievance pursuant to the CBA that protected

2  employees from discharge except for "just" cause and provided for

3  arbitration of disputes between the employer and any employee

4  concerning the effect or interpretation of the CBA.  While

5  arbitration was proceeding, petitioner filed a retaliatory

6  discharge action in state court, alleging that she had been

7  discharged for exercising her rights under the state workers'

8  compensation laws.  After the action was removed to federal

9  court, petitioner's action was dismissed as preempted, the

10  district court and the Court of Appeals concluded that the

11  retaliatory discharge claim was inextricably intertwined with the

12  CBA provision prohibiting discharge without just cause.  In

13  reversing, the Supreme Court held in pertinent part:

14          We agree with the [Seventh Circuit's]
            explanation that the state-law analysis might
15          well involve attention to the same factual
            considerations as the contractual
16          determination of whether Lingle was fired for
            just cause.  But we disagree with the court's
17          conclusion that such parallelism renders the
            state-law analysis dependent upon the
18          contractual analysis.  For while there may be
            instances in which the National Labor
19          Relations Act pre-empts state law on the
            basis of the subject matter of the law in
20          question, § 301 pre-emption merely ensures
            that federal law will be the basis for
21          interpreting collective bargaining
            agreements, and says nothing about the
22          substantive rights a State may provide to
            workers when adjudication of those rights
23          does not depend upon the interpretation of
            such agreements.  In other words, even if
24          dispute resolution pursuant to a collective-
            bargaining agreement, on the one hand, and
25          state law, on the other, would require
            addressing precisely the same set of facts,
26          as long as the state-law claim can be

18

resolved without interpreting the agreement
itself, the claim is 'independent' of the
agreement for § 301 purposes.

486 U.S. at 408-410.

Relying on *Lingle*'s conclusion, Plaintiff "urges two possible levels of analysis here":

> One, liability of the state causes of action
> can be found by the jury by reference solely
> to state law. Or, Two [sic], after finding a
> breach of contract under Federal law, the
> jury can, after additional deliberations,
> make additional findings determining whether
> or not a breach of the implied covenants
> occurred.
>
> Under this second possible level of analysis,
> the state causes of action for breach of the
> implied covenants are dependent on a finding
> of a breach of the collective bargaining
> agreement but the inquiry does not end there.
> After the plaintiff proves a breach of the
> collective bargaining agreement, which will
> entitle plaintiff to damages as provided by
> Federal law, a second inquiry must be made to
> determine whether or not, the behavior of the
> employer constitutes breach of the implied
> covenants. **This is NOT determined by
> reference to the collective bargaining
> agreement**. This is determined by analysis of
> the behavior of the employer and its agents.
> It could be said that the state causes of
> action 'pop up' only after the jury
> determines the defendants have violated
> Federal law.

Plaintiff contends that *Guz v. Bechtel National, Inc., supra*, has no application here because Plaintiff is alleging that both the employer and the Union did not act fairly toward him. Plaintiff reiterates that the fairness of the employer and the Union's actions/inactions toward him is a factual determination to be made by a jury analyzing all of the conduct involved: "It is not

19

'wound up' in the words of the collective bargaining agreement. There is no 'excessive entanglement' of these very simple causes of action with the terms of the collective bargaining agreement."

Plaintiff is incorrect as a matter of law.  As explained in *Guz v. Bechtel National, Inc.,* 24 Cal.4th at 352:

> A breach of the contract may also constitute a breach of the implied covenant of good faith and fair dealing.  But insofar as the employer's acts are directly actionable as a breach of an implied-in-fact contract term, a claim that merely realleges that breach as a violation of the covenant is superfluous. This is because, as we explained at length in *Foley*, the remedy for breach of an employment agreement, including the covenant of good faith and fair dealing implied by law therein, is *solely contractual*.  In the employment context, an implied covenant theory affords no separate *measure of recovery*, such as tort damages ... Allegations that the breach was wrongful, in bad faith, arbitrary, and unfair are unavailing; there is no tort of 'bad faith breach' of an employment contract.

Plaintiff's Complaint alleges that the employer terminated him without good cause and that the Union failed to take Plaintiff's grievance to arbitration under the CBA.  The CBA requires good cause for termination.  Plaintiff's assertion that the employer and the Union did not act fairly toward him is simply another way of saying that his termination was not supported by good cause and that the Union breached the duty of fair representation.

Plaintiff further argues that "public policy concerns favor litigating the two state causes of action here because Management and the Union claim GPS and computers are 100% accurate and can thus fire employees based on reports from these systems".

1  Plaintiff asserts:

2      It is part of Plaintiff's case that this is
       not true and is in fact so bizarre an
3      assertion to make itself evidence of 'Bad
       Faith' and 'Unfair Dealing' that needs to be
4      litigated.  The willingness of the powers
       that be to "put all their eggs into one
5      basket" and to put all faith into machines
       and technology shows an unwillingness to be
6      convinced otherwise.  In other words, 'Don't
       argue with us.  Our minds are closed.  Past
7      performance does not matter.  The computer
       says so, you're fired.'

8

9      Furthermore, when the Unions had an
       opportunity to stop it they sat idly by and
10     let management trample over the rights of the
       plaintiff by stopping the arbitration process
11     in its proverbial tracks.  The Union could
       have done a number of things to preserve the
12     rights of the plaintiff but instead turned a
       blind eye.  It costs too much to fight in
13     arbitration was the refrain but the same
       Unions will now expend large resources to
14     fight Mr. Smith in Court.  An ironic if not
       misplaced allocation of resources.  Unions
15     purportedly exist to assist workers.  If the
       Unions actions, or rather, inactions are not
16     addressed here, there will be lasting
       repercussions affecting the Public at large.

17     ...

18     Imagine if management attempts to use this
       technology to 'clean house', on a grand
19     scale, of any employees who could not be
       fired for any other cause, but were found to
20     be 'lying' based on **100% accurate** GPS and
       Computer technology.  The actions and
21     inactions of management and Unions may have
       set some awful precedents in the use of
22     technology to monitor employees.  The Unions
       and the persons running the Unions have
23     chosen not to do so.  Who will be the voice
       of working men and women?  Their only voice
24     is here in the Federal court and we ask that
       their voices be heard through their
25     representative, the Plaintiff, Blake Smith.

26  Plaintiff's arguments are not persuasive.  The issue of good

1  cause for termination is set forth in the CBA and is a matter of

2  contract negotiation, not public policy.  With reference to the

3  alleged actions or inactions of the Unions in representing

4  Plaintiff in the grievance process under the CBA, the Complaint

5  alleges a cause of action for breach of the duty of fair

6  representation.  "The duty of fair representation is a statutory

7  duty implied from the grant to the union by section 9(a) ... of

8  exclusive power to represent all employees of the collective

9  bargaining unit."  *Retana v. Apartment, Motel, Hotel and Elevator*

10 *Operators Union, Local No. 14, AFL-CIO*, 453 F.2d 1018, 1021-1022

11 (9th Cir.1972).  The exclusivity of the agency imposes on the

12 union "a statutory obligation to serve the interests of all

13 members without hostility or discrimination toward any, to

14 exercise its discretion with complete good faith and honesty, and

15 to avoid arbitrary conduct."  *Vaca v. Sipes*, 386 U.S. 171, 177

16 (1967).  In *Carter v. Smith Food King*, 765 F.2d 916, 921 (9th

17 Cir.1985), the plaintiff's claim against the Union for breach of

18 the implied covenant of good faith and fair dealing was nothing

19 more than a recharacterization of the plaintiff's claim for

20 breach of the duty of fair representation and thus preempted by

21 federal labor law.

22    Finally, Plaintiff argues that "reliance on the GPS and

23 Engine Monitoring technologies is not dependent on an

24 interpretation of the collective bargaining agreement because the

25 union and the employer have agreed, by side letter or ancillary

26 agreement, not to allow GPS and Engine Monitoring technology to

22

be used as the basis for termination."   This side agreement is alleged in Paragraph 27 of the Complaint, but no copy is attached to the Complaint.

Paragraph 27 alleges that the side agreement was made between the employer and the union and that Plaintiff is the intended third party beneficiary of that side agreement.  By these allegations, Plaintiff suggests the good cause termination provisions of the CBA were modified by this side agreement. Under the preemption standards set forth above, Plaintiff's claims based on the alleged breach of the side agreement (a modification of the CBA) are also preempted by Section 301.

**D.   Conclusion**.

For the reasons discussed above, all Defendants' motion to dismiss the First and Second Causes of Action is GRANTED WITH PREJUDICE on the ground of preemption pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

IT IS SO ORDERED.

**Dated:    April 10, 2007**                             **/s/ Oliver W. Wanger**
                                            UNITED STATES DISTRICT JUDGE