1

2                    UNITED STATES DISTRICT COURT

3                    EASTERN DISTRICT OF CALIFORNIA

4

5

6    BLAKE SMITH,                          No. CV-F-06-1756 OWW/DLB

7              Plaintiff,                  MEMORANDUM DECISION RE
                                           DEFENDANTS COMMUNICATIONS
        v.                                 WORKERS OF AMERICA LOCAL 9333
8                                          UNION AND COMMUNICATIONS
     PACIFIC BELL TELEPHONE                WORKERS OF AMERICA DISTRICT 9
9    COMPANY, INC., et al.,                UNION'S MOTIONS FOR SUMMARY
                                           JUDGMENT (Docs. 38, 43) AND
10             Defendant.                  MOTIONS TO STRIKE (Docs. 109,
                                           114)
11

12              I.      INTRODUCTION.

13        Plaintiff brings this action pursuant to § 301 of the Labor-

14   Management Relations Act, 29 U.S.C. § 185, claiming that his

15   employer, defendant Pacific Bell, Inc. ("Pacific Bell"), terminated

16   him in violation of the collective bargaining agreement between

17   Pacific Bell and Plaintiff's union, defendants District 9 and Local

18   9333 of the Communications Workers of America, AFL-CIO ("CWA" or

19   "Union").  Plaintiff also alleges that the Union breached its duty

20   of fair representation by conducting a perfunctory investigation

21   and refusing to take his grievance to arbitration.  Plaintiff also

22   brings supplemental state law claims for fraud and defamation.

23        On December 6, 2006, Plaintiff filed a Complaint for Wrongful

24   Termination against Defendants Pacific Bell; AT&T Communications of

25   California, Inc.;[1] SBC Telecom, Inc.; Shane Spencer; Alan Brown;

26   Communications Workers of America Local 9333 Union AFL-CIO ("Local

27   _____

28        [1] AT&T Communications of California, Inc. and SBC Telecom,
     Inc. were dismissed pursuant to stipulation (F.R.C.P. 41(a)) on
     February 1, 2008.  (Doc. 62.)

9333" or "Local Union"); and Communications Workers of America District 9 Union AFL-CIO ("District 9").[2]  The Third Cause of Action alleges breach of the Collective Bargaining Agreement against all Defendants; the Fourth Cause of Action alleges fraud against the Union Defendants; the Fifth Cause of Action alleges breach of the duty of fair representation against Local 9333 and District 9; and the Sixth Cause of Action alleges defamation by slander against all Defendants.[3]

Before the court for decision are motions for summary judgment filed by Defendants Local 9333 and District 9.[4]

## II.   FACTUAL BACKGROUND.[5]

---

[2] The First and Second Causes of Action for breach of the implied covenant of good faith and fair dealing were dismissed with prejudice as preempted by L.M.R.A. § 301 by Order filed on April 13, 2007. (Doc. 29.)

[3] The motion for summary judgment filed by Defendants Pacific Bell Telephone Company, Inc.; Shane Spencer; and Alan Brown is resolved by separate Memorandum Decision.

[4] Defendants Local 9333 and District 9 filed separate motions for summary judgment.  Due to the overlapping facts and issues presented by these motions, the court addresses both Defendants' motions together.

[5] Unless otherwise noted, the facts are undisputed.  (See Stmt. of Undisp. Facts in Support of Def.'s Mot. for Summ. J. ("SUF"), filed by District 9 on Dec. 28, 2007).  Defendants Local 9333 and District 9 each submitted identical Statements of Undisputed Facts.  Plaintiff filed a single "Statement of Disputed Facts" in response to each of the pending motions for summary judgment.

Plaintiff objects to much of the evidence submitted by defendants on various grounds.  Virtually all of Plaintiff's objections are without merit.  Further, to the extent that Plaintiff's sole dispute with facts is based upon the

In October 2005, Plaintiff worked as a cable locator for Pacific Bell, a regional telephone company providing telephone and data transmission services to retail consumers over its telecommunications infrastructure and facilities. Pacific Bell and the Union are parties to a collective bargaining agreement ("CBA") which states that employees can only be terminated for "good cause." The CBA also contains a mandatory grievance clause and provides for final and binding arbitration. Plaintiff was a member of the Union, who was the exclusive bargaining agent for a bargaining unit of Pacific Bell employees that included Plaintiff.

Under the CBA, the Union may file a grievance based on any alleged violation of the CBA. (Dec of D. Flores ¶ 4.) A grievance may be addressed at three stages ("Step 1 through Step 3"), with each step involving a more senior company and union official.[6] (*Id.*) If the grievance is not resolved at Step 3, the Union may appeal the Company's decision to a neutral arbitrator. (*Id.*) The decision whether to take an unresolved grievance to arbitration is made at the district level. (*Id.* ¶ 6.) After the matter has been moved to the district level, the local union does not have any continuing obligation regarding the investigation, handling or processing of the grievance. (*Id.* ¶ 7.)

---

inadmissability of Defendants' evidence, and is not challenged by any admissible evidence submitted by Plaintiff, these facts are viewed as undisputed.

[6] Under CWA's grievance handling procedures, the local union is responsible for the preliminary investigation and the filing of a grievance. (Dec. of L. Sayre ¶ 5.) The local union is also responsible for participation in the first, second, and, if applicable, third steps of the grievance process. (*Id.*)

1    Pacific Bell vehicles are generally equipped with a Vehicle

2 Tracking Unit ("VTS"), which directly links to Global Positioning

3 Satellites ("GPS").   (Larson Dec. ¶ 3.)   Pacific Bell began

4 installing vehicle tracking devices in its service vehicles in

5 1998.   (Id.)   Pacific Bell equipped Plaintiff's work vehicle with

6 GPS several years prior to the events at issue in this case.   (Id.)

7 It is undisputed that Plaintiff knew his vehicle contained a GPS

8 monitoring device on October 17, 2005.   (SUF 20, 23.)

9    Pacific Bell's use of GPS data for disciplinary purposes is

10 authorized under the CBA.   (Dec. of G. Flores ¶ 3.)   In 2004, the

11 Union expressed concerns about Pacific Bell's use of GPS data for

12 employee discipline.   (*Id.* at ¶ 8-9.)   The Union proposed that GPS

13 data not be used at all.   (*Id.*)   Pacific Bell rejected this and

14 proposed that the parameters be spelled out in an enforceable side-

15 letter agreement.   (*Id.*)   On July 12, 2004, Pacific Bell and the

16 Union entered into "a side letter agreement:"

17        GPS is one of many management tools used to review
        employee performance or behaviors.  GPS will not be
18        used as the sole basis for disciplinary action, but
        may be used to substantiate information obtained
19        from   other   sources.   As   in   all   cases   where
        discipline   may   be   warranted,   management   will
20        conduct a complete and thorough investigation and
        may utilize GPS reports as an additional tool in
21        the investigation.

22 (Exh. B to Dec. of D. Flores.)

23    Pacific Bell uses GPS reports for a variety of reasons, such

24 as ensuring that employees are working at assigned locations at

25 particular times or to ensure that vehicles are being operated

26 safely within the speed limits.   (Dec. of G. Flores ¶ 8.)   The

27 reports generated by the GPS system report the following data: (a)

28 the time and location of the vehicle every time the ignition is

4

turned on and off; (b) the time and location of the vehicle every seven minutes; (c) the time and location of the vehicle every one mile driven; and (d) the time and location of the vehicle the first time it reaches 20 mph after the ignition is initially turned on. (Larson Dec. ¶ 4.)

According to Steve Larson, Manager of Vehicle Tracking Services since March 2001, GPS units attached to Plaintiff's vehicle on October 17, 2005 are extremely accurate. (Larson Dec. ¶ 1,5.) Although there are times that the system has experienced problems, those instances are rare. (Larson Dec. ¶ 5.) If the GPS unit is not functioning properly, the report will indicate a problem. (Id.) According to Larson, the GPS records from Plaintiff's vehicle on October 17, 2005 did not report any malfunction or error. (Larson Dec. ¶ 4, 10.) Larson also stated that there was no record of any service request concerning Plaintiff's GPS unit in October 2005. (Larson Dec. ¶ 10.)

**A.   Theft of Plaintiff's Work Vehicle**

    **1. Undisputed Facts**

On October 17, 2005, Plaintiff's company vehicle was stolen while he was locating cable in Keyes, California. (SUF 1.) At around 1:00 p.m., Plaintiff maintains he parked his vehicle, removed the keys from the ignition, locked the van, and proceeded to the rear of the van to remove his locating wand. (SUF 2; Dec. of A. Brown ¶¶ 8-9.) Plaintiff then began walking to the worksite, away from his company vehicle. (*Id.*) Pacific Bell had a rule requiring that company vehicles be locked. Plaintiff was aware of this company rule. (SUF 3.) Plaintiff's van was also equipped

with GPS equipment.  (SUF 4.)

According to Plaintiff, sometime after 1:00 p.m., he was locating cable approximately 150 feet away when he saw a bicyclist approach his vehicle.  (SUF 5.) Plaintiff noticed the bicyclist pick something up off of the ground and enter the cabin of his vehicle.  (*Id.*)  The bicyclist then proceeded to drive off in the vehicle.  (*Id.*)  Plaintiff immediately moved toward the van and dialed 911.[7]  (SUF  6-7.)  After concluding this short pursuit and the 911 call, Plaintiff phoned his supervisor, Alan Brown.[8]  (SUF 7.)

Plaintiff's stolen vehicle was located approximately 20-30 minutes later.[9]  (SUF 8-9.)  A CHP officer, who had arrived at the the theft location (Nunes and Washington Streets), drove Plaintiff to the location of his recovered work vehicle (Nora Avenue and Ninth Street). (SUF 9.)    Local Shop steward John Mastrangelo

---

[7]  The California Highway Patrol's Report concerning the incident states: "On October 17, 2005, at approximately 1310 hours, I was advised of a victim standing by for a report to be taken on a stolen vehicle that was taken while he was doing cable repairs on Nunes Road and Washington Avenue."  (Doc. 50-7, Ex. A, pp. 13.)

[8]  Brown's cellular phone records indicate an incoming call from Plaintiff's phone at 1:12 p.m. on October 17, 2005.  (Doc. 50-11, Ex. B, pp. 6.).  Brown was Plaintiff's first level supervisor from February 2005 through November 2005.  (SUF 65.)  Shane Spencer ("Spencer") was Plaintiff's second level supervisor from March 2003 through November 2005.  (Dec. of S. Spencer ¶¶ 1-2.)  Before Brown, Plaintiff's first level supervisor was Todd Bayes ("Bayes").  (SUF 65.)  Both Bayes and Brown reported directly to Spencer.  (Dec. of S. Spencer ¶¶ 1-2.)

[9]  Stanislaus County Sheriff's Incident Report states: "On 10-17-05 at approximately 13:15 hours: Detective Mendonca from the Sheriff's Department came on the radio saying he was in the Keyes area and had spotted a stolen 'SBC', telephone repair van being operated on 9th street in Keyes."  (Doc. 50-7, Ex. A, pp. 10.)

("Mastrangelo") and Brown were at the location of the recovered vehicle when Plaintiff and the officer arrived.[10]  (SUF 10.)  Upon inspection, the keys were in the ignition, but the vehicle was not running. (SUF No. 12.)  The vehicle was missing the company laptop, miscellaneous tools, and change from the ashtray.  (SUF No. 11.)

On October 18, 2005, Plaintiff attended an investigatory meeting concerning the theft of his work vehicle.[11]  (SUF 13.) Plaintiff, Mastrangelo, Brown, and another Pacific Bell representative attended the meeting.  (SUF 13.)  Brown told Plaintiff that GPS data from the van showed that it had been idling at the time of the theft.  (SUF 15.)  Plaintiff was given an opportunity to explain his side of the story. (SUF 14.)  Plaintiff denied leaving the keys in the vehicle while it was running and stated that the keys must have fallen off his keychain when he was locking the vehicle's rear doors.  (Dec. of A. Brown ¶ 9.) Although Plaintiff knew the company used GPS systems to verify technician whereabouts, he did not know it could tell if a vehicle was idling.  (SUF 20, 23.)  Plaintiff questioned the accuracy of the GPS data.  (SUF 16-17.)  At the conclusion of the meeting,

---

[10]  Following the theft, Brown also contacted Spencer and Asset Protection, the corporate security investigation department for Pacific Bell.  (Dec. of M. Ferrara ¶ 3.)

[11]  Prior to the meeting with Plaintiff, Brown contacted Steve Larson ("Larson"), who handles vehicle tracking services ("VTS") for Pacific Bell.  (Dec. of A. Brown ¶ 11.)  Brown asked Larson to pull the October 17, 2005 vehicle activity report for Plaintiff's vehicle.  (*Id.*)  Larson transmitted the vehicle's daily log to Brown and Spencer, who discussed the significance of the GPS coordinates.  (*Id.*)  Because the GPS data indicated that the Plaintiff's vehicle was idling during at the time of the theft, Brown called Plaintiff into a meeting later that day. (*Id.*)

1    Plaintiff was suspended pending further investigation.  (SUF 18.)

2        Following the October 18, 2005 meeting, Plaintiff spoke with

3    Mastrangelo and Lynn Johnson, president of Local 9333.  (SUF 24.)

4    When Plaintiff did not hear from Johnson within three days of the

5    October 18th meeting, he faxed her a letter saying he was seeking

6    legal counsel.  (SUF 25.)   A representative from District 9

7    contacted Plaintiff and told him that they were working on the

8    status of his investigation and Johnson would call him.  (SUF 26.)

9    Thereafter, Johnson called Plaintiff but could not give him any

10   information on the status of the investigation.  (SUF 27.)

11   Plaintiff holds the belief that Johnson "left him in the dark"

12   about the investigation.  (SUF 28.)  However, Plaintiff did speak

13   with Mastrangelo every other day during his suspension.  (SUF 30.)

14       On November 1, 2005, during his suspension, Plaintiff was

15   asked to meet with an investigator from the Pacific Bell's Asset

16   Protection Division.  (SUF 31.)  During this meeting, the Asset

17   Protection investigator presented Plaintiff with GPS reports

18   evidencing that the van was idling at the time the vehicle was

19   stolen.  (SUF 35.)  Plaintiff responded that he never left the

20   vehicle unattended and could not explain why the GPS report said

21   otherwise.  (SUF 34.)  At the conclusion of the meeting, the Asset

22   Protection investigator drafted a statement summarizing the

23   meeting, which Plaintiff was allowed to correct and edit before

24   signing.  (SUF 36.)

25       On November 18, 2005, Brown, Spencer, Ellen Singleton (Labor

26   Relations), and Roger Odom (Human Resources), met to discuss the

27   investigation, Asset Protection's findings, and Plaintiff's

28

                                    8

disposition.[12]   (Dec. of A. Brown ¶ 16.)   Brown and Spencer also provided the group with Plaintiff's previous disciplinary record – including the 2004 suspension for violating Pacific Bell's Code of Business Conduct. (Dec. of S. Spencer ¶ 8-9.) Brown and Spencer determined that the evidence demonstrated that Plaintiff's vehicle was idling when it was stolen, which meant the keys were in the ignition and that Plaintiff's report of the facts was false.   (Dec. of Brown ¶ 16.)   Spencer and Brown decided to terminate Plaintiff for not safeguarding company property and misrepresenting facts during the investigation, i.e., that Plaintiff lied. (*Id.*)

On November 22, 2005, Plaintiff attended a meeting with Mastrangelo, Johnson, Brown, Spencer, union representative Virginia Santos, and cable repair manager Warren Anderson.   (SUF 38-39.) Brown conducted the meeting and informed Plaintiff that he was terminated.   (SUF 39.)   Brown stated that the investigation determined that Plaintiff violated the Company's Code of Business Conduct by failing to safeguard company property and that he

---

[12] On November 2, 2005, Brown conducted a test of Plaintiff's vehicle to ensure the GPS unit functioned properly. (Dec. of A. Brown ¶ 15.)   Brown made four stops at specific addresses near where Plaintiff's vehicle was stolen. (*Id.*) Brown also restarted the vehicle along Plaintiff's route.   (*Id.*) After returning the vehicle to the garage, Brown had Larson pull the vehicle's GPS report.   (*Id.*)   The report confirmed that the GPS unit was functioning properly as all the starts, stops, and times matched Brown's contemporaneous notes of his movements earlier that day. (*Id.*)   Brown sent a summary of his findings to Spencer and Asset Protection.   (*Id.*)   From the fact that GPS tracks when the engine starts and stops, it can reasonably be inferred that a period after the engine start with no movement in location before the engine stop is idling, contrary to Plaintiff's assertion.   Plaintiff produced no expert testimony to the contrary.

misrepresented facts during the investigation.[13]  (SUF 40.)  Brown asked Plaintiff if he had any questions regarding his dismissal. (Dec. of Brown ¶ 17.)  Plaintiff responded in the negative.  (*Id*.) Plaintiff was then given his final paycheck and the meeting concluded.  (*Id*.)

Following Plaintiff's discharge, the Union filed a grievance on his behalf.[14]  The union asserted that the sole reason for Plaintiff's dismissal was the GPS report, which was in direct violation of the CBA and agreement governing Pacific Bell's use of GPS records.  (Exh. H, Dec. of L. Johnson; Exh. C, Dec. of D. Flores.)  Pacific Bell denied that GPS was the sole reason for his dismissal and maintained that Plaintiff's explanation regarding the theft was not plausible.  (*Id*.)  Plaintiff had three prior disciplinary incidents, the most serious of which resulted in the warning that he could be terminated if another incident occurred. The union requested that Plaintiff be reinstated to his position at Pacific Bell and made whole in all other respects.  (SUF No. 46; Exh. D, Dec. of D. Flores.)

---

[13] During his employment, Plaintiff had been disciplined for violations of Pacific Bell Policy and was advised, on at least four occasions, that any further incidents could lead to his termination. (Pl.'s Dep. 35:11-35:15, 54:1-54:7, 64:9-64:15.)

[14] A few days after his termination, Mastrangelo spoke with Plaintiff about the status of his grievance. (SUF 41.) Plaintiff believed the termination grievance was an extension of his suspension grievance. (SUF 42.) Further, Plaintiff stated in his deposition that he was unfamiliar with the grievance process. (SUF 44.) However, Plaintiff knew the union sought his reinstatement and a make-whole remedy. (SUF 45-46.)

A Step 1 grievance meeting[15] was held on December 7, 2005. (Dec. of Brown ¶ 16.)   Brown, representing Pacific Bell, and Johnson, representing Local 9333, attended the Step 1 meeting, at which time Johnson demanded that Plaintiff be reinstated.  (*Id.*) Brown refused the Johnson's request to reinstate Plaintiff and denied the grievance.  (*Id.*)   Brown also confirmed that Johnson received all of the documentation she requested, including copies of the asset protection report, interview notes, the GPS report, and the Stanislaus County Sheriff's report.  (Doc. 50-4, Exh. F, pp. 18.)

A Step 2 grievance meeting was held on January 5, 2006.  (Dec. of S. Spencer ¶ 17.)   Larry Gordon, Juan Saralegui, John Mastrangelo, and Lynn Johnson attended on behalf of the Union. (*Id.*)   Spencer and Tony Kobliska attended on behalf of Pacific Bell.  (*Id.*)   According to the minutes of the meeting, the group reviewed Plaintiff's grievance and Local 9333 representatives again requested that Plaintiff be reinstated to his full-time position. (Doc. 53, Exh. E, pp. 35.).   Lynn Johnson asked why Plaintiff was terminated instead of suspended for 30/60 days.   Kobliska stated that Plaintiff "was terminated because of his inherent risk to the business."  (*Id.*)   Pacific Bell refused to reinstate Plaintiff and denied the grievance.  (*Id.*)

A Step 3 grievance meeting was held on February 16, 2006. (Dec. of D. Flores ¶ 11.[16])   Larry Gordon and Lynn Johnson attended

---

[15] Although he did not attend the grievance hearings, Plaintiff was aware they occurred. (Pl.'s Dep. 148:9-150:22.)

[16] See "Step 3 Meeting Notes," Doc. 50-10, Exh. C to Dec. of D. Flores.

1  on behalf of the Union. (*Id.*) Murchison, Kubliska, and John

2  Berringer attended on behalf of Pacific Bell. (*Id.*) Local 9333

3  again asserted that Plaintiff was dismissed solely because of the

4  GPS report, contrary to the side-letter agreement. (*Id.*) Although

5  Pacific Bell admitted that it "used GPS heavily on this," it

6  asserted that his termination was "based on the vehicle being

7  stolen." (Id.) Pacific Bell maintained that Plaintiff's

8  explanation regarding the theft was not plausible, i.e, that

9  Plaintiff lied. (Id.) Pacific Bell refused Local 9333's request

10 to reinstate Plaintiff and denied the grievance. (*Id.*)

11      On March 9, 2006, District 9 notified the company of its

12 intent to arbitrate Plaintiff's grievance under Sections 7.10C,

13 7.10D, 7.11D, and 7.15 of the CBA. (*Id.* ¶ 12.) District 9

14 maintained that the termination was not justified and requested

15 that Plaintiff be reinstated, that the company remove all the

16 documentation concerning the incident, and that Plaintiff be made

17 whole in every respect. (*Id.*)

18      Plaintiff's arbitration was set for September 27, 2006. (SUF

19 49.) An arbitrator was selected and the parties prepared for

20 arbitration pursuant to the "Expedited Arbitration Procedures,"

21 which specified that rules of evidence would not be followed and a

22 court reporter would not be used. (Dec. of D. Flores ¶ 14.) Prior

23 to the arbitration, the Union and Pacific Bell exchanged

24 Plaintiff's personnel records, as well as numerous operating

25 manuals, GPS-related documents, and information about other

26 employees disciplined after reviewing GPS records. (Id. ¶ 13; Dec.

27 of R. Hjort ¶ 3.)

28      In May 2006, Plaintiff met with Lynn Johnson for a couple of

12

hours to review the incident, facts, and evidence against him. (SUF 48.)  Also in May, he met with David Rosenfeld, attorney for District 9, at his offices in Alameda, California to prepare for his September 27, 2006 arbitration.  (SUF 50.)  Plaintiff was told to collect more evidence, specifically, to obtain a copy of his call to 911 on October 17, 2005.  (SUF 51.)  A few days later Plaintiff notified the Union that he could not obtain a copy of the 911 tape because of the extended lapse in time.  (SUF 53.)

A week prior to the arbitration, Johnson and Rosenfeld called Plaintiff to discuss his grievance.  (SUF 54.)  Johnson and Rosenfeld told Plaintiff that District 9 would not take his grievance to arbitration because, in Rosenfeld's opinion, District 9 did not have enough evidence to win.  (SUF 54.)  Rosenfeld requested that Plaintiff meet with him to discuss the reasons District 9 withdrew his grievance.  (SUF 56.)  Consistent with his pattern of non-participation in the grievance process, Plaintiff declined to meet with Rosenfeld.  (SUF 57.)

On September 25, 2006, District 9 formally withdrew Plaintiff's grievance.  In a letter to Pacific Bell's arbitration counsel, Rosenfeld stated that District 9 decided not to pursue the grievance any further because "after reviewing the evidence, we determined that we could not prevail."  (Dec. of R. Hjort ¶ 5.)

### III.   PROCEDURAL BACKGROUND.

On December 6, 2006, Plaintiff filed a complaint for wrongful termination against Pacific Bell, AT&T, SBC Telecom, Inc., Spencer, Brown, Local 9333, and District 9.  (Doc. 2.) Count III alleges that Pacific Bell breached the CBA by terminating Plaintiff's

13

1    employment without good cause.   Also under Count III, Plaintiff

2    alleges that the union breached the CBA by failing to protect his

3    employment following his suspension and discharge.

4         Count IV alleges that the union defendants committed fraud

5    when they deceived Plaintiff into making monthly payments with full

6    knowledge that they would not fulfill their promise to protect his

7    interests.   Count V alleges that the union defendants breached

8    their duty of fair representation by performing a perfunctory

9    investigation and arbitrarily failing to pursue his claim to

10   arbitration.   Count VI recites state law claims for libel and

11   blacklisting, arising out of the defendants allegedly telling third

12   parties that Plaintiff was discharged for lying.   Plaintiff alleges

13   that these false statements have made it impossible for him to

14   acquire employment in Stanislaus County.

15        Defendants Local 9333 and District 9 filed their motions for

16   summary judgment on December 28, 2007. (Docs. 38, 43.)  With their

17   motions, Defendants filed Statements of Undisputed Facts,[17]

18   supported entirely by Plaintiff's own deposition testimony. (Docs.

19   40 & 45.)  Defendants seek judgment on the grounds that Plaintiff

20   cannot: 1) establish his breach of contract claim outside of § 301

21   of the LMRA; and 2) produce evidence to create a genuine issue of

22   material fact that the union's conduct was arbitrary,

23   discriminatory or in bad faith - the necessary showing to establish

24   a breach of the duty of fair representation.   Defendant argues the

25   state law claims should be dismissed because the unions: 3) acted

26

27        [17]   Defendants Local 9333 and District 9 filed identical

28   statements of undisputed facts. (Docs. 40, 45.)

**14**

1  lawfully; and 4) Plaintiff lacks evidence to support his claims.

2      Defendants' motions for summary judgment were noticed for
3  hearing on January 28, 2007.  By Stipulation and Order filed on
4  January 22, 2008, (Doc. 59), the hearing on the motions for summary
5  judgment was continued to March 17, 2008.

6      Plaintiff filed his oppositions to Defendants' summary
7  judgment motions on February 29, 2009.  (Docs. 69, 70.)  In
8  support of his opposition, Plaintiff submitted: (1) a single
9  Memorandum opposing all the motions ("Memorandum"); (2) the
10 affidavit of John Mastrangelo; (3) the affidavit of Michael
11 Caloyannides, PhD; and (4) a single Statement of Disputed Facts
12 ("PSDF").  (Docs. 72-74.)  Plaintiff did not file an opposition to
13 Defendants' statements of undisputed facts.

14     Plaintiff opposes summary judgment on grounds that the union
15 performed a perfunctory investigation and arbitrarily failed to
16 take his claim to arbitration.

17     On March 10, 2008, Defendants filed a reply and evidentiary
18 objections.  (Docs. 77 & 86.)  Defendants objected to the
19 affidavits of John Mastrangelo and Michael Caloyannides, PhD.,
20 (Docs. 78, 79, 82.), and Plaintiff's Statement of Disputed Facts.
21 (Docs. 80, 89.)

22     By Minute Orders filed on March 10, 2008, April 23, 2008, June
23 11, 2008, and August 5, 2008, the hearing on the motions for
24 summary judgment were continued due to the press of court business.
25 (Docs. 76, 97, 98, 100.)  The August 5, 2008 Minute Order continued
26 the hearing from August 11, 2008 to August 25, 2008.

27     On August 11, 2008, Plaintiff filed a Supplemental Affidavit
28 of Michael Caloyannides, PhD, in opposition to the motions for

15

summary judgment.  (Doc. 101.)  On August 12, 2008, Plaintiff filed his "Reply and Objections to Defendants' Separate Statements of Undisputed Facts" in opposition to the Employer Defendants' motion for summary judgment, (Doc. 102), his "Reply and Objection" to Defendant Local 9333's statement of undisputed facts in support of Local 9333's motion for summary judgment, (Doc. 103), and his "Reply and Objection" to Defendant District 9's statement of undisputed facts in support of District 9's motion for summary judgment, (Doc. 104).  Also on August 11, 2008, Plaintiff filed a "Supplemental Statement of Disputed Facts."  (Doc. 105).

On August 18th, 2008, Local 9333 filed a motion to strike the documents filed by Plaintiff on August 11th and 12th.  (Doc. 109.) District 9 filed their motion to strike the same documents on August 20th, 2008.[18]  (Doc. 112.)  The hearing on the motions to strike was set for August 25, 2008, the same day as the summary judgment hearing.

By Minute Orders filed on August 20, 2008, August 28, 2008, and September 2, 2008, the hearing on the motions for summary judgment and motions to strike were continued.[19]  (Docs. 118, 120, 121.)  The September 2, 2008 Minute Order continued the hearing from September 15, 2008 and to September 29, 2008.

The parties appeared before the court on September 29, 2008, for argument on Defendants' motions for summary judgment and motions to strike.  During the September 29, 2008 hearing, the

---

[18] District 9 filed an amended motion the same day.  (Doc. 114.)

[19] The hearings were continued either by stipulation or due to the press of court business.

1    Court stated to Plaintiff's counsel "if you can find me a case,

2    I'll let you do it, that says that the making a [sic] negligent or

3    an incomplete investigation that breaches the duty of fair

4    representation." On October 2, 2008, Plaintiff filed a "Submission

5    of Supplemental Authority After Oral Argument Re: Motion for

6    Summary Judgment". (Doc. 130.)

7         On October 7, 2008, Pacific Bell, Spencer, and Brown moved to

8    strike Plaintiff's Supplemental Authority on the ground that it was

9    not authorized to be filed by the Court and constituted a re-

10   briefing of arguments and authority already presented to the Court.

11   (Doc. 133.)  District 9 joined the motion on October 10, 2008.

12   (Doc. 134.)  The Court denied Defendants' motion on October 27,

13   2009 and granted Defendants an opportunity to file responsive

14   papers to the supplemental authority. (Doc. 135.)

15        On November 10, 2008, District 9 and Local 9333 filed

16   responses to Plaintiff's "Submission of Supplemental Authority

17   After Oral Argument Re: Motion for Summary Judgment." (Docs. 138

18   & 140.)

19

20   A.   Motions to Strike (Docs. 109, 114.)

21        These motions for summary judgment were filed by Defendants on

22   December 28, 2007 and noticed for hearing on January 28, 2007.  By

23   Stipulation and Order filed on January 22, 2008, (Doc. 59), the

24   hearing on the motions for summary judgment was continued to March

25   17, 2008.  The Stipulation and Order provided:

26              Any opposition or reply shall be filed in
                accordance with F.R.C.P. and Local Rules based
27              on the new hearing date [March 17, 2008].
                Plaintiff shall not seek a further continuance
28              of the Summary Judgment Motions and shall not

1    raise the need for additional time in
2    Plaintiff's Opposition to the Summary Judgment
     Motions.

3        Plaintiff's oppositions to these motions were filed on
4    February 29, 2008.   Although Plaintiff filed his Statement of
5    Undisputed Facts in opposition to the motions for summary judgment,
6    Plaintiff did not comply with the requirements of Rule 56-260(b),
7    Local Rules of Practice:

8            Any party opposing a motion for summary
             judgment or summary adjudication shall
9            reproduce the itemized facts in the Statement
             of Undisputed Facts and admit those facts that
10           are undisputed and deny those that are
             disputed, including with each denial a
11           citation to the particular portions of any
             pleading, affidavit, deposition, interrogatory
             answer, admission or other document relied
12           upon in support of that denial.

13       Defendants' reply papers were filed on March 10, 2008.   By
14   Minute Orders filed on March 10, 2008, April 23, 2008, June 11,
15   2008, and August 5, 2008, the hearing on the motions for summary
16   judgment was continued due to the press of court business.   The
17   August 5, 2008 Minute Order continued the hearing from August 11,
18   2008 to August 25, 2008.

19       On August 11, 2008, Plaintiff filed a Supplemental Affidavit
20   of Michael Caloyannides, PhD, in opposition to the motions for
21   summary judgment (Doc. 101).   On August 12, 2008, Plaintiff filed
22   his "Reply and Objections to Defendants' Separate Statements of
23   Undisputed Facts" in opposition to the Employer Defendants' motion
24   for summary judgment, (Doc. 102), his "Reply and Objection" to
25   Defendant Local 9333's statement of undisputed facts in support of
26   Local 9333's motion for summary judgment, (Doc. 103), and his
27   "Reply and Objection" to Defendant District 9's statement of
28   undisputed facts in support of District 9's motion for summary

18

judgment.  (Doc. 104.)  Also on August 11, 2008, Plaintiff filed a "Supplemental Statement of Disputed Facts," (Doc. 105), which purports to add Plaintiff's disputed facts Nos. 300 to 463. Plaintiff did not seek or obtain leave of Court to file these papers, which sought to correct the deficiencies and non-compliance with the rule of court in his earlier submissions.

Defendants move to strike Plaintiff's August 12, 2008 filings on the grounds that they were filed six months after Plaintiff was required to file them.  (Docs. 109, 112.)  Defendants note that, although the Court continued the hearing dates for the motions for summary judgment, the Court did not continue the filing deadlines and, in fact, all briefing on the motions for summary judgment was complete as of March 10, 2008.  Defendants further note that Rule 78-230, Local Rules of Practice, does not provide for the filing of sur-reply papers.

Plaintiff argues that Rule 78-230(c) allows the filing of the papers filed on August 11 and 12, 2008:

> Opposition, if any, to the granting of the motion ... shall be filed with the Clerk not less than fourteen (14) days preceding the noticed (or continued) hearing date.

Plaintiff asserts that, because the hearing date for the motions for summary judgment was continued by the Court several times, his supplemental opposition papers are timely and no leave of Court to file them was necessary.  This is categorically wrong. The law and motion rules do not provide for a game of ping-pong. The moving party has a right to file a motion a reply to the non-moving party's response.  The opposing party is permitted a response, not a sur-rebuttal.

1    By Declaration filed on August 22, 2008, Plaintiff's counsel

2  avers that he filed the Supplemental Caloyannides Declaration:

3         1.   A supplemental affidavit was filed by
             Michael  Caloyannides,  PhD  due  to  the
4             objections which were filed by defendants to
             his original affidavit.   Although we are
5             confident that his original affidavit stands
             on its own we determined that a supplemental
6             affidavit would be prudent just in case.

7         2.  It took many months of careful review of
             all  of  the  depositions,  police  reports,
8             affidavits,  SBC  Asset  Protection  Report,
             moving documents, and all other documents to
9             make  the  decision  ultimately  to  file  the
             supplemental affidavit.  Whether or not all of
10            these items will ultimately be found to be
             admissible by the court our expert reviewed
11            them.

12        3.  After this careful and thoughtful review
             Dr. Caloyannides, PhD provided his affidavit
13            to plaintiff's counsel which in turn was filed
             by  the  court  [sic].    The  date  that  the
14            affidavit was provided was mere days before it
             was filed.

15        4.   We  believe  that  this  supplemental
16            affidavit sets to rest once and for all the
             methods  and  practices  employed  by  Dr.
17            Caloyannides to make his findings.   These
             methods and practices are scientific and are
18            followed by his fellow scientists.   In an
             effort to aid the trier of fact we have filed
19            this affidavit.

20        5.  We believe that all of the documents that
             we have recently filed are timely given the
21            movement of the date set for hearing these
             motions to September 8, 2008 and given that
22            oral argument would have been made and will be
             made  at  that  hearing,  if  allowed.    We
23            anticipate that all sides will be making oral
             argument at the hearing.  We have anticipated
24            and organized our thoughts into writing to aid
             the trier of fact.   We will be specifically
25            addressing those points at oral argument if
             permitted to do so.   The defendants through
26            their respective counsel will likely also be
             permitted to address those points and perhaps
27            others as well.

28        6.  It has been pointed out that an affidavit

20

may be required to support the supplemental affidavit of Michael Caloyannides, PhD. Therefore, in an effort to comply with all local rules, we are now filing this affidavit.

7. We respectfully request that this affidavit and the affidavit of Michael Caloyannides, PhD be considered when making a decision about the Motion [sic] for Summary Judgment and Motions to Strike.

8. We carefully reviewed the local rules and Federal Rules of Civil Procedure when opposing these motions and perhaps we may have misinterpreted or failed to recognize this particular rule.

9. I sincerely apologize for the late filing of this affidavit.

Plaintiff's reading of Rule 78-230(c) misses the mark. Plaintiff's opposition to the motions for summary judgment was filed on February 29, 2008. Defendants' replies were filed on March 10, 2008, the date on which the Court first continued the hearing date on the motions for summary judgment due to the press of Court business. All briefing in connection with the motions for summary judgment was complete as of March 10, 2008. By the Stipulation and Order filed on January 22, 2008, Plaintiff agreed to file his oppositions to the motions for summary judgment by February 29, 2008. Plaintiff's construction of Rule 78-230(c) is further belied by the fact that Plaintiff did not file his supplemental opposition papers fourteen days prior to the April 28, 2008 hearing date, the June 16, 2008 hearing date, or the August 11, 2008 hearing dates set by the Court's Minute Orders. All of these hearing dates were continued by the Court after that two week period elapsed.

Plaintiff asserts that, if the Court does not construe Rule

21

78-230(c) as Plaintiff does, Plaintiff requests "tardy leave of court to cure our inadvertent error" and that Plaintiff "sincerely believed that we were in compliance with the rules."

Plaintiff's protestations are not reasonable given the sequence of events described above.   It is apparent that Plaintiff's untimely filings were not the result of a misreading of the Local Rule, but rather an attempt to correct his previous failure to comply with Rule 56-260(b), and to get a second bite of the apple in opposing the motions for summary judgment.

District 9 and Local 9333's motions to strike the late filings are GRANTED.[20]

#### IV. <u>LEGAL STANDARD</u>.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).   A party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

---

[20] District 9 filed a reply to Plaintiff's response to District 9's statement of undisputed facts and to Plaintiff's supplemental statement of disputed facts.   (Docs. 116 & 117.)   Local 9333 did not file a reply.   As its motion to strike was granted, District 9's reply is moot and will not be considered.

1    Where the movant will have the burden of proof on an issue at
2    trial, it must "affirmatively demonstrate that no reasonable trier
3    of fact could find other than for the moving party." *Soremekun v.*
4    *Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also*
5    *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir.
6    2003) (noting that a party moving for summary judgment on claim as
7    to which it will have the burden at trial "must establish beyond
8    controversy every essential element" of the claim) (internal
9    quotation marks omitted).  With respect to an issue as to which the
10   non-moving party will have the burden of proof, the movant "can
11   prevail merely by pointing out that there is an absence of evidence
12   to support the nonmoving party's case." *Soremekun*, 509 F.3d at 984.
13   When a motion for summary judgment is properly made and supported,
14   the non-movant cannot defeat the motion by resting upon the
15   allegations or denials of its own pleading, rather the "non-moving
16   party must set forth, by affidavit or as otherwise provided in Rule
17   56, 'specific facts showing that there is a genuine issue for
18   trial.'" *Id.* (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S.
19   242, 250 (1986)).  "Conclusory, speculative testimony in affidavits
20   and moving papers is insufficient to raise genuine issues of fact
21   and defeat summary judgment."  *Id.*

22        To defeat a motion for summary judgment, the non-moving party
23   must show there exists a *genuine* dispute (or issue) of *material*
24   fact.  A fact is "material" if it "might affect the outcome of the
25   suit under the governing law."   *Anderson*, 477 U.S. at 248.
26   "[S]ummary judgment will not lie if [a] dispute about a material
27   fact is 'genuine,' that is, if the evidence is such that a
28   reasonable jury could return a verdict for the nonmoving party."

*Id.* at 248.   In ruling on a motion for summary judgment, the district court does not make credibility determinations; rather, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

## V.   DISCUSSION.

### A.   Plaintiff's Evidence

#### 1.   Affidavit of John Mastrangelo

In opposition to Defendants' motions for summary judgment, Plaintiff presented an affidavit from Mastrangelo as rebuttal evidence.   Defendants District 9 and Local 9333 object to large portions of Mastrangelo's affidavit on various grounds. Specifically, Defendants raise the following objections:

> 1.   I was expelled from the union Local 9333 and District 9, and forced to retire from the company as an unrepresented employee technician during the first week of January, 2006.   Prior to that time, I was union steward in charge of sitting in on grievances. However, much to my dismay, I had no power nor budget to investigate grievances.

Defendants District 9 and Local 9333 object to the first paragraph of Mastrangelo's affidavit on relevance grounds. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."   Fed R. Evid. 401.   Rule 402 provides that "[all] relevant evidence is admissible [...] Evidence which is not relevant is not admissible."   Although definition of "relevant evidence" is broad, it has limits; evidence must be probative of a fact of consequence in the matter and must have

**24**

1  tendency to make existence of that fact more or less probable than

2  it would have been without evidence. *U.S. v. Curlin*, 489 F.3d 935,

3  943-44 (9th Cir. 2007).

4      The circumstances underlying Mastrangelo's retirement and his

5  difficulties as a steward have no connection to Plaintiff's claims

6  against the Union Defendants. Mastrangelo's prior budgetary

7  concerns are irrelevant to the investigation and grievance

8  procedures at issue in this litigation. There is no evidence the

9  union's investigation of plaintiff's case was compromised by any

10 budget issues. The first paragraph of Mastrangelo's affidavit has

11 nothing to do with the issues of this case, nor is it probative of

12 any material issue, except to show his bias against the union.

13 Defendants' objections are sustained.

14      2.   In 2004, I trained Mr. Smith for Cable locating
            duties as a 'fill in' technician. He became full time
15          technician after June 15, 2005 due to another locator
            have been arrested for murder.
16

17     The above portion of Mastrangelo's affidavit is irrelevant to

18 Plaintiff's claims. Plaintiff's status as a "fill in" technician

19 and the details behind his advancement to a full-time position are

20 not connected to his claims of fraud, defamation, or breach of the

21 duty of fair representation. Defendants' objection is sustained.

22      3.   Blake Smith has also never been untruthful with
            co-workers or supervision. SBC/Pac Bell brings up
23          prior discipline of Mr. Smith, but what they don't
            state is that Mr. Smith provided the company with
24          honest answers and has never been accused of not
            telling the truth at least until the incident that led
25          to his termination.

26      Defendants District 9 and Local 9333 object to the above

27 portion of Mastrangelo's affidavit on grounds it contains

28

                              25

conjecture and was not made on the basis of his personal knowledge. Rule 56(e) of the Federal Rules of Civil Procedure requires that affidavits supporting and opposing a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters therein."[21]

Manstrangelo recites that he has "personal knowledge" of the matters set forth in his affidavit based on his "then position as Union Steward."  Yet the claims contained in his third paragraph require knowledge about every instance in which Plaintiff spoke with SBC/Pacific Bell officials and/or union representatives.  As a union steward, and not a manager or human resources associate, Mr. Mastrangelo was not present nor in a position to acquire such comprehensive knowledge.    Ms.  Mastrangelo's  opinion  about Plaintiff's  credibility  is  generally  inadmissible,  except  as provided by Fed. R. Evid. 608.    Plaintiff has not provided a foundation for the opinion testimony on credibility, which would only  be  for  a  person's  reputation  in  the  community  for truthfulness.  Defendants' objections are sustained.

> 4. In that incident, and the events leading to his dismissal, I am confident based on my knowledge of his work history, that on the date of the incident that he simply dropped his keys while doing cable locates.

---

[21] In some cases it can be inferred from the affidavit that the personal knowledge requirement is met. *See Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (inferring from the affiant's position and nature of participation in the matter, as an investment banker who represented the defendant in certain negotiations, that he had personal knowledge of the circumstances of those negotiations and the intent of the parties with respect to the agreement reached). Barthelemy is distinguishable; such a situation cannot be inferred from the present facts.

> Immediately following the incident, Blake Smith
> contacted me via cell phone and relayed the facts to
> me as follows: Myron David Riddle came riding his
> bicycle upon the site where the keys had been dropped
> due to the fact that Blake had been wearinng
> carpenters pants (loose fitting pants). Riddle then
> picked up the keys, walked over to the drivers side of
> the vehicle, unlocked the drivers side door, started
> the vehicle and sped off in great haste.

Defendants District 9 and Local 9333 object to the first sentence of paragraph four on grounds it contains conjecture and was not made on the basis of his personal knowledge. The objection is sustained for the reasons stated above. The witness was not present. He expresses no more than inadmissible opinions that lack personal knowledge. Defendants object to the remaining portion of paragraph four on hearsay grounds. To the extent that the statements are offered to prove the truth of the matter asserted, they are inadmissible. See Fed R. Evid. §§ 801-802 ("Hearsay is not admissible except as provided by the Federal Rules of Evidence [...]").

Paragraph five of Mastrnagelo's affidavit spans seven pages and contains sixteen subparts. Defendants District 9 and Local 9333 object to the bulk of paragraph five on the grounds it contains inadmissible hearsay, conjecture, speculation, and was not made on the basis of his personal knowledge. Defendants' objections to the fifth paragraph of Mastrangelo's affidavit are, in the majority, sustained. For example:

> 5(a). I repeatedly told the union President Johnson,
> that GPS was not reliable. I informed them that it
> needed to be investigated. I was simply ignored. They
> did zero (0) investigation. They accepted the findings
> of the company as fact.

27

Defendants' objections are sustained.   There is nothing in the affidavit to establish Mr. Mastrangelo is knowledgeable about or qualified to give an expert opinion on the reliability of GPS equipment.   The affidavit shows no basis for Mastrangelo to form a legal opinion as to conduct sufficient to establish a breach of the duty of fair representation.[22]

> 5(c).   The union President Lynn Johnson would continually state "We will take this case to arbitration". "We don't investigate at this stage, we wait until arbitration for that". She also told me "The company investigation states that Blake lied". I would ask about what proof the company had and she would say "he lied".

Paragraph five, subpart (c), includes several hearsay statements, including statements attributable to Lynn Johnson regarding how the Union would handle Plaintiff's grievance, her report of the company's investigation that Mr. Smith "lied," and the alleged extension of time for the company to respond to the second step grievance.   Hearsay is a statement, other than one made by the declarant, offered in evidence to prove the truth of the matter asserted.   Fed. R. Evid. 801(c).   Hearsay is not admissible except as provided by the Federal Rules of Evidence, or other rules prescribed by the Supreme Court.   Fed. Rule Evid. 802.   These statements were made outside of court, not by the affiant, and are offered in evidence to prove the truth of the matter asserted.[23]

---

[22] As discussed in Part V(B)(2), *infra*, there are few cases in which expert testimony on a union's duty of fair representation was found necessary or useful to a jury. *Pease v. Production Workers of Chicago and Vicinity Local 707*, 2003 WL 22012678 at *4-*5.

[23] Plaintiff has not established these statements come within any of the exceptions to the hearsay rule.

Such inadmissible hearsay evidence cannot be considered on a motion for summary judgment.

> 5(e).  The responding officers were never interviewed by the union despite the fact that Mr. Smith had the cell phone numbers for both the CHP officer and Sheriff Deputy who had taken reports on the date of the incident. Both were interested in speaking to the company and union on behalf of Mr. Smith. This was never pursued by anybody at the union or the company. The company simply read what they wanted from the police reports and there was never any substantiation from the officers despite the fact that they were reachable.

Defendants' objections concerning paragraph five, subpart (e), are sustained.  There is no foundation or source of knowledge for Mastrangelo's opinion regarding the police officers' interest. There is no basis to establish personal knowledge for Mastrangelo's conclusion that nobody spoke to the officers and that the company simply accepted the reports at face value.  See Fed. R. Civ. Proc. 56(e).

> 5(f). The union never questioned the fact that Roxanne Diaz was conducting the investigation for the company when she had been caught in lies on numerous occasions in the past during other investigations. She should have never been investigating anything let alone something as important as Mr. Smith's future employment.

> 5(g). The union never questioned why Alan Brown was allowed to "test" the vehicle Mr. Smith was driving and why it took several weeks after the incident for it to happen. Mr. Brown has no qualifications with GPS to be testing its accuracy. He has no advanced degrees, he had little to no experience with the @road system at the time because it had been installed two (2) weeks prior to this incident. He also had no experience in pulling the @road GPS reports so these could not have been done by him.

Paragraph five, subparts (f) and (g), contain inadmissible hearsay and improper opinions which cannot be considered to

29

establish a genuine issue of material fact.   Plaintiff offers improper opinion testimony and lacks personal knowledge concerning Ms. Diaz's competence as an investigator and what investigation Brown could perform.   To be cognizable on summary judgment, evidence must be competent.   It is not enough for a witness to tell all she knows; she must know all she tells.   *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028 (9th Cir. 2001).   Defendants' objections are sustained.

> 5(h).  The unions never questioned whether the company protected its own equipment namely its vehicles. I know for a fact that the company does not change the keys for each of the trucks every time an employee leaves the company either voluntarily or when they are terminated. I also know that one set of keys can open multiple trucks and including starting their ignitions. The company was well aware of this and used it to their advantage when an employee would call in sick. Rather than have to go get the keys from him, they would just go to the middle of the yard and grab a hand full of keys and the guys would go from truck to truck until one opened and started. This is certainly not a very good security policy.

The claims contained in Mastrangelo's fifth paragraph, subpart (h), require knowledge about every instance in which Pacific Bell officials questioned individuals about its equipment.   The claims contained in paragraph 5(h) also require Plaintiff to have comprehensive knowledge about Pacific Bell's internal key/vehicle policies, as well as every instance in which an employee did not report to work because of an illness.   Mr. Mastrangelo has no basis nor was he in a position to acquire such comprehensive knowledge. There is no information to establish personal knowledge. The statements contained in paragraph 5(h) cannot be considered on summary judgment.

> 5(i).  The  union  never  questioned  the  disparate
> treatment  or  Hostile  Treatment  that  Mr.  Smith
> sustained after he reported Mr. Dan Devine and an
> incident between Devine and another employee that
> occurred on or about July of 2004, in which Devine
> brandished a Shot gun at a fellow employee.

Testimony calling for a legal conclusion is an inappropriate matter for expert testimony. *See U.S. v. Scholl*, 166 F.3d 964, 973 (9th Cir. 1999) (excluding expert testimony offering a legal conclusion); *Aguilar v. International Longshoremen's Union*, 966 F.2d 443, 447 (9th Cir.1992) (noting matters of law are for the court's determination, not that of an expert witness); *see also Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509-10 (2d Cir.1977) (expert testimony consisting of legal conclusions inadmissible).  Mastrangelo inappropriately forms and offers legal conclusions whether Plaintiff suffered "disparate" and/or "hostile" treatment.  These opinions are inadmissible.

> 5(l). It was also discovered that Mr. Riddle was an
> Ex-SBC employee and also had priors for Auto Theft.
> This was never pursued by the union. This demonstrates
> that he has familiarity with the SBC trucks and would
> know about the multiple truck, single key security
> breach. Especially because the company never re-keyed
> its vehicles after changing employees. Therefore, even
> if the keys would not have been on the ground, the
> thief Riddle could have gained access to the vehicle.

There is no information to establish personal knowledge regarding Mr. Riddle's alleged past; nor is there any information to support the claim that Mr. Riddle knew about the multiple key/single truck problem.  Further, to the extent that the statements are offered to prove the truth of the matter asserted, they are inadmissible and improper opinions.  Fed R. Evid. §§ 801-802 ("Hearsay is not admissible except as provided by the Federal

31

1    Rules of Evidence [...]").   The statements contained in paragraph

2    5(1) cannot be considered on summary judgment.

> 5(m). On or about December 21st of 2005, Lynn Johnson
> unilaterally contacted the company to notify them that
> the deadline to respond to the 2nd step grievance was
> about to expire and she asked the company whether they
> wanted an extension of time to respond. This is very
> significant because pursuant to the CBA Chapter 7.05
> D2b. the failure to timely respond within 30 days by
> the company results in the grievance being resolved in
> favor of the union. This meant that Blake Smith would
> have had his job back prior to Christmas of 2005.
> Instead Local 9333, Union President Lynn Johnson, took
> it upon herself to extend the response time to January
> 5,2006. Her purported rationale was "Well, no one will
> show up from the company anyway, so it will just be a
> waste of everyone's time to go during vacation time".
> The problem with that rationale is that a failure to
> show up is a bad faith failure to bargain by the
> company. This means that Blake Smith would also have
> gotten his job back by the company's failure to
> appear. Therefore, this excuse held no water.  I still
> don't buy it.

     Defendants object to paragraph five, subpart (m), on grounds

it contains conjecture and was not made on the basis of his

personal knowledge. Defendants' objections are well-taken.  There

is no evidence to support the speculative legal conclusion that the

grievance would have been resolved in Mr. Smith's favor.  There is

also no showing that Mr. Mastrangelo is qualified to opine on what

conduct constitutes a bad faith failure to bargain, an inadmissible

legal opinion.  Defendants' objections are sustained.

> 5(o). The other significant issue that was never
> raised is that Blake Smith had no reason to lie. There
> are at least two (2) specific instances that Mr. Smith
> and I had and have specific knowledge of, where
> employees of the defendants left their keys in their
> vehicles and the vehicles were stolen by third
> parties. In the first case, an employee by the name of
> Mr. Reynolds was at McDonalds in Modesto and it
> resulted in a three (3) day suspension. The second
> case, Mr. Cordova was at a B-Box in Modesto and it
> resulted in a one (1) day suspension. Mr. Smith was
> aware of the consequences for leaving his vehicle

running and unattended and despite this knowledge he did not do so. The penalty was not as severe as the company is making it out to be. Mr. Smith has taken a lot of grief for being honest about what occurred on that October afternoon. These are yet two (2) more examples of disparate treatment by the union and company.

Defendants object to the above portion of Mastrangelo's affidavit on grounds it contains conjecture, hearsay, and was not made on the basis of his personal knowledge.   For the reasons discussed above, the objections are sustained.   Most of the information is improper argument.   The last sentence of Paragraph 5(o) is also stricken because Mastrangelo inappropriately reaches legal conclusions on whether Plaintiff suffered "disparate treatment."

A substantial portion of Mastrangelo's fifth paragraph and its subparts are inadmissible to establish a genuine issue of material fact.   Mastrangelo's statements concerning how the union failed in its duty to adequately represent Plaintiff, his opinions on the functionality of the GPS system, his criticisms of Lynn Johnson, and his musings on vehicle keys are all improper argument and are sustained.

6.   I grew tired of leaving over a dozen phone calls, to the Union President, Lynn Johnson, and attempted to reach Tony Bixler three (3) times by telephone. After finally receiving a response from him on my fourth ... attempt, he stated that he himself was not able to reach Lynn Johnson.   A letter regarding the disparate treatment I observed firsthand was prepared by me and then was presented to Lynn Johnson at Blake Smith's 2nd step grievance meeting, on or about January 5, 2005, and President Johnson approved it.   I then went ahead and cc'd it to every person of influence in the company and union at each level to try and evoke change [...]

7.   On or about January 7, 2005 I received a call from President Lynn Johnson, which stated I was expelled from the local 933 union and District 9 union at the

demand of Tony Bixler at the Union's District 9 office because of my letter.

8.   I have always been told by the company to report grievances and that was all that was being done but since I could not get the attention of anybody, I sent the letter.   I was simply trying to find out what sort of investigation the union was doing but I was being ignored like Blake Smith.   I lost my job over it like Blake Smith.   At least I was able to keep my retirement. Although I am concerned about testifying, I can no longer remain silent over the concern I have that the company might find a way to take any retirement from me.

9.   I know why the union at each level and company's attempted to silence me and it was because they conducted zero (0) investigation, they simply went with the SBC Asset Protection Report which was one (1) sided and easily refuted if only they had tried. After I had been forced into retirement the union simply ignored Blake Smith until he hired an attorney to find out the status of the case.

Defendants District 9 and Local 9333 object to paragraphs 6-9 of Mastrangelo's affidavit on grounds they are speculative, irrelevant, lack foundation, contain conjecture and were not made on the basis of personal knowledge.   In addition, the statements are argumentative opinions.   Defendants' objections are sustained.

In paragraphs 6 through 9 of Mastrangelo's affidavit, he gives several examples of his interactions with the local union, especially Lynn Johnson.   Mastrangelo also details the reasons behind his departure.   Mastrangelo's statements concerning the circumstances of his dismissal and his continuing conflict with the local union are not probative of any consequential facts in this litigation, except his bias.   Fed. R. Evid. 401- 402; *U.S. v. Curlin*, 489 F.3d 935, 943-44 (9th Cir. 2007).   The statements contained in paragraph nine are speculative and argumentative. They are not admissible.   See *National Steel Corp. v. Golden Eagles*

34

*Ins. Corp.,* 121 F.3d 496, 502 (9th Cir. 1997) (conclusory statements without factual support are insufficient to defeat a motion for summary judgment.).  Mastrangelo simply did not have the personal knowledge to conclude that the Union Defendants conducted "zero investigation."  His knowledge as a union steward did not extend so far.[24]

> 10. Two weeks prior to the October 17, 2005 incident which eventually led to the termination of Blake Smith's employment, an @road GPS system was installed by one (1) person who was apparently not a licensed contractor.  In fact, he appeared like he had just been released from Folsom prison based on his lack of uniform and numerous tattoo's.  During and before installation of this device, I observed the device and all necessary equipment needed for its installation and operation sitting in the back of an open, uncovered and untied pickup truck bed.  The truck displayed no commercial logo of any sort and as such, was unmarked for any apparent business purposes.  Certain components were haphazardly placed into cardboard boxes, wires were tangled and randomly arranged on the boxes.  Wires had been spliced and twisted together and it just looked like a mess of wires.  I was really concerned.

> 11.  It was at the time, and perhaps still is, company policy to question unauthorized persons on the yard, and because of his appearance, and the apparent lack of any legitimate purpose of being in the yard, I questioned the individual as to whom he was and why he was on the yard.  The person who installed the equipment at the time is described as follows: Heavily tatooed on upper body and he wore only a white tank-top undershirt.  The installer's appearance made an impression on me because the company has, in the past, been victim of theft of cable and wire.  I even remember making a comment about the installer's appearance to Alan Brown who was present that day and he told me 'I know.'  Because he was present that day and saw the method of installation, Alan Brown knew there was a problem with the installation.

---

[24] Mastrangelo was terminated prior to Plaintiff's 2nd grievance hearing.  This event limits the scope of his knowledge.

12.   All trucks were outfitted with the @road systems the same day.   However, the installation person returned twice ... during the same two ... week period to repair and remedy malfunctioning @road devices.   I do not know if there were other instances where repairs were necessary during this period because I did not observe this individual again.

13.       The company also never cited previous disciplinary actions as their basis for their decision to fire Blake Smith to do so is and was a violation of the provision of the contract which prescribes retaliation by the company against employees based on past grievances.

14.   During the decades that I had been with the company I have never seen an employee fired for absences.   It was very common for unpopular employees to get written up for every sick day.   The company has a zero ... tolerance policy for sick time.   They will counsel an employee after every sick day much like they did Blake Smith during the 2004-2005 period.   I also know that if the employee was liked by a particular manager, he would not be disciplined and the grievance process would be circumvented.   This would be no matter how many absences a particular employee had.

Defendants raise numerous objections to paragraphs 10 through 14 of Mastrangelo's affidavit.  Mastrangelo's statements concerning the technician's physical description, Alan Brown's thoughts about the GPS system, the installation and repair history of the GPS system, and Pac Bell's counseling of employees with a history of absences, are sustained.  The majority of these statements are not based on evidentiary facts in the record, are argumentative improper opinion, and are too speculative; others, such as the appearance of the technician, are irrelevant to the Plaintiff's claims and, for the most part, do not involve Plaintiff.

Paragraphs ten through fourteen also contain inadmissible hearsay.  To the extent that the statements are offered to prove

1    the truth of the matter asserted, they are inadmissible.

2    A substantial portion of Mastrangelo's affidavit is
3    inadmissible to establish a genuine issue of material fact.
4    Hearsay assertions by Mr. Mastrangelo and matters not supported by
5    the record or by a demonstration of personal knowledge or
6    corroborating evidence, are insufficient to establish a genuine
7    issue of material fact.

8

9        **2.    Affidavit of Michael Caloyannides**

10   On February 29, 2008, Plaintiff filed an affidavit from
11   Michael Caloyannides ("Caloyannides") in support of his opposition
12   to Union Defendants' motion for summary judgment.    In his
13   affidavit, Caloyannides, a purported GPS expert, questions the
14   accuracy of GPS systems and criticizes Brown's October 18, 2005
15   test verifying the functionality of the GPS system attached to
16   Plaintiff's work vehicle.   Caloyinnides states that "it was
17   irresponsible for the Company Defendants and Union Defendants to
18   dismiss Plaintiff solely based on this @road GPS information" and
19   he "would not trust this system for any purpose whatsoever beyond
20   providing basic advisory information that is understood to be
21   inherently unreliable, and certainly not to discharge an employee
22   utilizing this system as the sole basis." (Dec. of Caloyannides ¶
23   16.)

24   Defendant Local 9333 objects to Caloyannides' affidavit on
25   grounds that he opines that Pacific Bell and the Union Defendants
26   could not use GPS information in discipline and discharge cases.

27

28

(Doc. 78.[25])  However, it is undisputed Pacific Bell and the Union reached a binding side-letter agreement concerning the use of GPS in disciplinary actions.  The side letter agreement stated:

> GPS is one of many management tools used to review employee performance or behaviors.  GPS will not be used as the sole basis for disciplinary action, but may be used to substantiate information obtained from other sources.  As in all cases where discipline may be warranted, management will conduct a complete and thorough investigation and may utilize GPS reports as an additional tool in the investigation.

As the employees' exclusive bargaining representative, the Union "enjoys broad authority ... in the negotiation and administration of [the] collective bargaining contract." *Communications Workers v. Beck*, 487 U. S. 735, 739 (1988).  But this broad authority "is accompanied by a responsibility of equal scope, the responsibility and duty of fair representation." *Humphrey v. Moore*, 375 U. S. 335, 342 (1964).  The employer has a corresponding duty under the NLRA to bargain in good faith "with the representatives of his employees" on wages, hours, and conditions of employment.  29 U. S. C. §158(a)(5); see also §158(d).  Through collective bargaining, a public employer and union can reach agreement on detailed factual questions having important implications. *Bolden v. Southeastern Penn. Trans. Auth.*, 953 F.2d 807, 828 (3rd Cir. 1991) (emphasizing the rational for preventing an individual employee from raising a constitutional

---

[25] Local 9333 adopted and joined the objections filed by Defendants Pacific Bell, Adam Brown, and Shane Spencer. (Doc. 92.) Caloyannides' affidavit did not opine on the conduct of Defendant District 9.

1    claim on an issue that is the subject of a CBA).

2         In this instance, it is undisputed that the Union and Pacific
3    Bell collectively bargained in good faith and agreed that GPS could
4    be used to discipline employees.   As part of any contractual
5    negotiation, an employer may agree to the inclusion of a provision
6    in a collective-bargaining agreement in return for other
7    concessions from the union.   *14 Penn Plaza LLC v. Pyett*, 129 S. Ct.
8    1456, 1464-65 (2009).   Courts generally may not interfere in this
9    bargained-for exchange.   (*Id.*; *Utility Workers of Am. v. Southern
10   Cal. Edison,* 852 F.2d 1083, 1086 (9th Cir. 1998) ("to the best of
11   our knowledge, ... no court has held that the right to be free from
12   drug testing cannot be negotiated away...").   It is undisputed that
13   CWA and Pacific Bell entered into a valid agreement governing the
14   use of GPS records by Pacific Bell.   The agreement between the CWA
15   and Pacific Bell is valid and enforceable.

16        As Pacific Bell and the Union collectively bargained that GPS
17   data could be used, Plaintiff cannot offer expert testimony
18   challenging its accuracy and usage to negate the contract.
19   Caloyannides' opinions are inadmissible to create a genuine issue
20   of material fact that the GPS device could not be used.

21        Even assuming his opinions on the use and accuracy of GPS data
22   are admissible, Defendants object to Caloyannides' affidavit on the
23   grounds that he lacks personal knowledge, fails to consider all the
24   facts in the record, and his expert opinions violate Rule 702 of
25   the Federal Rules of Evidence.

26        Under the Federal Rules of Evidence, expert testimony is
27   admissible if: "(1) the testimony is based upon sufficient facts or
28   data, (2) the testimony is the product of reliable principles and

methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702.  As a general matter:

> The subject of an expert's testimony must be "scientific ... knowledge." The adjective "scientific" implies a grounding in the methods and procedures of science. Similarly, the word "knowledge" connotes more than subjective belief or unsupported speculation.... [I]n order to qualify as "scientific knowledge," an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation- i.e., "good grounds," based on what is known. In short, the requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability.

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-90, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (footnotes omitted).  Based upon the foregoing principles, the Daubert Court discussed four factors which a trial court may use to determine the admissibility of proposed expert testimony: "testing, peer review, error rates, and 'acceptability' in the relevant scientific community." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (citation omitted) (holding that Daubert analysis also "applies to the testimony of engineers and other experts who are not scientists").

In this case, Plaintiff offers the affidavit of Michael Caloyannides, who holds a PhD in Applied Mathematics and a Master of Science degree in Electric Engineering.  Based upon his affidavit, Plaintiff plans to introduce Caloyannides for the opinion that "it was irresponsible for the Company Defendants and Union Defendants to dismiss Mr. Smith solely based on this @road GPS information."  Defendants argue, correctly, that Mr.

1    Caloyannides' opinion is inadmissible because it does not meet the
2    requirements of Rule 702.

3         It cannot be fairly disputed that Caloyannides is qualified,
4    based upon his education and experience, to testify as an expert in
5    the fields of GPS technology and computer forensics.  The problem
6    is not one of GPS expertise or experience, per se, but a lack of
7    expertise and experience with respect to the subject matter at
8    issue -- whether the Union Defendants breached the duty of fair
9    representation and whether the Pacific Bell dismissed Plaintiff
10   based solely on the @road GPS information.

11        Mr. Caloyannides' lack of expertise in these critical areas is
12   best demonstrated by his expert opinion that it was "irresponsible
13   for the Company Defendants and Union Defendants to dismiss
14   Plaintiff solely based on GPS data."  Contrary to Caloyannides'
15   assertions, the Union Defendants neither suspended Plaintiff nor
16   terminated him in 2005; all adverse employment actions taken
17   against Plaintiff in 2005 were initiated and implemented by Pacific
18   Bell, his former employer.  Perhaps because Mr. Caloyannides is
19   unfamiliar with the appropriate standards with respect to
20   Plaintiff's legal challenge, he completely disregards the facts,
21   including that Plaintiff was terminated by Pacific Bell for failure
22   to safeguard company assets *and* misrepresenting facts during an
23   investigation.  Whatever the reasons, Caloyannides' expertise does
24   not extend to Pacific Bell's employment decisions or the grievance
25   procedures authorized by contract, and administered by the Union.[26]

26

27        [26] Caloyannides concludes, without an apparent basis in either
28   expertise, experience, or acknowledged principles in the field of
     employment practices, that he "would not trust this system for any

**41**

1  Mr. Caloyannides simply cannot address these critical issues based
2  upon his expertise and experience.

3       Defendants also contend that Caloyannides' affidavit lacks the
4  requisite reliability because it is based on incomplete and
5  selective documents.  Defendants state that Caloyannides' affidavit
6  relies heavily on the mistaken belief that Plaintiff was terminated
7  solely based on GPS information, an improper legal conclusion.
8  According to Defendants, this critical error, along with
9  Caloyannides' limited review of the record, led him to assert an
10  alternative timeline that is inconsistent with the undisputed
11  evidence in this case.

12       If the basis for an expert's opinion is clearly unreliable,
13  the district court may disregard that opinion in deciding whether
14  a party has created a genuine issue of material fact.  *See Daubert*,
15  509 U.S. at 596 (if "the trial court concludes that the scintilla
16  of [expert] evidence presented supporting a position is
17  insufficient to allow a reasonable juror to conclude that the
18  position more likely than not is true, the court remains free to
19  ... grant summary judgment").  Relevant expert testimony is
20  admissible only if an expert knows of facts which enable him to
21  express a reasonably accurate conclusion.  *Jones v. Otis Elevator*
22  *Co.*, 861 F.2d 655, 662 (11th Cir. 1988).  Opinions derived from

23  _____

24  purpose whatsoever beyond providing basic advisory information that
25  is understood to be inherently unreliable, and certainly not to
    discharge an employee utilizing this system as the sole basis."  It
26  appears the Union and Pacific Bell considered this proposition when
    they negotiated the side-letter agreement.  (See "Side Letter
27  Agreement", Exh. B to Dec. of D. Flores, "GPS will not be used as
    the sole basis for disciplinary action, but may be used to
28  substantiate information obtained from other sources.")

1  erroneous data are appropriately excluded.  *Slaughter v. Southern*

2  *Talc Co.*, 919 F.2d 304 (5th Cir. 1990).  Both the determination of

3  reliability itself and the factors taken into account are left to

4  the   discretion   of   the   district   court   consistent   with   its

5  gatekeeping function under Fed.R.Evid. 702.  *Kumho Tire Co., Ltd.*

6  *v. Carmichael*, 526 U.S. 137 (1999).

7       Caloyannides opines that the "only plausible explanation" of

8  the evidence is that "Plaintiff turned off his vehicle at 1:12 p.m.

9  and  it  was  stolen  at  1:19  p.m."   Caloyannides'  timeline  is

10  inconsistent with the undisputed facts of this case and casts doubt

11  on his reliability and impartiality.  All of the evidence in the

12  record supports the conclusion that Plaintiff's vehicle was stolen

13  before 1:12 p.m.:

14          1.   Mr. Brown's cellular phone records indicating an
            incoming call from Plaintiff at 1:12 p.m. on October
15          17, 2005;

16          2.   The California Highway Patrol's report stating
            that an officer was notified of the vehicle theft at
17          approximately 13:10 hours on October 17, 2005;

18          3.   The Sheriff's Department report stating that a
            deputy spotted the stolen vehicle at approximately
19          13:15 hours on October 17, 2005; and

20          4.   GPS  data  provided  by  @road  indicated  that
            Plaintiff's vehicle was in idle status between 1:02
21          and 1:11 p.m. and the engine was off between 1:12 p.m.
            and 1:19 p.m.

22

23       Caloyannides' timeline is also inconsistent with Plaintiff's

24  version of events, as communicated to the Deputies on the day of

25  the  theft  and  repeated  in  his  deposition  on  August  1,  2007.

26  According to Plaintiff, he parked the car near the corner of Nunes

27  Road and Washington Street and began cable locating 200 yards away.

28  He  then  noticed  an  individual  enter  the  vehicle  and  take  off

1  westbound on Nunes Road.  Plaintiff states that he lost track of

2  the vehicle when it turned northbound on Ninth Street (toward Dora

3  Avenue).  According to the Sheriff's report, Plaintiff's vehicle

4  was spotted at 13:15 near the corner of Dora Avenue and Ninth

5  streets, about a mile away from the intersection of Nunes and

6  Washington.[27]  At this time, the deputies observed two individuals

7  flee the vehicle, apprehending one suspect in the backyard of 5312

8  8th street, a block from the corner of Dora and Ninth.  Shortly

9  thereafter, Plaintiff arrived at this location with a Sheriff's

10 deputy.

11      According to Caloyannides, the above evidence does little to

12 demonstrate that the vehicle was stolen before 1:12 p.m. on October

13 17th.  Caloyannides states that a lack of calibration among time

14 keeping devices – of the GPS provider, California Highway Patrol,

15 cellular phone company, and Stanislaus County Sheriff's Department

16 – contributed to the faulty timeline.  He also blames daylight

17 savings time.  Caloyannides further states that "it is important to

18 note that this [GPS] system ... could have been manipulated

19 intentionally" and the electronic data "has been destroyed by the

20 defendant companies."  Caloyannides appears to allege that Pacific

21 Bell and the Union conspired to fraudulently alter or destroy the

22 GPS results to support his theory.  This is unsupported by the

23 record.

24      Nonetheless, whether Caloyannides does or does not have

25 sufficient (or reliable) evidence to support his alternative

26

27      [27] Dora Avenue and Nunes Street are parallel to one another.

28 Ninth street is the main artery between the two streets.

1   timeline, Pacific Bell was entitled to use GPS under the CBA.[28]

2   Caloyannides opinions are insufficient to raise genuine issues of

3   fact and defeat summary judgment.[29]   *See Taylor v. List*, 880 F.2d

4   1040, 1045 (9th Cir.1989) ("A summary judgment motion cannot be

5   defeated by relying solely on conclusory allegations unsupported by

6   factual data."); *see also Falls Riverway Realty, Inc. v. Niagara*

7   *Falls*, 754 F.2d 49, 57 (2d Cir.1985) (Conclusory, speculative

8   testimony in affidavits and moving papers is insufficient to raise

9   genuine issues of fact and defeat summary judgment).   H e r e ,

10  Plaintiff's untruthful statements and failure to protect company

11  property were additional grounds for termination.   There is no

12  evidence Pacific Bell solely relied on the GPS, or had knowledge

13  that the some of the information was true and could no be relied

14  on.

15      If the Daubert court was less than perfect in articulating the

16  gatekeeper function, it did make clear that the trial judge has an

17  inescapable obligation to determine whether proffered expert

18

19      [28] Caloyannides' opinions are based on his personal experience
20  with GPS ("I would not trust this [GPS] system for any purpose
    whatsoever"), a hypercritical critique of Brown's GPS test on
21  October 18, 2005 ("the first event states that Mr. Brown stopped at
    5851 Washington but the @road reflects 5927 Washington"), the @road
22  disclaimer, and accusations of fraud.   Caloyannides does not
    provide any evidence specific concerning the GPS device attached to
23  Plaintiff's vehicle on October 15, 2005; Caloyannides also readily
    admits that he needed additional information to complete his review
24  of Pacific Bell's GPS devices.   (Caloyannides Dec. ¶ 13.)

25      [29] In contrast to Caloyannides' affidavit, Mr. Larson states
26  that the GPS device was affixed to Plaintiff's vehicle several
    years ago; it is extremely accurate and reliable; it indicates when
27  the vehicle is idling and when it is turned on and off; and there
    was no problem with Plaintiff's GPS unit on October 17, 2005.
28  (Larson Dec. ¶¶ 1-8.)

1   testimony in a particular case is "scientific" and whether the

2   proffered expert's "knowledge" will assist the trier of fact.

3   *Daubert*, 113 S.Ct. at 2795.  To fulfill this obligation the court

4   must determine that the proposed expert's testimony must be both

5   "reliable" and "relevant."  *See U.S. v. City of Miami, Florida*, 115

6   F.3d 870, 873 (11th Cir. June 20, 1997) (stating that "[r]elevant

7   expert testimony is admissible only if an expert knows of facts

8   which enable him to express a reasonably accurate conclusion.").

9        Taken cumulatively, Caloyannides' testimony is unreliable.

10  Consistent with the role of the district court as "gatekeeper", *see*

11  *General Elec. Co. v. Joiner*, 522 U.S. 136 (1997), Defendants'

12  objections to the Caloyannides affidavit are sustained.

13       Caloyannides'    affidavit    offers    legal    conclusions.

14  Caloyannides did not limit his opinions to the functioning and

15  accuracy of GPS; rather, Caloyannides opined as to the legal

16  standards which he believed to be derived from the collective

17  bargaining agreement and what standards should have governed the

18  conduct of Pacific Bell and the Union.  He did not testify about

19  common practice concerning GPS data, but rather opined what was

20  necessary to satisfy the CBA.  Such testimony is a legal conclusion

21  and is an inappropriate matter for expert testimony.  *See U.S. v.*

22  *Scholl*, 166 F.3d 964, 973 (9th Cir. 1999) (excluding expert

23  testimony offering a legal conclusion); *Aguilar v. International*

24  *Longshoremen's Union*, 966 F.2d 443, 447 (9th Cir.1992) (noting

25  matters of law are for the court's determination, not that of an

26  expert witness); *see also Marx & Co. v. Diners' Club, Inc.*, 550

27  F.2d 505, 509-10 (2d Cir.1977) (expert testimony consisting of

28  legal conclusions inadmissible).  Caloyannides' inappropriately

1  expressed legal conclusions on the issue of terminations under the

2  CBA.  These opinions are inadmissible.

3      Finally, Defendants object that Caloyannides never reaches

4  conclusions on the ultimate issues, such as whether the Union

5  breached its duty of fair representation based on the GPS's

6  functionality. Defendants' argument has merit. Caloyannides' only

7  opinion concerning the union is that they "were irresponsible to

8  dismiss Mr. Smith solely based on this @road information." Pacific

9  Bell's decision to terminate Plaintiff has no bearing on whether

10  the union breached the duty of fair representation.  A survey of

11  the current case law reveals there are few cases in which expert

12  testimony on a union's duty of fair representation was found

13  necessary or useful to a jury. *See Pease v. Production Workers of*

14  *Chicago and Vicinity Local* 707, 2003 WL 22012678 at *4-5

15  (summarizing the case law on expert testimony in fair

16  representation cases and finding that Plaintiff's expert "would not

17  be useful in helping the jury understand whether the Union's

18  conduct was so fair outside a wide range of reasonableness as to be

19  actionable.").

20

21      3.  Deemed Admissions

22      In his Statement of Disputed Facts, Plaintiff relies on a

23  number of his Requests for Admission, asserting that the facts

24  requested to be admitted or denied are deemed admitted because

25  Defendants did not timely respond to them.

26      Defendants dispute that their responses to the Requests for

27  Admission were untimely.

28      Caren P. Sencer, counsel for District 9, filed a Supplemental

47

Declaration on March 10, 2008 (Doc. 88).  Ms. Sencer avers:

> 2.  David Rosenfeld, one of the attorneys at our firm assigned to this case and a named shareholder in our firm wrote a letter to Mr. Allen, counsel for Mr. Smith, on September 14, 2007 seconding concerns that had been raised by Chris Bissonnette, counsel for Pacific Bell ..., over the service of certain discovery. Mr. Bissonnette requested and was granted an extension to respond to the requests based on untimely service.  Mr. Rosenfeld informed Mr. Allen that we would be using the same discovery response date as Pac Bell as we also did not receive the requests in a timely manner.  The requests were dated August 16, 2007 on the proof of service but were not received in our office until August 22, 2007 ....

> 3.  On September 27, 2007, our office received a letter from Mr. Allen, chastising us for our 'failure to respond' to discovery.  In the letter, Mr. Allen writes 'Kindly, provide responses to each of our discovery requests, without objection, by Tuesday October 2, 2007. If you both [co-counsel] fail to respond by that date, we will be relegated to motions to compel.' ....

> 4.  On September 24, 2007, Defendant District 9 served responses to the discovery that had been propounded by Plaintiff Smith ....

> 5.  District 9 received copies of Defendants Pac Bell, Alan Brown and Shane Spencer's responses to Smith's Special Interrogatories. The Proofs of Service show these documents were sent by mail on September 24, 2007. Under Mr. Allen's correspondence to Mr. Bissonnette regarding the timelineess of responses, these responses were timely.

> 6.  In Pac Bell's responses, each of the requests posed to both District 9 and Pac Bell are addressed.  Most of these responses were either denied or not answered based on lack of knowledge.  The exceptions are Requests 15, 18, 19, 20, 43, 46, 47, 58, 63 as numbered when served in Set Two to Pac Bell (Disputed Facts 118, 124, 125, 136, 149, 152, 153, 160, 165 respectively) which are admitted.

> 7.  District 9 received copies of Defendant Local 9333's responses to Smith's Special

Interrogatories.  The Proof of Service show these documents were sent by mail on October 9, 2007.  To my knowledge, Mr. Allen has not alleged these responses were untimely.

8.   In Local 9333's responses, each of the requests posed to both District 9 and Local 9333 are addressed.  Most of these responses are either denied or not answered based on lack of knowledge, or answered in a qualified manner on information and belief only.  The exceptions are Requests 10, 12, 13, 31, 35, 41, and 83 as numbered when served in Set One to Local 9333[.]

9.   I have reviewed the two sets of Requests for Admissions which were served on Pac Bell and Local 9333 by Plaintiff Blake Smith.  The attached Table i is a table I compiled during that review.  The table shows the number of the disputed fact for which Mr. Smith is relying on District 9's admission and the number of the request made to Pac Bell and/or Local 9333 that uses the precise, same language.

10.   Mr. Allen received our discovery responses.  This is a known fact as Mr. Allen wrote a letter on October 10, 2007 claiming that the responses were insufficient and seeking to meet and confer on many of the specific Requests for Admission made ....

11.   I responded to Mr. Allen's discovery concerns by letter dated October 15, 2007 ... In that letter, we addressed both the timelinness and sufficiency arguments raised by Mr. Allen.

12.   Our office received no further communications from Mr. Allen regarding the discovery requests and has never been served with any motion to provide further, more complete, or responses without objections.

13.   The only Requests for Admissions which were served on District 9, relied on in Mr. Smitho's Opposition that were not responded to by other parties are requests 4, 5, 29, 30 and 92 (Disputed Facts 100, 101, 122, 125, and 172)[.] In District 9's responses to Requests for Admissions, it admits 29 and 30 (Disputed Facts 122 and 123) but denies requests 4, 5 and 92 (Disputed Facts 100, 101, and 172).

49

> 14.  Of the multiple requests served on all parties, the only request which has been admitted by District 9, Local 933 and Pac Bell is Disputed Fact 124.

Rule 36(a) provides that the "matter is deemed admitted unless, within 30 days after service of the request ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party ...."  "Failure to respond to requests for admission results in automatic admission of the matters requested ... No motion to establish the admissions is needed because Federal Rule of Civil Procedure 36(a) is self-executing." *Federal Trade Commission v. Medicor LLC,* 217 F.Supp.2d 1048, 1053 (C.D.Cal. 2002).  Here, the record establishes that Plaintiff's counsel agreed to an extension of time to respond to his requests for admission.  Plaintiff's assertions in his Statement of Disputed Facts that the Requests for Admission are deemed admitted because Defendants' failed to timely respond is without merit.[30]

B.    Plaintiff's Statement of Disputed Facts

On February 29, 2008, Plaintiff filed a Statement of Disputed Facts (Doc. 72, ("PSDF").) in support of his opposition to Union Defendants' motion for summary judgment.  Plaintiff's 73-page Statement of Disputed Facts is a series of excerpts from purported

---

[30] In support of their position, Defendants also argue that the court has discretion to allow for a longer period to respond, that the admissions are not binding on other defendants, and that the requests for admission are not authenticated.  In light of the ruling on the deemed admissions, these arguments are not considered.

1  "deemed admissions" and summarized testimony of affiants John

2  Mastrangelo and Michael Caloyannides.  The Statement of Disputed

3  Facts is organized according to witness and deemed admission.  Most

4  of Plaintiff's "disputed facts" are taken verbatim from the deemed

5  admissions and affidavits of Mastrangelo and Caloyannides.  (Fact

6  Nos. 6, 10-172, 297, pp. 3-45, 71). Plaintiff's Statement of

7  Disputed Facts includes disputed facts that are immaterial (e.g.,

8  Fact No. 79, Mr. Dan Devine brought a loaded gun to work, but there

9  were shotgun shells on the seat next to the weapon, so it is of

10 little consequence to me and my workers).  The Statement of

11 Disputed Facts contains non-enumerated statements unaffiliated to

12 the indexed "disputed facts"  (e.g., Doc. 72, 72:26-72:27, why

13 would the thief have dropped the bike at the back of the van unless

14 he had to pick up the keys to gain entry?).  Approximately fifty

15 "disputed facts" concern Plaintiff's deposition testimony.  These

16 facts are either undisputed or irrelevant to the ultimate issues of

17 this case.

18     At issue in this action is the effect of Plaintiff's failure

19 in many instances to provide support for the allegations in the

20 Complaint, and now in his opposition to summary judgment.  The

21 Eastern District of California's local rules have strict

22 requirements regarding opposing summary judgment motions; the local

23 rules require litigants in response to the movant's statement of

24 undisputed material facts (admitting or denying the facts with

25 citation to the record).  See E.D. Cal. R. 56-260(b).  The opposing

26 party may also file a concise "Statement of Disputed Facts," of all

27 additional material facts as to which there is a genuine issue

28 precluding summary judgment or adjudication.  *Id*.  Here, Plaintiff

1  did not file a response to Defendants' statement of undisputed

2  facts; rather, he filed a "Statement of Disputed Facts" as part of

3  his opposition to Defendants' motion.

4       The rules are specifically designed to avoid the procedural

5  morass that has developed in this case.  When Plaintiff fails to

6  file an opposition to the movant's undisputed facts, instead filing

7  a 73-page statement of disputed facts, it is extremely difficult to

8  identify the universe of actual, material, factual disputes, and

9  their legal effect.  The time required to decipher the filings in

10  this case imposed on limited judicial resources.

11       In light of the rulings on the objections to the affidavits of

12  Mastrangelo (Fact Nos. 60-99) and Caloyannides (Fact Nos. 6, 10-

13  59), as well as the determination concerning the deemed admissions

14  (Fact Nos. 100-172), Plaintiff's Statement of Disputed Facts is

15  insufficient to create a genuine issue of material fact.[31]

16

17  A.   <u>Plaintiff's Third Cause of Action</u>.

18       Plaintiff's third cause of action is a breach of contract

19  claim against all defendants.  District 9 and Local 9333 argue that

20  Plaintiff's third cause of action should be construed as a hybrid

21  cause of action under § 301 of the Labor Management Relations Act

22  ("LMRA"). Under the hybrid cause of action, Plaintiff's third cause

23  of action for breach of the collective bargaining agreement is

24  viable only against Pacific Bell.

25       Where  "the  union  representing  [an]  employee  in  [a]

26

27       [31]  The remaining portions of Plaintiff's Statement of Disputed

28  Facts are either irrelevant to the issues of this case, repetitive,
admitted (but not material), or otherwise objectionable.

1   grievance/arbitration procedure acts in such a discriminatory,
2   dishonest, arbitrary, or perfunctory fashion as to breach its duty
3   of fair representation," the employee "may bring suit against both
4   the employer and the union, notwithstanding the outcome or finality
5   of the grievance or arbitration proceeding." *See DelCostello v.*
6   *Int'l Brotherhood of Teamsters*, 462 U.S. 151, 164, 103 S. Ct. 2281,
7   76 L. Ed. 2d 476 (1983). "Such a suit, as a formal matter,
8   comprises two causes of action," specifically, a suit against the
9   employer for breach of the collective bargaining agreement,
10  pursuant to § 301 of the LMRA (29 U.S.C. § 185), and a suit against
11  the union for breach of the union's duty of fair representation,
12  which "is implied under the scheme of the National Labor Relations
13  Act". *See id.* The Supreme Court has held that the two claims "are
14  inextricably interdependent"; to prevail against either the company
15  or the union, the employee "must not only show that [his] discharge
16  [or discipline] was contrary to the contract but must also carry
17  the burden of demonstrating a breach of duty by the Union." *Id.* at
18  165.     Accordingly, Plaintiff's third cause of action is
19  construed as a suit only against Pacific Bell for breach of the
20  collective bargaining agreement, pursuant to § 301 of the LMRA.
21  For the reasons stated above, there has been no breach.  Summary
22  judgment is GRANTED in favor of District 9 and Local 9333 as to
23  Plaintiff's third cause of action.

24

25  **B.**   **Plaintiff's Fourth Cause of Action**.

26       The Union Defendants move for summary judgment in connection
27  with the fourth cause of action for fraud, which is alleged only

28

against "AFLCIO - CWA and AFLCIO - District 9."[32] (Compl. 12:21-12:22.)

"The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." 5 Witkin, Summary of California Law (9th ed. 1988), Torts, § 676, p.778. "'Promissory fraud' is a subspecies of the action for fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud.'" *Agosta v. Astor*, 120 Cal.App.4th 596, 569 (2004).

In his complaint, Plaintiff's alleges that the Union committed fraud when they accepted his union dues but failed to protect his employment following his suspension and discharge. Specifically, Plaintiff claims that as a union member he believed he would be protected against wrongful termination and that he would continue to be employed with Pacific Bell until such time as there was good cause or justification to terminate his employ. (Pl.'s Compl. 12:26-13:12.) Plaintiff goes on to allege:

> Defendants, and each of them, knew that Plaintiff would not have knowingly sought, obtained and continued to place his future in CWA and District 9's care had he known that Defendants were not intending to fulfill their promise of protecting his interests.

---

[32] Plaintiff's fourth cause of action for fraud appears to . Proper party is Local 9333. To the extent fraud is alleged against District 9, it is granted for the same reasons.

> Specifically, had CWA and District 9 been looking out for the Plaintiff they would have used the contractual Expedited Arbitration procedures, which were available to reinstate the Plaintiff. Instead what the union did was to keep Plaintiff in the dark while they slowly went through the futile grievance. Plaintiff has suffered irreparable harm to his health and finances due to the intentional misrepresentations of the Defendants CWA and District 9.

(*Id.* at 13:12-13:25)

Plaintiff presents no evidence to support the required elements of the common law cause of action for fraud and testified at his deposition that he had no such evidence.[33]  The record is clear that the Union Defendants in this and other instances processed Plaintiff's grievances and represented him as required by the CBA.[34]  The Union's attorney ultimately determined that Plaintiff's termination was justified, indefensible, and without merit.  That Plaintiff is disappointed with the outcome of that process or that the Union Defendants may have breached the duty of fair representation in the processing of Plaintiff's grievance is not evidence of promissory fraud on the part of the Union Defendants.  They did not promise to win meritless cases.

Summary judgment for Local 9333 and District 9[35] on the Fourth

_____

[33] When asked whether he had any facts to support his allegations that Union Defendants did not intend on fulfilling their promise of protecting his interests, Plaintiff responded "No."  (Dep of Pl. 195:23-196:3.)

[34] As explained in Part II, *supra*, the Union's use of the expedited arbitration procedure was discretionary – not mandatory – and required "mutual agreement" between the Union and Pacific Bell.

[35] Plaintiff's fourth cause of action alleges that Union Defendants committed fraud "[o]n or about September of 1997 and throughout Plaintiff's tenure at SBC ...." (Compl. ¶ 42.)  Local

Cause of Action is GRANTED.[36]


## C.   Plaintiff's Fifth Cause of Action.

In his fifth cause of action, Plaintiff alleges that Local 9333 and District 9 breached their duty of fair representation by performing a perfunctory investigation and arbitrarily failing to pursue his claim to arbitration.[37]


## 1.   Duty of Fair Representation

The duty of fair representation doctrine serves as a "bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." *Vaca v. Sipes*, 386 U.S. 171, 182, 87 S. Ct. 903, 912, 17 L. Ed. 2d 842 (1967). "Under the doctrine, a union must represent fairly the interests of all bargaining-unit members during the negotiation, administration, and enforcement of collective-bargaining agreements. *Id*. In particular, a union breaches its duty when its conduct is arbitrary, discriminatory, or

9333, Plaintiff's local union, appears to be the proper party for his fraud allegations.   To the extent Plaintiff alleges fraud against District 9, summary judgment is granted for the same reasons.

[36] Although not asserted by the Union Defendants, it is arguable that the Fourth Cause of Action is preempted by Section 301. *See Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 801-802 (8th Cir.1990).

[37] The fifth cause of action alleges that Plaintiff exhausted the grievance procedures set forth in the CBA or should be excused from exhausting those procedures.   Exhaustion of the grievance procedures is not raised by Defendants as a ground for summary judgment.

in bad faith ...” *International Brotherhood of Elec. Workers v. Foust*, 442 U.S. 42, 47 (1979).  “A union's conduct is 'arbitrary' if it is 'without rational basis,' ... or is 'egregious, unfair and unrelated to legitimate union interests,'” *Peterson v. Kennedy*, 771 F.2d 1244, 1254 (9th Cir.1985), cert. denied, 475 U.S. 1122, (1986), or is “so far outside a 'wide range of reasonableness' .... as to be irrational.” *Airline Pilots Assoc. v. O'Neill*, 499 U.S. 65, 67 (1991). Under these exacting standards, “unions are not liable for good faith, non-discriminatory errors of judgment made in the processing of grievances.” *Peterson*, 771 F.2d at 1254. Rather, “something more than negligence must be shown.” *Peters v. Burlington Northern RR*, 931 F.2d 534, 538 (9th Cir. 1991).

In determining whether a union has breached its duty of fair representation to a member, the Court must apply slightly different standards of review, depending on whether the union's act or failure to act involved the union's judgment, or was procedural or ministerial in nature.  If the alleged union misconduct was "procedural or ministerial, then the plaintiff may prevail if the union's conduct was arbitrary, discriminatory, or in bad faith." *Marino v. Writers Guild of America, East, Inc.*, 992 F.2d 1480, 1486 (9th Cir. 1993).  The union is not liable for "mere negligence"; rather, “to be arbitrary, the union must have acted in 'reckless disregard' of the union member's rights.” *Id*.  Thus a union may be liable when it simply fails to perform a ministerial act which is required of it and that failure “completely extinguishes the employee's right to pursue his claim.” *Dutrisac v. Caterpillar Tractor Co.*, 749 F.2d 1270, 1274 (9th Cir. 1983) (liability imposed where union failed to complete its investigation of member's

complaint of improper discharge before grievance filing deadline had expired, and member's right to challenge employer's action was extinguished).

In contrast, if the conduct in question involved the exercise of the union's judgment, "then the plaintiff may prevail only if the union's conduct was discriminatory or in bad faith." *Marino*, at 1486.  When the union's judgment is challenged -- such as its decision whether and to what extent to pursue a particular grievance -- "the union must balance many collective and individual interests," and thus "courts should accord substantial deference to the union's decisions," even when its decision results in a loss to some of its members.  *Dutrisac*, 749 F.2d at 1274-75 (union will not be liable for "mere errors of judgment in processing grievances").

a.   <u>Allegations Against Local 9333</u>.

In his fifth cause of action Plaintiff alleges that Local 9333 breached its duty of fair representation in its handling of his grievance when it:

> \* granted Pacific Bell an extension of time to respond to the Step 2 grievance;
>
> \* relied on police reports, but did not interview the officers;
>
> \* did not interview the alleged thief of Plaintiff's work vehicle;
>
> \* did not allow Mastrangelo to represent him as union steward;
>
> \* did not challenge Pacific Bell's GPS evidence or retain a GPS expert;

**\* buried Plaintiff's past grievances against his supervisor, Todd Bayes, who Plaintiff alleges acted in concert with Spencer and Brown to terminate his employment; and**

**\* abused its power in connection with Plaintiff's grievance.**

(Pl's Opp. 2:3-6:15.)

### i. <u>Extension of Time to Step 2 Grievance</u>

Pursuant to the CBA Chapter 7.05, the failure to timely respond within 30 days by the company results in the grievance being resolved in favor of the union.  Plaintiff alleges that "on or about December 21, 2005, Lynn Johnson unilaterally contacted the company to notify them that the deadline to respond to the 2nd step grievance was about to expire and she asked the company whether they wanted an extension of time to respond."[38]  (Pl.'s Opp. 26:8-26:16).  Plaintiff alleges that if no extension had been granted, "grievance would have been resolved in his favor" and "he would have had his job back prior to Christmas of 2005."  (*Id.*)  Union actions that are commanded or prohibited by union rules or policies involve little or no discretion and are ministerial in nature.  *See Wellman v. Writers Guild of America, West, Inc.*, 146 F.3d 666, 671 (9th Cir. 1998)  Thus the Union breached its duty to Plaintiff in failing to enforce Chapter 7.05's requirement if its conduct in granting an extension of time was "arbitrary, discriminatory or in bad faith" and prejudiced his rights.  *Id.*

---

[38] The response time was extended to January 5, 2006.  (*Id.*)

59

1    While Plaintiff argues that the extension of time was in
2  violation of the CBA and dispositive of his grievance, he presents
3  no evidence that the extension was "arbitrary, discriminatory or in
4  bad faith." However, in Ms. Johnson's declaration, she states that
5  the one-week extension was provided to ensure that Pacific Bell
6  employees with settlement authority could attend the grievance
7  meeting.  (Dec. of L. Johnson ¶ 22.)  Further, Ms. Johnson's
8  extension is specifically authorized by Section 7.05D.2.b. of the
9  CBA and entirely consistent with CBA's mission to work in good-
10  faith and jointly plan and evaluate employee grievances.  CBA Art.
11  7.01-7.07. "[T]he union must balance many collective and individual
12  interests," and thus is "afforded substantial deference in its
13  decisions." *Hays v. National Electrical Contractors Assoc'n, Inc.*,
14  781 F.2d 1321, 1324-25 (9th Cir. 1986).

15    Plaintiff fails to provide probative evidence of the union's
16  bad faith, arbitrary, or discriminatory conduct on the part of the
17  union in exercising discretion to extend time for respond to the
18  Step 2 grievance.

19

20             ii. Investigation & Handling of Grievance

21    Plaintiff makes numerous attacks on the union's handling of
22  the grievance and investigatory process.  Specifically, he calls
23  into question the union's decision regarding which witnesses to
24  interview; the refusal not to let Mastrangelo proceed as his union
25  steward; the reliance on the GPS data to support his discharge; the
26  failure to hire a GPS expert; and the overall perfunctory nature of
27  the union's investigation.

28    A union has wide discretion in the exercise of judgment in

                                60

1  representing its members and will only be held in breach of the
2  duty of fair representation where its conduct is "discriminatory,
3  or in bad faith." *Burkevich v. Air Line Pilots Ass'n, Int'l*, 894
4  F.2d 346, 349 (9th Cir. 1990).  However, a union may not ignore a
5  meritorious grievance or fail to conduct a minimal investigation of
6  a grievance that is brought to its attention, but an investigation
7  which is pursued in good faith and according to the union's
8  rational judgment will not be found to be a breach of the duty of
9  fair representation. *Peterson v. Kennedy* 771 F.2d 1244, 1254 (9th
10 Cir. 1985), cert. denied, 475 U.S. 1122, 90 L. Ed. 2d 187, 106 S.
11 Ct. 1642 (1986).  Although most investigations could be made more
12 thorough through added diligence, courts have been "unwilling to
13 subject unions to liability for such errors in judgment." *Id*. at
14 1256.

15      In this case, the union did conduct an adequate investigation
16 and quite clearly pressed Pacific Bell to reinstate Plaintiff.  The
17 undisputed facts demonstrate that Local 9333 filed three grievances
18 on Plaintiff's behalf and negotiated extensively with Pacific Bell
19 in an attempt to resolve the situation.  Further, the documents
20 jointly submitted by District 9 and Local 9333 chronicle the
21 thorough investigation performed by them on his behalf.  They show
22 that the union was familiar with the nature of the grievance and
23 pursued reasonable steps to resolve Plaintiff's complaints.  The
24 union appears to have spent numerous hours interviewing witnesses,
25 reviewing documents, and meeting frequently with Plaintiff and
26 Pacific Bell regarding Plaintiff's grievances.  The union clearly
27 exceeded the minimal investigation required by the duty of fair
28 representation. *Peterson*, 771 F.2d at 1254.

1    Plaintiff's opposition focuses on his claim that he was

2    "terminated solely based on the GPS data from Plaintiffs company

3    assigned work vehicle." (Pl.'s Opp. 2:6-2:7.) Plaintiff alleges

4    that the union breached its duty of fair representation because it

5    did not "challenge the admissibility of the GPS under the CBA" and

6    "never hired a GPS expert to validate the data." (*Id.* at 2:26-

7    2:27, 10:20-10:24.) In essence, Plaintiff claims that the union

8    did not support his conclusion that he was terminated solely based

9    on the GPS data.

10    As detailed in Part II, *supra*, it was proper for Pacific Bell

11    to use GPS reports as a tool in investigating the theft of

12    Plaintiff's work vehicle. However, GPS reports were not to be

13    "used as the sole basis for disciplinary action, but may be used to

14    substantiate information obtained from other sources." (Dec. of G.

15    Flores ¶ 8-9; Exh. B to Dec. of G. Flores.) Here, it is undisputed

16    that Local 9333 took Plaintiff's grievance through three grievance

17    procedures and, in each one of them, argued that Plaintiff's should

18    be reinstated because his termination was based solely on the use

19    of the GPS reports. (Exh. H, Dec. of L. Johnson; Exh. C, Dec. of

20    D. Flores.) Pacific Bell denied this, countering that Plaintiff

21    was terminated because he lied about the events surrounding the

22    theft of the vehicle and failed to safeguard corporate property.

23    Relevant to the dispute is the following exchange, which occurred

24    during Plaintiff's Step 3 grievance meeting, held on February 16,

25    2006:

26

27    Union:    [We] feel that the sole reason he was
           dismissed is because of a GPS report [...] GPS
28           should not be used for sole purpose of
           disciplinary action [...] we don't believe

62

this incident was enough to termination. Blake was a good worker and always honest.

Company:   If you get out of your vehicle, you need to turn it off and lock it [...] vehicle was idling and he wasn't there.  Used GPS heavily on this.  It was based on the vehicle being stolen.  We didn't randomly run GPS on him.

Union:     GPS was initial trigger to try and find vehicle [...] I don't believe Blake was fired for the van being stolen. [...] He said his keys fell on the ground.  I believe Blake.

Company:   [We] feel this story is not plausible. We disagree on this, but feel it's not plausible. GPS was not used randomly.  It was a valid use of GPS and we feel GPS data is valid.

(Dec. of D. Flores, Exh. C.)

Plaintiff's allegations regarding the GPS data amount to nothing more than his opinion that the grievance proceedings should have been handled differently – that different evidence should have been presented and that a different approach should have been taken concerning the GPS data.  But the record is clear that the Union challenged the use of the GPS data and pursued Plaintiff's grievance in good faith.  Plaintiff's disagreement with the union's tactics simply does not establish bad faith or discriminatory conduct on the part of the union.

Plaintiff does not cite a single case in support of his claims, instead relying on the affidavit of Michael Caloyannides and a series of factual arguments.  However, *Smith v. UPS*, 96 F.3d 1066 (8th Cir. 1996), presents a close analog to the issues in this litigation.  In *Smith*, the Eighth Circuit considered whether a union breached its duty of fair representation by failing to present certain evidence following Smith's termination for failing a random drug test.  Smith claimed that the union breached its duty

of fair representation by failing to obtain certain laboratory
information and reports concerning his drug test in order to
challenge the test as unreliable and failing to hire an expert
witness to attack the reliability of the drug test.  *Id.*
Affirming the district court's entry of summary judgment in favor
of the employer, the Eighth Circuit concluded that the union
"adequately represented Smith at all grievance hearings, presenting
both oral and written arguments in his favor."  Id. at 1069.
According to the Smith decision, "Whether the union should have
obtained more records is a matter within the wide range of
reasonableness afforded to a union in pursuing a grievance." Id.

    Here, the record demonstrates that the Union interviewed
Plaintiff multiple times and reviewed the GPS records and other
documentary evidence (e.g., sheriff's report and Brown's cellular
records), determining that it did not support Plaintiff's
dismissal.  Like *Smith*, the Union used this evidence during the
first, second, and third grievance hearings to press Pacific Bell
into reinstating Plaintiff.  The arguments presented by the Union
were both written and oral.  Although it did not order additional
testing of the GPS equipment, this decision was within the wide
range of reasonableness afforded to a union in pursuing a
grievance.  *Id.*  Further, the fact that a Union failed to represent
a member's interests "as vigorously as it could have does not
establish a breach of the duty of fair representation."  *Mock v.
T.G. & Y. Stores, Inc.*, 971 F.2d 522, 531 (10th Cir. 1992).

    Plaintiff's claim that the union breached its duty of fair
representation by failing to obtain an expert witness to challenge
the reliability of the GPS report is also without support.  A union

1   is not necessarily required to obtain an expert witness to fulfill

2   its duty of fair representation. *Walk v. P*I*E Nationwide, Inc.*,

3   958 F.2d 1323, 1328 (6th Cir. 1992). The decision whether to

4   procure an expert witness in this situation is a matter within the

5   wide range of reasonableness afforded a union in pursuing

6   grievances on behalf of its members. *See Smith, supra,* 96 F.3d

7   1066, 1069.

8         Ultimately, the GPS device was authorized by the CBA.

9   Plaintiff has no evidence there was any reason to further challenge

10  the use and function of the GPS device. Even if the Union breached

11  its duty of fair representation, Plaintiff must show that the

12  breach "seriously undermined" the grievance proceedings. *Webb v.*

13  *ABF Freight System, Inc.*, 155 F.3d 1230, 1242 (10th Cir. 1998); *see*

14  *also VanDerVeer v. UPS, Inc.*, 25 F.3d 403, 405 (6th Cir. 1994)

15  ("[T]he plaintiff must meet the onerous burden of proving that the

16  grievance process was seriously flawed by the union's breach of its

17  duty to represent employees honestly and in good faith and without

18  invidious discrimination or arbitrary conduct."). Plaintiff does

19  not satisfy this standard. Pacific Bell terminated Plaintiff for

20  failure to safeguard company property *and* misrepresenting facts

21  during an investigation. Even assuming arguendo, the GPS is

22  unreliable, it is undisputed that Plaintiff dropped his keys while

23  cable locating, resulting in a substantial loss of company

24  equipment.[39] These facts alone support Plaintiff's termination on

25  grounds that he failed to safeguard company property.

26

27

28         [39] Moreover, the 2004 side-letter agreement between Pacific
    Bell and the Union controls the issues concerning GPS usage.

65

1    Plaintiff has not produced any material disputed facts from
2    which a reasonable jury could find that Local 9333 did not pursue
3    his grievance in good faith.  Local 9333 represented him through
4    three levels of grievances, arguing that he should be reinstated
5    and made whole in every other respect.  Plaintiff had a history of
6    four prior disciplinary actions and was on notice that another
7    violation of the employer's rules would result in termination of
8    his employment.  The events of October 17, 2005, along with the
9    cellular phone records and police records, support the GPS data
10   compiled by the employer.  Plaintiff did not provide necessary
11   expert testimony that the GPS tracker was not capable of detecting
12   whether the vehicle was idling when it was stolen.  These
13   justifications and failure of proof are fatal to Plaintiff's claims
14   against Local 9333.

15   Plaintiff has not created a genuine issue of material fact
16   that the union's conduct in this regard was discriminatory or in
17   bad faith.

18                    iii.   Remaining Allegations Against Local Union.

19   Plaintiff's remaining allegations in his fifth cause of action
20   are a laundry list of complaints about employee infighting at
21   Pacific Bell, unprofessional demeanor by Local 9333, and an
22   isolated incident of a co-worker having a firearm on Pacific Bell
23   property.  (Pl.'s Opp. 3:15-3:21, 7:10-9:18, 26:26-28:5, 31:3-
24   33:4.)  None of these complaints amount to a breach of the duty of
25   fair representation.

26   In the first place, any bad feeling or tension between Pacific
27   Bell employees, union representatives and Plaintiff rises to a
28   breach of the union's duty to Plaintiff only if the union handled

1   his grievance improperly as a result.  That is, for the hostility

2   to be actionable, there must be a nexus between it and the improper

3   handling of Plaintiff's grievances and/or the decision not to

4   arbitrate his case.  *VanDerVeer v. United Parcel Services, Inc.*, 25

5   F.3d 403, 405-06 (6th Cir. 1994) (evidence that union steward

6   attempted to have employee discharged by reporting that he had

7   falsified his employment application did not establish breach of

8   duty of fair representation absent evidence of nexus between

9   alleged hostility of union steward and outcome of arbitration);

10  *Hardee v. North Carolina Allstate Services, Inc.*, 537 F.2d 1255,

11  1258 (4th Cir. 1976) (while record supported employee's contention

12  that there was "considerable tension" between himself and union

13  hierarchy, "mere existence of bad feeling is not enough to obviate

14  the finality of an arbitration award; [employee] must show that his

15  grievance was handled improperly").

16       There is simply no evidence to support the conclusion that

17  Local 9333 mishandled Plaintiff's grievance because of Plaintiff's

18  personal differences with or animus against Plaintiff by Steve

19  Bayes, Spencer, or Brown.  Local 9333 represented Plaintiff through

20  three levels of grievances, asserting oral and written arguments in

21  favor of reinstatement and back pay.  Local 9333 investigated his

22  claims, interviewed witnesses, and  kept him adequately apprised of

23  the status of his grievance.  Plaintiff has not provided necessary

24  testimony that Local 9333 mishandled the grievance based on

25  Plaintiff's disagreements with co-workers or union personnel.

26  There is no nexus evidence.  The same holds true for Plaintiff's

27  allegations that the union abused its power and did not allow him

28

67

1   to select his union steward.[40]   Plaintiff had no right to have a

2   specific steward present his case.

3       Plaintiff has not created a genuine issue of material fact

4   that the union's conduct was arbitrary, discriminatory or in bad

5   faith.

6

7       b.   District 9's Decision Not to Arbitrate.

8       Plaintiff argues that District 9's decision not to take his

9   grievance to arbitration is a breach of its duty of fair

10  representation.   District 9 argues that it had a valid,

11  nondiscriminatory reason for declining to pursue that grievance on

12  Plaintiff's behalf, and that it therefore did not breach its duty.

13      Plaintiff has presented no evidence to support a finding of

14  bad faith or discrimination.[41]   Rather, the record reflects that

15  District 9 conducted a fair and reasonable review of Plaintiff's

16  grievance and concluded that it was in the best interest of all of

17  its members not to pursue it, as it did not think it could prevail.

18  _____

19      [40] CBA Section 7.02 "Request For Union Representation" provides
    that "a Union representative shall be present, if the employee
20  requests" at any meeting between management and an employee
    regarding discipline or an investigative interview. The provision
21  allows for a union representative, but does not give the employee
    the right *to* choose the representative. Similarly, Section 7.05 of
22  the collective bargaining agreement defines the Grievance
    Procedure. Section 7.05.A. pertains to "a grievance involving
23  dismissal of any Regular or Term employee." In pertinent parts,
    Section 7.05.A. provides that paid Union representatives
24  "designated by the Local" may attend the meetings at Steps I, I1
25  and 111.

26      [41] Plaintiff admitted in his deposition that he had no facts
27  to suggest the union's decision not to arbitrate his grievance was
    arbitrary, discriminatory or in bad faith.   (Pl.'s Dep. 192:22-
28  192:25, 193:1-193:5, 193:18-193:21.)

                                68

That decision was within the bounds of District 9's power and discretionary authority:

> In the context of employee grievances, the duty of fair representation is not a straitjacket which forces unions to pursue grievance remedies under the collective bargaining agreement in every case where an employee has a complaint against the company. Individual employees do not have an absolute right to have their grievances taken through the arbitration process. Vaca v. Sipes, 386 U.S. at 191, 87 S. Ct. at 917. A union is accorded considerable discretion in dealing with grievance matters, and it may consider the interests of all its members when deciding whether or not to press the claims of an individual employee. Thus, the failure of a union to process an employee's grievance, even if it is possible to demonstrate that the grievance is meritorious, does not necessarily give rise to a breach of the duty of fair representation. 386 U.S. at 192-3, 87 S. Ct. at 917-18; Turner v. Air Transport Dispatchers' Association, 468 F.2d 297, 299 (5th Cir. 1972).

*Seymour v. Olin Corp.*, 666 F.2d 202, 208 (5th Cir. 1982); *see also Peterson*, 771 F.2d at 1253 ("Because a union balances many collective and individual interests in deciding whether and to what extent it will pursue a particular grievance, courts should accord substantial deference to a union's decisions regarding such matters.").

In support of his claims, Plaintiff relies solely on his reading of the CBA and his personal conclusion that his grievance should have been arbitrated. However, Plaintiff misreads the standard under which the Court is required to evaluated the Union's conduct: even if her grievance had merit, it was within the Union's sound discretion to investigate the grievance, weigh the interests of all of its members, and decline to pursue Plaintiff's grievance based on its non-discriminatory conclusion that its entire membership would be better served if it did not. *Moore*, 840 F.2d

at 637 ("A] disagreement between a union and an employee over a
grievance, standing alone, [does not] constitute evidence of bad
faith, even when the employee's grievance is meritorious.").
Further, an employee has no absolute right to have the union take
her grievance through every stage of the grievance process.
*Chernak v. Southwest Airlines*, 778 F.2d 578, 581 (10th Cir.
1985)(citing Vaca, 386 U.S. 171, 17 L. Ed. 2d 842, 87 S. Ct. 903
(1967)).  Nor can the plaintiff compel the union to pursue a
grievance having no legal merit.  *Id*.

     *Slevira v. Western Sugar Co.*, 200 F.3d 1218, (9th Cir. 2000),
is instructive.  In *Slevira*, the Ninth Circuit considered whether
a union breached its duty of fair representation by failing to
arbitrate Slevira's grievance and to assert a certain defense on
his behalf.  Slevira relied on *Peters v. Burlington N. R.R.*, 931
F.2d 534 (9th Cir.1990) for the proposition that "[w]hen a union
inexplicably ignores a strong substantive argument ... the
egregious nature of its failure transcends mere negligence."  In
distinguishing Peters from the facts of Slevira, the Ninth Circuit
stated:

> In Peters, the employee identified a provision of the
> collective bargaining agreement, which the union
> failed to raise at the arbitration.  The employee
> demonstrated that this provision likely made him
> eligible for the benefits he sought through the
> arbitration.  We reasoned that because the union
> failed to raise such an obviously meritorious
> argument, the employee established a question of
> material fact as to whether the union deliberated in
> the first place.  Here, Slevira provides no evidence
> comparable to the contract provision in Peters that
> implicates the union's failure to deliberate.

     The Ninth Circuit further distinguished Peters, finding that
the union considered Slevira's argument at length, interviewed

1   Slevira for two hours about the incident, examined the employee
2   statements taken by the employer, and obtained the advice of
3   counsel regarding whether Slevira had a viable claim.   The Ninth
4   Circuit also stated that the union offered a reason for not
5   pursuing Slevira's grievance to arbitration, namely that union
6   counsel reviewed the evidence and decided that "Slevira had no
7   defense against the grounds of termination."   *Id*.   The Ninth
8   Circuit concluded that "[i]f we were to require a more detailed
9   explanation, we would be second-guessing 'the union's judgment as
10  to how best to handle a grievance.'"   *Id. citing Patterson*, 121
11  F.3d at 1349.

12      Here, like *Slevira*, District 9's attorney, Mr. Rosenfeld, who
13  was experienced in representing union members in grievances,
14  considered witness statements, GPS evidence, and interviewed
15  Plaintiff.   During Plaintiff's interview, District 9 asked
16  Plaintiff to locate the 911 call and other evidence, to confirm
17  Plaintiff's version of events - and his timeline - that the vehicle
18  was not idling at the time it was stolen.   Plaintiff did not obtain
19  the evidence.   Rosenfeld then concluded, in his professional
20  judgment, that Plaintiff was not credible and could not prevail at
21  arbitration.   Rosenfeld withdrew Plaintiff's grievance.   District
22  9 has adequately explained the basis for its decision not to
23  arbitrate Plaintiff's grievance. *See O'Neill, supra*, 499 U.S. 65,
24  78 (finding that a union's decision not to pursue a grievance is
25  entitled to great deference.).

26      In accordance with the broad discretion traditionally owed to
27  unions, quality of the union's decision is not scrutinized. *See*
28  *Stevens,* 18 F.3d at 1447 ("[W]e have held consistently that unions

71

are not liable for good faith, non-discriminatory errors of judgment made in the processing of grievances."); *Herring v. Delta Air Lines, Inc.*, 894 F.2d 1020, 1023 (9th Cir. 1989) ("[A union] must be able to focus on the needs of its whole membership without undue fear of law suits from individual members."); *Dutrisac v. Caterpillar Tractor Co.*, 749 F.2d 1270, 1273 (9th Cir. 1983) ("Because the union must balance many collective and individual interests when it decides whether and to what extent to pursue a particular grievance, courts should accord substantial deference to the union's decisions.").  Further "[a] union may screen grievances and press only those that it concludes will justify the expense and time involved in terms of benefitting the membership at large." *Garnes v. United Parcel Service, Inc.*, 51 F.3d 112, 116 (8th Cir.1995) *quoting Griffin v. International Union, United Auto.*, *Aerospace & Agric. Implement Wkrs. of Am., UAW*, 469 F.2d 181, 183 (4th Cir.1972).  Even during an individual grievance procedure, the union's own credibility, its integrity as a bargaining agent and the interests of all its members may be at stake.  The union is therefore entitled to enjoy a somewhat different perspective than the individual employee it represents in a grievance matter.

Plaintiff has not produced any material evidence on which a reasonable jury could find that District 9's decision not to arbitrate his grievance was discriminatory or made in bad faith. The local union represented him through three levels of grievances. The District 9 attorney then reviewed the evidence and interviewed Plaintiff, making the independent decision that Plaintiff was not telling the truth.  Plaintiff had a history of disciplinary action and was on notice that another violation of the employer's rules

1   would result in his termination of employment.  Plaintiff did not

2   provide necessary expert testimony that the GPS tracker was not

3   capable of detecting if the vehicle was idling when it was stolen

4   or that such lack of capacity was known to Pacific Bell.  These

5   justifications and failure of proof are fatal to Plaintiff's claims

6   against District 9.

7       Plaintiff has failed to raise a genuine issue of material fact

8   as to the union's breach of the duty of fair representation.

9       Summary judgment for District 9 and Local 9333 on the Fifth

10  Cause of Action is GRANTED.

11

12  D.   Plaintiff's Sixth Cause of Action.

13      The Union Defendants move for summary judgment in connection

14  with the Sixth Cause of Action for defamation by slander and

15  "blacklisting," which is alleged against all Defendants.

16      Plaintiff alleges:

17          56.  On or about November 17, 2005 Defendants
            SHANE SPENCER and ALAN BROWN and the other
18          party Defendants and each of them spread
            rumors about Plaintiff's firing which have
19          made it virtually impossible for him to gain
            employment in the County of Stanislaus or any
20          other County in which the AFL-CIO is the
            Union of 'Choice.'
21
            57.  Specifically, representatives from CWA
22          and District 9 as well as representatives
            from PAC BELL, AT&T and SBC, ALAN BROWN
23          through the specific direction of SHANE
            SPENCER told other employees that 'Blake was
24          fired for lying.'  The Defendants knew that
            this was not true or at least that they could
25          not prove or disprove the truth or falsity of
            the statement.
26
            58.  In fact, Blake Smith had been
27          forthcoming from the beginning of this ordeal
            that he did not intentionally leave his keys
28          unattended.  He believes and maintains to

                                73

this day that the keys in question fell out
of his pocket while he was obtaining
equipment at the rear of his truck in order
for him to mark cables.  This is corroborated
by the Plaintiff's statement that he
witnessed the ex-SBC employee reach down and
pick the keys up from the ground at the rear
of the truck.

59.  The Defendants and each of them
published and republished these slanderous
misrepresentations about Plaintiff to persons
both within the company and within the union
as well as to the general public in order to
harm his reputation in the community and to
black list him, so that he could not obtain
other similar employment.

60.  This act of blacklisting and defaming
Plaintiff is a violation of California Labor
Code §§ 1050-1054 ....

1.   Slander

Union Defendants argue that plaintiff failed to sufficiently
plead the substance of his slander claim.  Under California Civil
Code § 46, "slander is a false publication, orally uttered ...
which ... tends directly to injure him in respect to his office,
profession, trade or business, either by imputing to him general
disqualification in those respects which the office or other
occupation peculiarly requires."  The statutory definition of
slander is very broad and includes any language which, on its face,
has a natural tendency to injure a person with respect to her
occupation. *Semple v. Andrews*, 27 Cal. App. 2d 228, 232,(1938).

Plaintiff presents no evidence that any representative of the
Union Defendants made defamatory statements about Plaintiff.[42]  The

---

[42]   When asked whether he had any allegations that anyone at
the union spread rumors about him, Plaintiff responded "No." (Dep
of Pl. 180:24-181:1.)

74

1 individuals named in the Sixth Cause of Action, Shane Spencer and

2 Alan Brown, are employees of Pacific Bell and are not alleged to be

3 officials of Local 9333 or District 9.  Plaintiff's memorandum in

4 opposition to the Union Defendants' motions for summary judgment

5 does not address this ground for summary judgment.

6

7     2.   "Blacklisting"

8     Union Defendants argue that Plaintiff failed to sufficiently

9 plead the substance of his blacklisting claim.  The claim of

10 "blacklisting" evolved from California Labor Code Sections 1050 and

11 1054, which allow an employee to initiate litigation against his

12 former employer for misrepresentations made after he has left

13 employment that preclude him from finding future employment.

14 *Newberry v. Pacific Racing Asso.*, 854 F.2d 1142, 1151-1153 (9th

15 Cir. 1988).

16     Section 1050 of the California labor Code provides that "any

17 person ... who, after having discharged an employee from the

18 service of such person ... by any misrepresentation prevents or

19 attempts to prevent the former employee from obtaining employment,

20 is guilty of a misdemeanor."  Cal. Lab. Code § 1050.  Section 1054

21 authorizes a civil action to recover for violations of section

22 1050.  *Id.* § 1054.

23     Plaintiff presents no evidence or argument that the Union

24 Defendants violated the California Labor Code.  Alan Brown and

25 Shane Spencer are employees of Pacific Bell and are not alleged to

26 have any official connection with the Union Defendants.

27 Plaintiff's evidence that an SBC technician told the owner of a

28 Napa Auto Parts store in Turlock that Plaintiff was fired for lying

1  does not constitute evidence that the Union Defendants engaged in

2  conduct proscribed by the California Labor Code.[43]

3      Summary judgment for the Union Defendants on the Sixth Cause

4  of Action is GRANTED.

5

6                      VI.   CONCLUSION.

7      For the reasons set forth above, District 9 and Local Union's

8  motions to strike are GRANTED and motions for summary judgment are:

9      (1) GRANTED as to Plaintiff's third cause of action for breach

10  of contract.

11      (2) GRANTED as to Plaintiff's fourth cause of action for

12  fraud.

13      (3) GRANTED as to Plaintiff's claim for breach of the duty of

14  fair representation.

15      (4) GRANTED as to Plaintiff's sixth cause of action for

16  slander and black listing.

17      Defendants shall submit a form of order consistent with this

18  memorandum decision within five (5) days of electronic service.

19  **IT IS SO ORDERED.**

20  **Dated:    August 11, 2009**              **/s/ Oliver W. Wanger**
                                    **UNITED STATES DISTRICT JUDGE**

21

22

23

24

25

26  _____
        [43] Plaintiff presents no evidence from which it may be inferred
27  that Plaintiff applied for a position with the Napa Auto Parts
    store or that the unnamed technician acted on behalf of the Union
28  Defendants or SBC.