1

2                    UNITED STATES DISTRICT COURT

3                    EASTERN DISTRICT OF CALIFORNIA

4

5
      ┌─────────────────────────────┐
6     BLAKE SMITH,                        No. CV-F-06-1756 OWW/DLB

7              Plaintiff,                 MEMORANDUM DECISION RE
          v.                              DEFENDANTS PACIFIC BELL,
8                                         SHANE SPENCER, AND ALAN
      PACIFIC BELL TELEPHONE              BROWN'S MOTION FOR SUMMARY
      COMPANY, INC., et al.,              JUDGMENT (Doc. 49) AND MOTION
9                                         TO STRIKE (Doc. 106)
              Defendant.
10    └─────────────────────────────┘

11              I.    INTRODUCTION.

12         Plaintiff brings this action pursuant to § 301 of the Labor-

13    Management Relations Act, 29 U.S.C. § 185, claiming that his

14    employer, defendant Pacific Bell, Inc. ("Pacific Bell"), terminated

15    his employment in violation of the collective bargaining agreement

16    between Pacific Bell and Plaintiff's union, defendants District 9

17    and Local 9333 of the Communications Workers of America, AFL-CIO

18    ("CWA" or "Union").  Plaintiff also alleges that the Union breached

19    its duty of fair representation by conducting a perfunctory

20    investigation and refusing to take his grievance to arbitration.

21    Plaintiff also brings attendant state law claims for fraud and

22    defamation.

23         On December 6, 2006, Plaintiff filed a Complaint for Wrongful

24    Termination against Defendants Pacific Bell; AT&T Communications of

25    California, Inc.;[1] SBC Telecom, Inc.; Shane Spencer; Alan Brown;

26    Communications Workers of America Local 9333 Union AFL-CIO ("Local

27    ─────────────────────

28         [1] AT&T Communications of California, Inc. and SBC Telecom,
      Inc. were dismissed pursuant to stipulation (F.R.C.P. 41(a)) on
      February 1, 2008.  (Doc. 62.)

9333" or "Local Union"); and Communications Workers of America District 9 Union AFL-CIO ("District 9").[2]   The Third Cause of Action alleges breach of the Collective Bargaining Agreement against all Defendants; the Fourth Cause of Action alleges fraud against the Union Defendants; the Fifth Cause of Action alleges breach of the duty of fair representation against Local 9333 and District 9; and the Sixth Cause of Action alleges defamation by slander against all Defendants.

Before the court for decision is the motion for summary judgment filed by Defendants Pacific Bell, Shane Spencer, and Alan Brown.[3]

## II.   FACTUAL BACKGROUND.[4]

In October 2005, Plaintiff worked as a cable locator for

---

[2] The First and Second Causes of Action for breach of the implied covenant of good faith and fair dealing were dismissed with prejudice as preempted by L.M.R.A. § 301 by Order filed on April 13, 2007. (Doc. 29.)

[3] The motions for summary judgment filed by Defendants Local 9333 and District 9 are resolved by separate Memorandum Decision.

[4] Unless otherwise noted, the facts herein are undisputed. (See Stmt. of Undisp. Facts in Support of Def.'s Mot. for Summ. J. ("SUF"), filed by Defendants Pacific Bell, Adam Brown, and Shane Spencer on Dec. 28, 2007). Plaintiff filed a single "Statement of Disputed Facts" in response to each of the pending motions for summary judgment.

Plaintiff objects to much of the evidence submitted by defendants on various grounds. Virtually all of Plaintiff's objections are without merit. Further, to the extent that Plaintiff's sole dispute with facts is based upon the inadmissability of Defendants' evidence, and is not challenged by any admissible evidence submitted by Plaintiff, the court will view these facts as undisputed.

Pacific Bell, a regional telephone company providing telephone and data transmission services to retail consumers over its telecommunications infrastructure and facilities. (SUF 1.) Pacific Bell and the Union are parties to a collective bargaining agreement ("CBA") which states that employees can only be terminated for "good cause." (SUF 3.) The CBA also contains a mandatory grievance clause and provides for final and binding arbitration. (SUF 4.) Plaintiff was a member of the Union, who was the exclusive bargaining agent for a bargaining unit of Pacific Bell employees that included Plaintiff. (SUF 2.)

Under the CBA, the Union may file a grievance based on any alleged violation of the CBA. (Dec of D. Flores ¶ 4.) A grievance may be addressed at three stages ("Step 1 through Step 3"), with each step involving a more senior company and union official.[5] (*Id.*) If the grievance is not resolved at Step 3, the Union may appeal the Company's decision to a neutral arbitrator. (*Id.*) The decision whether to take an unresolved grievance to arbitration is made at the district level. (*Id.* ¶ 6.) After the matter has been moved to the district level, the local union does not have any continuing obligation regarding the investigation, handling or processing of the grievance. (*Id.* ¶ 7.)

Pacific Bell vehicles are generally equipped with a Vehicle Tracking Unit ("VTS"), which directly links to Global Positioning Satellites ("GPS"). (SUF 13.) Pacific Bell equipped Plaintiff's

---

[5] Under CWA's grievance handling procedures, the local union is responsible for the preliminary investigation and the filing of a grievance. (Dec. of L. Sayre ¶ 5.) The local union is also responsible for participation in the first, second, and, if applicable, third steps of the grievance process. (*Id.*)

3

work vehicle with GPS several years prior to the events at issue in this case. (SUF 14.) It is undisputed that Plaintiff knew his vehicle contained a GPS monitoring device on October 17, 2005. (Pl.'s Dep. 102:18-102:20.)

Pacific Bell's use of GPS data for disciplinary purposes is authorized by the CBA. (Dec. of G. Flores ¶ 3.) In 2004, the Union expressed concerns about Pacific Bell's use of GPS data for employee discipline. (*Id.* at ¶ 8-9.) The Union proposed that GPS data not be used at all. (*Id.*) Pacific Bell rejected this and proposed that the parameters be spelled out in an enforceable side-letter agreement. (*Id.*) On July 12, 2004, Pacific Bell and the Union entered into "a side letter agreement:"

> GPS is one of many management tools used to review employee performance or behaviors. GPS will not be used as the sole basis for disciplinary action, but may be used to substantiate information obtained from other sources. As in all cases where discipline may be warranted, management will conduct a complete and thorough investigation and may utilize GPS reports as an additional tool in the investigation.

(Exh. B to Dec. of D. Flores.)

Pacific Bell uses GPS reports for a variety of reasons, such as ensuring that employees are working at assigned locations at particular times or to ensure that vehicles are being operated safely within the speed limits. (Dec. of G. Flores ¶ 8.) The reports generated by the GPS system report the following data: (a) the time and location of the vehicle every time the ignition is turned on and off; (b) the time and location of the vehicle every seven minutes; (c) the time and location of the vehicle every one mile driven; and (d) the time and location of the vehicle the first

4

1  time it reaches 20 mph after the ignition is initially turned on.
2  (SUF 13.)

3      According to Steve Larson, Manager of Vehicle Tracking
4  Services since March 2001, GPS units attached to Plaintiff's
5  vehicle on October 17, 2005 are extremely accurate.  (Larson Dec.
6  ¶ 1,5.)    Although there are time that the system has experienced
7  problems, those instances are rare.    (Larson Dec. ¶ 5.)  If the
8  GPS unit is not functioning properly, the report will indicate a
9  problem.    (Id.)   According to Larson, the GPS records from
10 Plaintiff's vehicle on October 17, 2005 did not indicate a
11 malfunction or error.  (Larson Dec. ¶ 4, 10.)   Larson also stated
12 that there was no record of service request concerning Plaintiff's
13 GPS unit in October 2005.   (Larson Dec. ¶ 10.)

14     On October 17, 2005, Plaintiff's company vehicle was stolen
15 while he was locating cable in Keyes, California.  (SUF 6.)   At
16 around 1:00 p.m., Plaintiff maintains he parked his vehicle,
17 removed the keys from the ignition, locked the van, and proceeded
18 to the rear of the van to remove his locating wand.  (SUF 6; Dec.
19 of A. Brown ¶¶ 8-9.)  Plaintiff then began walking to the worksite,
20 away from his company vehicle.  (*Id.*)  Pacific Bell had a rule
21 requiring locking company vehicles and Plaintiff was aware of this
22 company rule.  (SUF 43; Pl.'s Dep. 35:3-35:10.)   Plaintiff's van
23 was also equipped with GPS equipment.  (SUF 14.)

24     According to Plaintiff, sometime after 1:00 p.m., he was cable
25 locating approximately 150 feet away when he saw a bicyclist
26 approach his vehicle.   Plaintiff noticed the bicyclist pick
27 something up off of the ground and enter the cabin of his vehicle.
28 The bicyclist then proceeded to drive off in the vehicle.

**5**

1   Plaintiff immediately moved toward the van and dialed 911.[6]   (SUF

2   7.)   After concluding the short pursuit and the 911 call, Plaintiff

3   phoned his supervisor, Alan Brown.[7]   (SUF 8.)

4        Plaintiff's stolen vehicle was located approximately 20-30

5   minutes later.[8]   (SUF 10.)   A CHP officer, who had arrived at the

6   the theft location (Nunes and Washington Streets), drove Plaintiff

7   to the location of his recovered work vehicle (Nora Avenue and

8   Ninth Street).   (Pl.'s Dep. 82:1-82:9.)   Local Shop steward John

9   Mastrangelo ("Mastrangelo") and Brown were at the location of the

10  recovered vehicle when Plaintiff and the officer arrived.[9]   (Pl.'s

11  Dep. 83:1-83:4, 86:15-86:22.)   Upon inspection, the vehicle was

12  missing the company laptop, miscellaneous tools, and change from

13  the ashtray.   (SUF No. 10.)

14

15      [6] The California Highway Patrol's Report concerning the
16  incident states: "On October 17, 2005, at approximately 1310 hours,
    I was advised of a victim standing by for a report to be taken on
17  a stolen vehicle that was taken while he was doing cable repairs on
    Nunes Road and Washington Avenue."   (Doc. 50-7, Ex. A, pp. 13.)

18
19      [7] Brown's cellular phone records indicate an incoming call
    from Plaintiff's phone at 1:12 p.m. on October 17, 2005. (Doc. 50-
20  11, Ex. B, pp. 6.).   Brown was Plaintiff's first level supervisor
    from February 2005 through November 2005. (Dec. of S. Spencer ¶¶ 1-
21  2.)   Shane Spencer ("Spencer") was Plaintiff's second level
    supervisor from March 2003 through November 2005.   (Id.) Before
22  Brown, Plaintiff's first level supervisor was Todd Bayes ("Bayes").
    Both Bayes and Brown reported directly to Spencer.   (Id.)
23
24      [8] Stanislaus County Sheriff's Incident Report states: "On 10-
    17-05 at approximately 13:15 hours: Detective Mendonca from the
25  Sheriff's Department came on the radio saying he was in the Keyes
    area and had spotted a stolen 'SBC', telephone repair van being
26  operated on 9th street in Keyes."   (Doc. 50-7, Ex. A, pp. 10.)

27      [9] Following the theft, Brown also contacted Spencer and Asset
    Protection, the corporate security investigation department for
28  Pacific Bell.   (Dec. of M. Ferrara ¶ 3.)

On October 18, 2005, Plaintiff attended an investigatory meeting concerning the theft of his work vehicle.[10]  (SUF 16.) Plaintiff, Mastrangelo, Brown, and another Pacific Bell representative attended the meeting.  (SUF 16.)  Brown told Plaintiff that GPS data from the van showed that it had been idling at the time of the theft.  (SUF 15, 19.)  Plaintiff was given an opportunity to explain his side of the story.  (SUF 17.)  Plaintiff denied leaving the keys in the vehicle while it was running and stated that the keys must have fallen off his keychain when he was locking the vehicle's rear doors.  (SUF 18.)  At the conclusion of the meeting, Plaintiff was suspended pending further investigation. (SUF 18.)

On November 1, 2005, during his suspension, Plaintiff was asked to meet with an investigator from the Pacific Bell's Asset Protection Division.  (SUF 21.)  During this meeting, Plaintiff denied he left the vehicle idling and could not explain why the GPS report said otherwise.  (SUF 22.)  He repeated that he removed the keys from the ignition and must have dropped them when removing equipment from the vehicle's rear doors.  (SUF 22.)

On November 2, 2005, Brown conducted a test of Plaintiff's vehicle to ensure the GPS unit functioned properly. (Dec. of A.

---

[10] Prior to the meeting with Plaintiff, Brown contacted Steve Larson ("Larson"), who handles vehicle tracking services ("VTS") for Pacific Bell. (Dec. of A. Brown ¶ 11.)  Brown asked Larson to pull the October 17, 2005 vehicle activity report for Plaintiff's vehicle.  (*Id.*)  Larson transmitted the vehicle's daily log to Brown and Spencer, who discussed the significance of the GPS coordinates.  (*Id.*)  Because the GPS data indicated that the Plaintiff's vehicle was idling during at the time of the theft, Brown called Plaintiff into a meeting later that day. (*Id.*)

Brown ¶ 15.)   Brown made four stops at specific addresses near where Plaintiff's vehicle was stolen.  (*Id.*)  Brown also restarted the vehicle along Plaintiff's route.  (*Id.*)  After returning the vehicle to the garage, Brown had Larson pull the vehicle's GPS report.  (*Id.*)  The report confirmed that the GPS unit was functioning properly as all the starts, stops, and times matched Brown's contemporaneous notes of his movements earlier that day. (*Id.*)  Brown sent a summary of his findings to Spencer and Asset Protection.  (*Id.*)

On November 18, 2005, Brown, Spencer, Ellen Singleton (Labor Relations), and Roger Odom (Human Resources), met to discuss the investigation, Asset Protection's findings, and Plaintiff's disposition.   (Dec. of A. Brown ¶ 16.)   Brown and Spencer determined that the evidence demonstrated that Plaintiff's vehicle was idling when it was stolen, which meant the keys were in the ignition and that Plaintiff's report of the facts was false.  (SUF 25.)   Spencer and Brown decided to terminate Plaintiff for not safeguarding company property and misrepresenting facts during the investigation, i.e., that Plaintiff lied. (SUF 25.)

On November 22, 2005, Plaintiff attended a meeting with Mastrangelo, Johnson, Brown, Spencer, union representative Virginia Santos, and cable repair manager Warren Anderson.  (SUF 26.)  Brown conducted the meeting and informed Plaintiff that he was terminated.   (SUF 26.)   Brown stated that the investigation determined that Plaintiff violated the Company's Code of Business Conduct by failing to safeguard company property and that he misrepresented facts during the investigation.  (SUF 26.)  During his employment, Plaintiff had been disciplined for violations of

Pacific Bell Policy and was advised, on at least four occasions, that any further incidents could lead to termination.  (SUF 5.)

On November 23, 2005, during a staff meeting, a service technician asked Brown several questions concerning Plaintiff's termination.[11]  (SUF 50.)  According to Plaintiff, Brown responded that Plaintiff was terminated "because of lying during an investigation." (SUF 51.)  Plaintiff also claims to have overheard Spencer tell Brown that he thought Plaintiff was lying about what happened on October 17, 2005 and he would use GPS to prove it. (SUF 53.)

Following Plaintiff's discharge, the Union filed a grievance on his behalf.  (SUF 27.)  The union asserted that the sole reason for Plaintiff's dismissal was the GPS report, which was in direct violation of the CBA and agreement governing Pacific Bell's use of GPS records.  (Exh. H, Dec. of L. Johnson; Exh. C, Dec. of D. Flores.)  Pacific Bell denied that GPS was the sole reason for his dismissal and maintained that Plaintiff's explanation regarding the theft was not plausible.  (*Id.*)  Plaintiff had three prior disciplinary incidents, the most serious of which resulted in the warning that he could be terminated if another incident occurred. The union requested that Plaintiff be reinstated to his position at Pacific Bell and made whole in all other respects.  (SUF No. 46; Exh. D, Dec. of D. Flores.)

A Step 1 grievance meeting was held on December 7, 2005. (SUF 28.)  Brown, representing Pacific Bell, and Johnson, representing

---

[11] Only Pacific Bell employees attended the staff meeting. (SUF 52.)

1  Local 9333, attended the Step 1 meeting, at which time Johnson

2  demanded that Plaintiff be reinstated.   (Dec. of Brown ¶ 16.)

3  Brown refused Johnson's request to reinstate Plaintiff and denied

4  the grievance.  (*Id.*)  Brown also confirmed that Johnson received

5  all of the documentation she requested, including copies of the

6  asset protection report, interview notes, the GPS report, and the

7  Stanislaus County Sheriff's report.  (Doc. 50-4, Exh. F, pp. 18.)

8       A Step 2 grievance meeting was held on January 5, 2006.  (SUF

9  29.)   Larry Gordon, Juan Saralegui, John Mastrangelo, and Lynn

10 Johnson attended on behalf of the Union.  (Dec. of S. Spencer ¶

11 17.)   Spencer and Tony Kobliska attended on behalf of Pacific Bell.

12 (*Id.*)  According to the minutes of the meeting, the group reviewed

13 Plaintiff's grievance and Local 9333 representatives again

14 requested that Plaintiff be reinstated to his full-time position.

15 (Doc. 53, Exh. E, pp. 35.).   Lynn Johnson asked why Plaintiff was

16 terminated instead of suspended for 30/60 days.  Kobliska stated

17 that Plaintiff "was terminated because of his inherent risk to the

18 business." (*Id.*)  Pacific Bell refused to reinstate Plaintiff and

19 denied the grievance.  (*Id.*)

20      A Step 3 grievance meeting was held on February 16, 2006.

21 (SUF 30.)  Larry Gordon and Lynn Johnson attended on behalf of the

22 Union.  (Dec. of D. Flores ¶ 11.[12])  Murchison, Kubliska, and John

23 Berringer attended on behalf of Pacific Bell.  (*Id.*)  Local 9333

24 again asserted that Plaintiff was dismissed solely because of the

25 GPS report, contrary to the side-letter agreement. (*Id.*)  Although

26

27       [12] See "Step 3 Meeting Notes," Doc. 50-10, Exh. C to Dec. of

28 D. Flores.

1  Pacific Bell admitted that it "used GPS heavily on this," it
2  asserted that his termination was "based on the vehicle being
3  stolen." (Id.)  Pacific Bell maintained that Plaintiff's
4  explanation regarding the theft was not plausible, i.e, that
5  Plaintiff lied. (Id.)  Pacific Bell refused Local 9333's request
6  to reinstate Plaintiff and denied the grievance. (*Id.*)

7       On March 9, 2006, District 9 notified the company of its
8  intent to arbitrate Plaintiff's grievance under Sections 7.10C,
9  7.10D, 7.11D, and 7.15 of the CBA. (SUF 32.)  District 9
10 maintained that the termination was not justified and requested
11 that Plaintiff be reinstated, that the company remove all the
12 documentation concerning the incident, and that Plaintiff be made
13 whole in every respect. (Dec. of D. Flores ¶ 11.)

14      Plaintiff's arbitration was set for September 27, 2006. Prior
15 to the arbitration, the Union and Pacific Bell exchanged
16 Plaintiff's personnel records, as well as numerous operating
17 manuals, GPS-related documents, and information about other
18 employees disciplined after reviewing GPS records. (SUF 33-34.)

19      After a meeting between Plaintiff and the Union's attorney,
20 Mr. Rosenfeld on September 25, 2006, District 9 formally withdrew
21 Plaintiff's grievance.  In a letter to Pacific Bell's arbitration
22 counsel, Rosenfeld stated that District 9 decided not to pursue the
23 grievance any further because "after reviewing the evidence, we
24 determined that we could not prevail." (SUF 36-37.)

25                    III. PROCEDURAL BACKGROUND.

26      On December 6, 2006, Plaintiff filed a complaint for wrongful
27 termination against Pacific Bell, AT&T, SBC Telecom, Inc., Spencer,
28 Brown, the Local Union, and District 9. (Doc. 2.)  Count III

                              11

1  alleges that Pacific Bell breached the CBA by terminating
2  Plaintiff's employment without good cause.  Also under Count III,
3  Plaintiff alleges that the union breached the CBA by failing to
4  protect his employment following his suspension and discharge.

5  Count IV alleges that the union defendants committed fraud
6  when they deceived Plaintiff into making monthly dues payments with
7  full knowledge that they would not fulfill their promise to protect
8  his interests.  Count V alleges that the union defendants breached
9  their duty of fair representation by performing a perfunctory
10 investigation and arbitrarily failing to pursue his claim to
11 arbitration.  Count VI recites state law claims for libel and
12 blacklisting, arising out of the defendants allegedly telling
13 Pacific Bell employees that Plaintiff was discharged for lying.
14 Plaintiff alleges that these false statements have made it
15 impossible for him to acquire employment in Stanislaus County.

16 Defendants Pacific Bell, Shane Spencer, and Alan Brown filed
17 their motion for summary judgment on December 28, 2007.  (Doc. 49.)
18 With their motion, Defendants filed a Statement of Undisputed
19 Facts.  (Doc. 50-1.)  Defendants seek judgment on the grounds that
20 Plaintiff cannot demonstrate that the union defendants breached the
21 duty of fair representation - a prerequisite to finding Pacific
22 Bell breached the CBA.  Defendants also argue the state law claim
23 should be dismissed because: 1) the statements were privileged
24 under Cal. Civ. Code § 47; 2) Plaintiff's claim is preempted by §
25 301 of the LMRA; and 3) the allegedly defamatory statements are not
26 actionable as they are true.

27 Defendants' motion for summary judgment was noticed for
28 hearing on January 28, 2007.  By Stipulation and Order filed on

1  January 22, 2008, (Doc. 59), the hearing on the motions for summary
2  judgment was continued to March 17, 2008.

3      Plaintiff filed his opposition to Defendants' summary judgment
4  motion on February 29, 2009. (Doc. 71.)   In support of his
5  opposition, Plaintiff submitted: (1) a single Memorandum opposing
6  all the motions ("Memorandum"); (2) the affidavit of John
7  Mastrangelo; (3) the affidavit of Michael Caloyannides, PhD; and
8  (4) a single Statement of Disputed Facts ("PSDF").  (Docs. 72-74.)
9  Plaintiff did not file an opposition to Defendants' statements of
10  undisputed facts.

11      On March 10, 2008, Defendants filed a reply and evidentiary
12  objections. (Docs. 90, 94.)  Defendants objected to the affidavits
13  of John Mastrangelo and Michael Caloyannides, PhD., and Plaintiff's
14  Statement of Disputed Facts. (Doc. 85, 87, 92.)

15      By Minute Orders filed on March 10, 2008, April 23, 2008, June
16  11, 2008, and August 5, 2008, the hearing on the motions for
17  summary judgment were continued due to the press of court business.
18  (Docs. 76, 97, 98, 100.)  The August 5, 2008 Minute Order continued
19  the hearing from August 11, 2008 to August 25, 2008.

20      On August 11, 2008, Plaintiff filed a Supplemental Affidavit
21  of Michael Caloyannides, PhD, in opposition to the motions for
22  summary judgment (Doc. 101).  On August 12, 2008, Plaintiff filed
23  his "Reply and Objections to Defendants' Separate Statements of
24  Undisputed Facts" in opposition to the Employer Defendants' motion
25  for summary judgment, (Doc. 102), his "Reply and Objection" to
26  Defendant Local 9333's statement of undisputed facts in support of
27  Local 9333's motion for summary judgment, (Doc. 103), and his
28  "Reply and Objection" to Defendant District 9's statement of

13

undisputed facts in support of District 9's motion for summary judgment, (Doc. 104).  Also on August 11, 2008, Plaintiff filed a "Supplemental Statement of Disputed Facts."  (Doc. 105.)

On August 14th, 2008, Pacific Bell, Spencer, and Brown filed a motion to strike the documents filed by Plaintiff on August 11th and 12th.  (Doc. 106.)  The hearing on the motions to strike was set for August 25, 2008, the same day as the summary judgment hearing.

By Minute Orders filed on August 20 and 28, 2008, and September 2, 2008, the hearing on the motions for summary judgment and motions to strike was continued.[13]  (Docs. 118, 120, 121.)  The September 2, 2008 Minute Order continued the hearing from September 15, 2008 to September 29, 2008.

The parties appeared before the court on September 29, 2008, for argument on Defendants' motion for summary judgment and motion to strike.  During the September 29, 2008 hearing, the Court stated to Plaintiff's counsel "if you can find me a case, I'll let you do it, that says that the making a [sic] negligent or an incomplete investigation that breaches the duty of fair representation."  On October 2, 2008, Plaintiff filed a "Submission of Supplemental Authority After Oral Argument Re: Motion for Summary Judgment".  (Doc. 130.)

On October 7, 2008, Pacific Bell, Spencer, and Brown moved to strike Plaintiff's Supplemental Authority on the ground that it was not authorized to be filed by the Court and constituted a re-briefing of arguments and authority already presented to the Court.

_____

[13] The hearings were continued either by stipulation or due to the press of court business.

**14**

(Doc. 133.)   District 9 joined the motion on October 10, 2008. (Doc. 134.)   The Court denied Defendants' motion on October 27, 2009 and granted Defendants an opportunity to file responsive papers to the supplemental authority.   (Doc. 135.)

On November 10, 2008, Pacific Bell, Spencer, and Brown filed a response to Plaintiff's "Submission of Supplemental Authority After Oral Argument Re: Motion for Summary Judgment."   (Doc. 139.)

A.   Motion to Strike (Doc. 106.)

The motion for summary judgment was filed by Defendants on December 28, 2007 and noticed for hearing on January 28, 2007.   By Stipulation and Order filed on January 22, 2008, (Doc. 59), the hearing on the motions for summary judgment was continued to March 17, 2008.   The Stipulation and Order provided:

> Any opposition or reply shall be filed in accordance with F.R.C.P. and Local Rules based on the new hearing date [March 17, 2008]. Plaintiff shall not seek a further continuance of the Summary Judgment Motions and shall not raise the need for additional time in Plaintiff's Opposition to the Summary Judgment Motions.

Plaintiff's oppositions to these motions were filed on February 29, 2008.   Although Plaintiff filed his Statement of Undisputed Facts in opposition to the motions for summary judgment, Plaintiff did not comply with the requirements of Rule 56-260(b), Local Rules of Practice:

> Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied

15

1          upon in support of that denial.

2          Defendants' reply papers were filed on March 10, 2008.   By

3  Minute Orders filed on March 10, 2008, April 23, 2008, June 11,

4  2008, and August 5, 2008, the hearing on the motions for summary

5  judgment was continued due to the press of court business.   The

6  August 5, 2008 Minute Order continued the hearing from August 11,

7  2008 to August 25, 2008.

8          On August 11, 2008, Plaintiff filed a Supplemental Affidavit

9  of Michael Caloyannides, PhD.   (Doc. 101.)   On August 12, 2008,

10 Plaintiff filed his "Reply and Objections to Defendants' Separate

11 Statements of Undisputed Facts" in opposition to the Employer

12 Defendants' motion for summary judgment, (Doc. 102), his "Reply and

13 Objection" to Defendant Local 9333's statement of undisputed facts

14 in support of Local 9333's motion for summary judgment, (Doc. 103),

15 and his "Reply and Objection" to Defendant District 9's statement

16 of undisputed facts in support of District 9's motion for summary

17 judgment.   (Doc. 104.)   Also on August 11, 2008, Plaintiff filed a

18 "Supplemental Statement of Disputed Facts," (Doc. 105), which

19 purports to add Plaintiff's disputed facts Nos. 300 to 463.

20 Plaintiff did not seek or obtain leave of Court to file these

21 papers, which sought to correct the deficiencies and non-compliance

22 with the rule of court in his earlier submissions.

23         Defendants move to strike Plaintiff's August 12, 2008 filings

24 on the grounds that they were filed six months after Plaintiff was

25 required to file them.   (Docs. 109, 112.)   Defendants note that,

26 although the Court continued the hearing dates for the motions for

27 summary judgment, the Court did not continue the filing deadlines

28

and, in fact, all briefing on the motions for summary judgment was complete as of March 10, 2008.  Defendants further note that Rule 78-230, Local Rules of Practice, does not provide for the filing of sur-reply papers.

Plaintiff argues that Rule 78-230(c) allows the filing of the papers filed on August 11 and 12, 2008:

> Opposition, if any, to the granting of the motion ... shall be filed with the Clerk not less than fourteen (14) days preceding the noticed (or continued) hearing date.

Plaintiff asserts that, because the hearing date for the motions for summary judgment was continued by the Court several times, his supplemental opposition papers are timely and no leave of Court to file them was necessary.  This is categorically wrong.  The law and motion rules do not provide for a game of ping-pong.  The moving party has a right to file a motion a reply to the non-moving party's response.  The opposing party is permitted a response, not a sur-rebuttal.

By Declaration filed on August 22, 2008, Plaintiff's counsel avers that he filed the Supplemental Caloyannides Declaration:

> 1.  A supplemental affidavit was filed by Michael Caloyannides, PhD due to the objections which were filed by defendants to his original affidavit.  Although we are confident that his original affidavit stands on its own we determined that a supplemental affidavit would be prudent just in case.
>
> 2.  It took many months of careful review of all of the depositions, police reports, affidavits, SBC Asset Protection Report, moving documents, and all other documents to make the decision ultimately to file the supplemental affidavit.  Whether or not all of these items will ultimately be found to be admissible by the court our expert reviewed them.

17

1

2

3.   After this careful and thoughtful review Dr. Caloyannides, PhD provided his affidavit to plaintiff's counsel which in turn was filed by the court [sic].   The date that the affidavit was provided was mere days before it was filed.

3

4

5

4.   We believe that this supplemental affidavit sets to rest once and for all the methods and practices employed by Dr. Caloyannides to make his findings.   These methods and practices are scientific and are followed by his fellow scientists.   In an effort to aid the trier of fact we have filed this affidavit.

6

7

8

9

5.   We believe that all of the documents that we have recently filed are timely given the movement of the date set for hearing these motions to September 8, 2008 and given that oral argument would have been made and will be made at that hearing, if allowed.   We anticipate that all sides will be making oral argument at the hearing.   We have anticipated and organized our thoughts into writing to aid the trier of fact.   We will be specifically addressing those points at oral argument if permitted to do so.   The defendants through their respective counsel will likely also be permitted to address those points and perhaps others as well.

10

11

12

13

14

15

16

17

6.   It has been pointed out that an affidavit may be required to support the supplemental affidavit of Michael Caloyannides, PhD. Therefore, in an effort to comply with all local rules, we are now filing this affidavit.

18

19

20

7.   We respectfully request that this affidavit and the affidavit of Michael Caloyannides, PhD be considered when making a decision about the Motion [sic] for Summary Judgment and Motions to Strike.

21

22

23

8.   We carefully reviewed the local rules and Federal Rules of Civil Procedure when opposing these motions and perhaps we may have misinterpreted or failed to recognize this particular rule.

24

25

26

9.   I sincerely apologize for the late filing of this affidavit.

27

28

18

1    Plaintiff's reading of Rule 78-230(c) misses the mark.
2    Plaintiff's opposition to the motions for summary judgment was
3    filed on February 29, 2008.  Defendants' replies were filed on
4    March 10, 2008, the date on which the Court first continued the
5    hearing date on the motions for summary judgment due to the press
6    of Court business.  All briefing in connection with the motions for
7    summary judgment was complete as of March 10, 2008.  By the
8    Stipulation and Order filed on January 22, 2008, Plaintiff agreed
9    to file his oppositions to the motions for summary judgment by
10   February 29, 2008.  Plaintiff's construction of Rule 78-230(c) is
11   further belied by the fact that Plaintiff did not file his
12   supplemental opposition papers fourteen days prior to the April 28,
13   2008 hearing date, the June 16, 2008 hearing date, or the August
14   11, 2008 hearing dates set by the Court's Minute Orders. All of
15   these hearing dates were continued by the Court after that two week
16   period elapsed.

17   Plaintiff asserts that, if the Court does not construe Rule
18   78-230(c) as Plaintiff does, Plaintiff requests "tardy leave of
19   court to cure our inadvertent error" and that Plaintiff "sincerely
20   believed that we were in compliance with the rules."

21   Plaintiff's protestations are not reasonable given the
22   sequence of events described above.  It is apparent that
23   Plaintiff's untimely filings were not the result of a misreading of
24   the Local Rule, but rather an attempt to correct his previous
25   failure to comply with Rule 56-260(b), and to get a second
26   opposition to the motions for summary judgment.

27   Pacific Bell, Alan Brown, and Shane Spencer's motion to strike
28   the late filings is GRANTED.

                                   19

1

2                           IV. **LEGAL STANDARD**.

3          Summary judgment is appropriate when "the pleadings, the

4  discovery and disclosure materials on file, and any affidavits show

5  that there is no genuine issue as to any material fact and that the

6  movant is entitled to judgment as a matter of law." Fed. R. Civ.

7  P. 56(c). A party moving for summary judgment "always bears the

8  initial responsibility of informing the district court of the basis

9  for its motion, and identifying those portions of the pleadings,

10  depositions, answers to interrogatories, and admissions on file,

11  together with the affidavits, if any, which it believes demonstrate

12  the absence of a genuine issue of material fact." *Celotex Corp. v.*

13  *Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks

14  omitted).

15          Where the movant will have the burden of proof on an issue at

16  trial, it must "affirmatively demonstrate that no reasonable trier

17  of fact could find other than for the moving party." *Soremekun v.*

18  *Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also*

19  *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir.

20  2003) (noting that a party moving for summary judgment on claim as

21  to which it will have the burden at trial "must establish beyond

22  controversy every essential element" of the claim) (internal

23  quotation marks omitted). With respect to an issue as to which the

24  non-moving party will have the burden of proof, the movant "can

25  prevail merely by pointing out that there is an absence of evidence

26  to support the nonmoving party's case." *Soremekun*, 509 F.3d at 984.

27  When a motion for summary judgment is properly made and supported,

28  the non-movant cannot defeat the motion by resting upon the

1  allegations or denials of its own pleading, rather the "non-moving

2  party must set forth, by affidavit or as otherwise provided in Rule

3  56, 'specific facts showing that there is a genuine issue for

4  trial.'"  *Id.* (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S.

5  242, 250 (1986)).  "Conclusory, speculative testimony in affidavits

6  and moving papers is insufficient to raise genuine issues of fact

7  and defeat summary judgment."  *Id.*

8       To defeat a motion for summary judgment, the non-moving party

9  must show there exists a *genuine* dispute (or issue) of *material*

10  fact.  A fact is "material" if it "might affect the outcome of the

11  suit under the governing law."  *Anderson*, 477 U.S. at 248.

12  "[S]ummary judgment will not lie if [a] dispute about a material

13  fact is 'genuine,' that is, if the evidence is such that a

14  reasonable jury could return a verdict for the nonmoving party."

15  *Id.* at 248.  In ruling on a motion for summary judgment, the

16  district court does not make credibility determinations; rather,

17  the "evidence of the non-movant is to be believed, and all

18  justifiable inferences are to be drawn in his favor."  *Id.* at 255.

19

20                          V.  DISCUSSION.

21  A.   Plaintiff's Evidence

22       1.   Affidavit of John Mastrangelo

23       In opposition to Defendants' motions for summary judgment,

24  Plaintiff presented an affidavit from Mastrangelo as rebuttal

25  evidence.  Defendants object to large portions of Mastrangelo's

26  affidavit on various grounds.  Specifically, Defendants raise the

27  following objections:

28           1.   I was expelled from the union Local 9333 and

1

2

3

4

> District 9, and forced to retire from the company as
> an unrepresented employee technician during the first
> week of January, 2006.  Prior to that time, I was
> union steward in charge of sitting in on grievances.
> However, much to my dismay, I had no power nor budget
> to investigate grievances.

5   Defendants object to the first paragraph of Mastrangelo's

6  affidavit on relevance grounds.  Relevant evidence is defined as

7  "evidence having any tendency to make the existence of any fact

8  that is of consequence to the determination of the action more

9  probable or less probable than it would be without the evidence."

10  Fed R. Evid. 401.  Rule 402 provides that "[all] relevant evidence

11  is admissible [...]  Evidence which is not relevant is not

12  admissible."  Although definition of "relevant evidence" is broad,

13  it has limits; evidence must be probative of a fact of consequence

14  in the matter and must have tendency to make existence of that fact

15  more or less probable than it would have been without evidence.

16  *U.S. v. Curlin*, 489 F.3d 935, 943-44 (9th Cir. 2007).

17   The circumstances underlying Mastrangelo's retirement and his

18  dismay as a steward have no connection to Plaintiff's claims

19  against the Defendants.  They show he left the union under adverse

20  circumstances, as he had been terminated.  Mastrangelo's prior

21  budgetary concerns are irrelevant to whether Pacific Bell breached

22  the CBA or Brown and Spencer defamed Plaintiff.  This assertion

23  about the budget does not speak to the handling of Plaintiff's

24  grievance.  Defendants' objections are sustained.

25

26

27

> 2.   In 2004, I trained Mr. Smith for Cable locating
> duties as a 'fill in' technician.  He became full time
> technician after June 15, 2005 due to another locator
> have been arrested for murder.

28   This portion of Mastrangelo's affidavit is irrelevant.

22

Plaintiff's status as a "fill in" technician and the details how he became a full-time technician are not connected to his claims of defamation or breach of the CBA. Defendants' objection is sustained.

> 3.  Blake Smith has also never been untruthful with co-workers or supervision.  SBC/Pac Bell brings up prior discipline of Mr. Smith, but what they don't state is that Mr. Smith provided the company with honest answers and has never been accused of not telling the truth at least until the incident that led to his termination.

Defendants object to the above portion of Mastrangelo's affidavit on grounds it contains conjecture and was not made on the basis of his personal knowledge.  Rule 56(e) of the Federal Rules of Civil Procedure requires that affidavits supporting and opposing a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters therein."[14]

Manstrangelo recites that he has "personal knowledge" of the matters set forth in his affidavit based on his "then position as Union Steward."  Yet the assertions of his third paragraph require knowledge about every instance in which Plaintiff spoke with SBC/Pacific Bell officials and/or union representatives.

_____

[14] In some cases it can be inferred from the affidavit that the personal knowledge requirement is met. *See Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (inferring from the affiant's position and nature of participation in the matter, as an investment banker who represented the defendant in certain negotiations, that he had personal knowledge of the circumstances of those negotiations and the intent of the parties with respect to the agreement reached). Barthelemy is distinguishable; such a situation cannot be inferred from the present facts.

Mastrangelo expresses opinion testimony not based on reputation in the community.  As a union steward, and not a manager or human resources associate, Mr. Mastrangelo simply was not present or in a position to acquire such comprehensive knowledge.  At best, Mr. Mastrangelo has his own knowledge (unverified) that he has never observed Plaintiff be untruthful with co-workers or supervision. This conclusion is unsupported by any facts.  His personal opinion and speculation about the opinions of others is all inadmissible. Defendants' objections are sustained.

> 4. In that incident, and the events leading to his dismissal, I am confident based on my knowledge of his work history, that on the date of the incident that he simply dropped his keys while doing cable locates. Immediately following the incident, Blake Smith contacted me via cell phone and relayed the facts to me as follows: Myron David Riddle came riding his bicycle upon the site where the keys had been dropped due to the fact that Blake had been wearinng carpenters pants (loose fitting pants).  Riddle then picked up the keys, walked over to the drivers side of the vehicle, unlocked the drivers side door, started the vehicle and sped off in great haste.

Defendants object to the first sentence of paragraph four on grounds it contains conjecture, improper opinion, and was not made on the basis of his personal knowledge.  The objection is sustained for the reasons stated above and because the witness has no foundational knowledge to know what happened in the incident, except to accept Plaintiff's side of the story.  Defendants object to the remaining portion of paragraph four on hearsay grounds.  To the extent that the statements are offered to prove the truth of the matter asserted, they are inadmissible.  See Fed R. Evid. §§ 801-802 ("Hearsay is not admissible except as provided by the Federal Rules of Evidence [...]").

24

Paragraph five of Mastrangelo's affidavit spans seven pages and contains sixteen subparts.   Defendants object to the bulk of paragraph five on the grounds it contains inadmissible hearsay, conjecture, improper opinion, speculation, and was not made on the basis of his personal knowledge.   The majority of Mastrangelo's fifth paragraph concerns Plaintiff's claims against the Union Defendants and is an argument irrelevant to Plaintiff's claims against Pacific Bell, Brown, and Spencer.   Defendants' objections to the fifth paragraph of Mastrangelo's affidavit are sustained. For example:

> 5(a). I repeatedly told the union President Johnson, that GPS was not reliable. I informed them that it needed to be investigated. I was simply ignored. They did zero (0) investigation. They accepted the findings of the company as fact.

Defendants' objections are sustained.   There is nothing in the affidavit to establish Mr. Mastrangelo is knowledgeable about or qualified to opine on the reliability of GPS equipment.   The affidavit also does not provide a basis for Mastrangelo to form a legal opinion as to whether the union breached the duty of fair representation.[15]

> 5(c). The union President Lynn Johnson would continually state "We will take this case to arbitration". "We don't investigate at this stage, we wait until arbitration for that". She also told me "The company investigation states that Blake lied". I would ask about what proof the company had and she would say "he lied".

---

[15] There are few cases in which expert testimony on a union's duty of fair representation was found necessary or useful to a jury. *See e.g., Pease v. Production Workers of Chicago and Vicinity Local 707*, 2003 WL 22012678 at *4-*5.

Paragraph five, subpart (c), includes several hearsay statements, including Lynn Johnson's statements regarding how the Union would handle Plaintiff's grievance, her report of the company's investigation that Mr. Smith "lied," and the alleged extension of time for the company to respond to the second step grievance.   Hearsay is a statement, other than one made by the declarant, offered in evidence to prove the truth of the matter asserted.   Fed. R. Evid. 801(c).   Hearsay is not admissible except as provided by the Federal Rules of Evidence, or other rules prescribed by the Supreme Court.   Fed. Rule Evid. 802.   These statements were made outside of court, not by the affiant, and are offered in evidence to prove the truth of the matter asserted.[16] Such inadmissible hearsay evidence cannot be considered on a motion for summary judgment.   Paragraph 5(c) is also irrelevant to the Plaintiff's claims against Pacific Bell, Brown, and Spencer.

> 5(e).   The responding officers were never interviewed by the union despite the fact that Mr. Smith had the cell phone numbers for both the CHP officer and Sheriff Deputy who had taken reports on the date of the incident. Both were interested in speaking to the company and union on behalf of Mr. Smith. This was never pursued by anybody at the union or the company. The company simply read what they wanted from the police reports and there was never any substantiation from the officers despite the fact that they were reachable.

Defendants' objections concerning paragraph five, subpart (e), are sustained.   There is no source of knowledge for Mastrangelo's assertions regarding the police officers' interest and intent. There is no information to establish personal knowledge for

---

[16] Plaintiff has not established these statements come within any of the exceptions to the hearsay rule.

1  Mastrangelo's conclusion that nobody spoke to the officers and that

2  the company simply accepted the reports at face value.  See Fed. R.

3  Civ. Proc. 56(e).

4       5(f). The union never questioned the fact that Roxanne
     Diaz was conducting the investigation for the company

5       when she had been caught in lies on numerous occasions
     in the past during other investigations. She should

6       have never been investigating anything let alone
     something as important as Mr. Smith's future

7       employment.

8       5(g). The union never questioned why Alan Brown was
     allowed to "test" the vehicle Mr. Smith was driving

9       and why it took several weeks after the incident for
     it to happen. Mr. Brown has no qualifications with GPS

10      to be testing its accuracy. He has no advanced
     degrees, he had little to no experience with the @road

11      system at the time because it had been installed two
     (2) weeks prior to this incident. He also had no

12      experience in pulling the @road GPS reports so these
     could not have been done by him.

13

14     Paragraph five, subparts (f) and (g), contain inadmissible

15 hearsay and improper opinion that cannot be considered to establish

16 a genuine issue of material fact.   Further, Plaintiff offers

17 improper opinion testimony and lacks personal knowledge concerning

18 the information contained in subparts (f) and (g).   To be

19 cognizable on summary judgment, evidence must be competent.   It is

20 not enough for a witness to tell all she knows; she must know all

21 she tells.  *Carmen v. San Francisco Unified School District*, 237

22 F.3d 1026, 1028 (9th Cir. 2001). Paragraphs 5(f) and (g) are also

23 irrelevant to the Plaintiff's claims Brown and Spencer.

24 Defendants' objections are sustained.

25      5(h). The unions never questioned whether the company
     protected its own equipment namely its vehicles. I know

26      for a fact that the company does not change the keys for
     each of the trucks every time an employee leaves the

27      company either voluntarily or when they are terminated.
     I also know that one set of keys can open multiple trucks

28      and including starting their ignitions. The company was

1
2
3
4

> well aware of this and used it to their advantage when an
> employee would call in sick. Rather than have to go get
> the keys from him, they would just go to the middle of
> the yard and grab a hand full of keys and the guys would
> go from truck to truck until one opened and started. This
> is certainly not a very good security policy.

5   The claims contained in Mastrangelo's fifth paragraph, subpart

6   (h), require knowledge about every instance in which Pacific Bell

7   officials questioned individuals about its equipment and how trucks

8   and keys are maintained.   The assertions of paragraph 5(h) also

9   require Plaintiff to have foundational knowledge about Pacific

10  Bell's internal key/vehicle policies, as well as every instance in

11  which an employee did not report to work because of an illness.

12  Mr. Mastrangelo had no such duties and was not in the position to

13  acquire such personal knowledge.    There is no information to

14  establish any basis for Mastrangelo's conclusions.     T h e

15  statements contained in paragraph 5(h) cannot be considered on

16  summary judgment.

17
18
19
20

> 5(i).  The union never questioned the disparate
> treatment or Hostile Treatment that Mr. Smith
> sustained after he reported Mr. Dan Devine and an
> incident between Devine and another employee that
> occurred on or about July of 2004, in which Devine
> brandished a Shot gun at a fellow employee.

21  Testimony in the form of a legal conclusion is an

22  inappropriate matter for expert testimony. *See U.S. v. Scholl*, 166

23  F.3d 964, 973 (9th Cir. 1999) (excluding expert testimony offering

24  a legal conclusion); *Aguilar v. International Longshoremen's Union*,

25  966 F.2d 443, 447 (9th Cir.1992) (noting matters of law are for the

26  court's determination, not that of an expert witness); *see also*

27  *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509-10 (2d

28  Cir.1977) (expert testimony consisting of legal conclusions

inadmissible).    Mastrangelo   inappropriately   offers   legal

conclusions  on  whether  Plaintiff  suffered  "disparate"  and/or

"hostile"  treatment.    These  legal  opinions  are  inadmissible.

Paragraph 5(i) is also irrelevant to the Plaintiff's claims against

Brown and Spencer.

> 5(l). It was also discovered that Mr. Riddle was an
> Ex-SBC employee and also had priors for Auto Theft.
> This was never pursued by the union. This demonstrates
> that he has familiarity with the SBC trucks and would
> know about the multiple truck, single key security
> breach. Especially because the company never re-keyed
> its vehicles after changing employees. Therefore, even
> if the keys would not have been on the ground, the
> thief Riddle could have gained access to the vehicle.

There  is  no  information  to  establish  personal  knowledge

regarding  Mr.  Riddle's  alleged  past  history;  nor  is  there  any

information  to  support  the  claim  that  Mr.  Riddle  knew  about  the

multiple  key/single  truck  problem.    This  is  speculation.    To  the

extent  that  these  statements  are  offered  to  prove  the  truth  of  the

matter  asserted,  they  are  inadmissible.    Fed  R.  Evid.  §§  801-802

("Hearsay is not admissible except as provided by the Federal Rules

of  Evidence  [...]").    Paragraph  5(l)  is  also  irrelevant  to  the

Plaintiff's  claims  against  Pacific  Bell,  Brown,  and  Spencer.    The

claims  contained  in  paragraph  5(l)  cannot  be  considered  on  summary

judgment.

> 5(m). On or about December 21st of 2005, Lynn Johnson
> unilaterally contacted the company to notify them that
> the deadline to respond to the 2nd step grievance was
> about to expire and she asked the company whether they
> wanted an extension of time to respond. This is very
> significant because pursuant to the CBA Chapter 7.05
> D2b. the failure to timely respond within 30 days by
> the company results in the grievance being resolved in
> favor of the union. This meant that Blake Smith would
> have had his job back prior to Christmas of 2005.
> Instead Local 9333, Union President Lynn Johnson, took
> it upon herself to extend the response time to January

5,2006. Her purported rationale was "Well, no one will
show up from the company anyway, so it will just be a
waste of everyone's time to go during vacation time".
The problem with that rationale is that a failure to
show up is a bad faith failure to bargain by the
company. This means that Blake Smith would also have
gotten his job back by the company's failure to
appear. Therefore, this excuse held no water. I still
don't buy it.

Defendants object to paragraph five, subpart (m), on grounds
it contains speculation and was not made on the basis of his
personal knowledge.  Defendants' objections have merit.  There is
no evidence to support the conclusion that the grievance would have
been resolved in Mr. Smith's favor.  Seeking a continuance was
within the union's discretion.  There is also no showing that Mr.
Mastrangelo is qualified to opine the legal conclusions of what
conduct constitutes a bad faith failure to bargain.  Defendants'
objections are sustained.

5(o).  The other significant issue that was never
raised is that Blake Smith had no reason to lie. There
are at least two (2) specific instances that Mr. Smith
and I had and have specific knowledge of, where
employees of the defendants left their keys in their
vehicles and the vehicles were stolen by third
parties. In the first case, an employee by the name of
Mr. Reynolds was at McDonalds in Modesto and it
resulted in a three (3) day suspension. The second
case, Mr. Cordova was at a B-Box in Modesto and it
resulted in a one (1) day suspension. Mr. Smith was
aware of the consequences for leaving his vehicle
running and unattended and despite this knowledge he
did not do so. The penalty was not as severe as the
company is making it out to be. Mr. Smith has taken a
lot of grief for being honest about what occurred on
that October afternoon. These are yet two (2) more
examples of disparate treatment by the union and
company.

Defendants object to the above portion of Mastrangelo's
affidavit on grounds it contains speculation, hearsay, and was not

30

made on the basis of his personal knowledge.   For the reasons discussed above, the objections are sustained.   The last sentence of Paragraph 5(o) is also stricken because Mastrangelo inappropriately reaches legal conclusions on whether Plaintiff suffered "disparate treatment."

A substantial portion of Mastrangelo's fifth paragraph and its subparts are inadmissible to establish a genuine issue of material fact.   Mastrangelo's argumentative conclusions concerning how the union failed in its duty to adequately represent Plaintiff; his unqualified opinions on the functionality of the GPS system, his criticisms of Lynn Johnson, and his musings on vehicle keys are irrelevant to the Plaintiff's claims against Brown and Spencer.

> 6.   I grew tired of leaving over a dozen phone calls, to the Union President, Lynn Johnson, and attempted to reach Tony Bixler three (3) times by telephone. After finally receiving a response from him on my fourth ... attempt, he stated that he himself was not able to reach Lynn Johnson. A letter regarding the disparate treatment I observed firsthand was prepared by me and then was presented to Lynn Johnson at Blake Smith's 2nd step grievance meeting, on or about January 5, 2005, and President Johnson approved it. I then went ahead and cc'd it to every person of influence in the company and union at each level to try and evoke change [...]

> 7. On or about January 7, 2005 I received a call from President Lynn Johnson, which stated I was expelled from the local 933 union and District 9 union at the demand of Tony Bixler at the Union's District 9 office because of my letter.

> 8. I have always been told by the company to report grievances and that was all that was being done but since I could not get the attention of anybody, I sent the letter. I was simply trying to find out what sort of investigation the union was doing but I was being ignored like Blake Smith. I lost my job over it like Blake Smith.   At least I was able to keep my retirement. Although I am concerned about testifying, I can no longer remain silent over the concern I have that the company might find a way to take any retirement from me.

1
2
3
4
5

> 9.   I know why the union at each level and company's attempted to silence me and it was because they conducted zero (0) investigation, they simply went with the SBC Asset Protection Report which was one (1) sided and easily refuted if only they had tried. After I had been forced into retirement the union simply ignored Blake Smith until he hired an attorney to find out the status of the case.

6       Defendants Pacific Bell, Brown, and Spencer object to

7   paragraphs 6-9 of Mastrangelo's affidavit on grounds they are

8   speculative, irrelevant, lack foundation, contain conjecture and

9   were not made on the basis of personal knowledge.   Defendants'

10  objections are sustained.

11       In paragraphs 6 through 9 of Mastrangelo's affidavit, he gives

12  several examples of his interactions with the local union,

13  especially Lynn Johnson.   Mastrangelo also details the reasons

14  behind his departure.   Mastrangelo's statements concerning the

15  circumstances of his dismissal and his continuing conflict with the

16  local union are not probative of any consequential facts in this

17  litigation.   Fed. R. Evid. 401- 402*; U.S. v. Curlin*, 489 F.3d 935,

18  943-44 (9th Cir. 2007).   The statements contained in paragraph nine

19  are speculative, without foundation and argumentative.   They are

20  not considered.   See *National Steel Corp. v. Golden Eagles Ins.*

21  *Corp.,* 121 F.3d 496, 502 (9th Cir. 1997) (conclusory statements

22  without factual support are insufficient to defeat a motion for

23  summary judgment.).   Mastrangelo did not have the personal

24  knowledge to conclude that the Union Defendants conducted "zero

25  investigation."   His knowledge as a union steward did not extend so

26
27
28

1   far.[17]

2       10. Two weeks prior to the October 17, 2005 incident
3   which eventually led to the termination of Blake
    Smith's employment, an @road GPS system was installed
4   by one (1) person who was apparently not a licensed
    contractor.   In fact, he appeared like he had just
5   been released from Folsom prison based on his lack of
    uniform and numerous tattoo's.   During and before
6   installation of this device, I observed the device and
    all necessary equipment needed for its installation
7   and operation sitting in the back of an open,
    uncovered and untied pickup truck bed.   The truck
8   displayed no commercial logo of any sort and as such,
    was unmarked for any apparent business purposes.
9   Certain components were haphazardly placed into
    cardboard boxes, wires were tangled and randomly
10  arranged on the boxes.   Wires had been spliced and
    twisted together and it just looked like a mess of
11  wires.   I was really concerned.

12      11.   It was at the time, and perhaps still is, company
13  policy to question unauthorized persons on the yard,
    and because of his appearance, and the apparent lack
14  of any legitimate purpose of being in the yard, I
    questioned the individual as to whom he was and why he
15  was on the yard.   The person who installed the
    equipment at the time is described as follows: Heavily
16  tatooed on upper body and he wore only a white tank-
    top undershirt.   The installer's appearance made an
17  impression on me because the company has, in the past,
    been victim of theft of cable and wire.   I even
18  remember making a comment about the installer's
    appearance to Alan Brown who was present that day and
19  he told me 'I know.'   Because he was present that day
    and saw the method of installation, Alan Brown knew
20  there was a problem with the installation.

21      12.   All trucks were outfitted with the @road systems
22  the same day.   However, the installation person
    returned twice ... during the same two ... week period
23  to repair and remedy malfunctioning @road devices.   I
    do not know if there were other instances where
24  repairs were necessary during this period because I
    did not observe this individual again.

25
26      13. The company also never cited previous disciplinary

27  ─────────────────
28      [17] Mastrangelo was terminated prior to Plaintiff's 2nd grievance
    hearing.   This event limits the scope of his knowledge.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

actions as their basis for their decision to fire
Blake Smith to do so is and was a violation of the
provision of the contract which prescribes retaliation
by the company against employees based on past
grievances.

14.   During the decades that I had been with the
company I have never seen an employee fired for
absences.  It was very common for unpopular employees
to get written up for every sick day.  The company has
a zero ... tolerance policy for sick time.  They will
counsel an employee after every sick day much like
they did Blake Smith during the 2004-2005 period.  I
also know that if the employee was liked by a
particular manager, he would not be disciplined and
the grievance process would be circumvented.   This
would be no matter how many absences a particular
employee had.

     Defendants raise numerous objections to paragraphs 10 through

14 of Mastrangelo's affidavit.  Mastrangelo's statements concerning

the technician's physical description, Alan Brown's alleged

thoughts about the GPS system, the installation and repair history

of the GPS system, and Pac Bell's counseling of employees with a

history of absences, lack foundation.   The majority of these

statements are not based on evidentiary facts in the record and are

too speculative; others, such as speculation about the appearance

and honesty of the technician, are irrelevant to the Plaintiff's

claims and, for the most part, do not involve Plaintiff.   The

objections are sustained.

     Paragraphs ten through fourteen also contain inadmissible

hearsay.   To the extent that the statements are offered to prove

the truth of the matter asserted, they are inadmissible.

     A substantial portion of Mastrangelo's affidavit is

inadmissible argument.  Hearsay assertions by Mr. Mastrangelo and

matters not supported by the record or by a demonstration of

34

1   personal knowledge or corroborating evidence, are insufficient to

2   establish a genuine issue of material fact.   Such statements are

3   not considered in deciding this motion for summary judgment.

4

5           2.   <u>Affidavit of Michael Caloyannides</u>

6         On February 29, 2008, Plaintiff filed an affidavit from

7   Michael Caloyinnides ("Caloyinnides") in support of his opposition

8   to Union Defendants' motion for summary judgment. In his affidavit,

9   Caloyannides, a purported GPS expert, questions the accuracy of GPS

10  systems and criticizes Brown's October 18, 2005 test verifying the

11  functionality of the GPS system attached to Plaintiff's work

12  vehicle.   Caloyinnides states that "it was irresponsible for the

13  Company Defendants and Union Defendants to dismiss Plaintiff solely

14  based on this @road GPS information" and he "would not trust this

15  system for any purpose whatsoever beyond providing basic advisory

16  information that is understood to be inherently unreliable, and

17  certainly not to discharge an employee utilizing this system as the

18  sole basis."  (Dec. of Caloyannides ¶ 16.)

19        Defendants object to Caloyannides' affidavit on grounds that

20  he improperly opines that Pacific Bell and the Union Defendants

21  could not use GPS information in discipline and discharge cases.

22  (Doc. 92.) However, it is undisputed Pacific Bell and the Union

23  reached a binding side-letter agreement authorizing the use of GPS

24  in disciplinary actions.   The side letter agreement provides:

25                GPS is one of many management tools used to review
                  employee performance or behaviors.  GPS will not be
26                used as the sole basis for disciplinary action, but
                  may be used to substantiate information obtained
27                from  other  sources.  As  in  all  cases  where
                  discipline  may  be  warranted,  management  will
28                conduct a complete and thorough investigation and

                               35

may utilize GPS reports as an additional tool in the investigation.

As the employees' exclusive bargaining representative, the Union "enjoys broad authority ... in the negotiation and administration of [the] collective bargaining contract." *Communications Workers v. Beck*, 487 U. S. 735, 739 (1988). But this broad authority "is accompanied by a responsibility of equal scope, the responsibility and duty of fair representation." *Humphrey v. Moore*, 375 U. S. 335, 342 (1964). The employer has a corresponding duty under the NLRA to bargain in good faith "with the representatives of his employees" on wages, hours, and conditions of employment. 29 U. S. C. §158(a)(5); see also §158(d). Through collective bargaining, a public employer and union can reach agreement on detailed factual questions having important implications. *Bolden v. Southeastern Penn. Trans. Auth.*, 953 F.2d 807, 828 (3rd Cir. 1991) (emphasizing the rational for preventing an individual employee from raising a constitutional claim on an issue that is the subject of a CBA).

In this instance, it is undisputed that the Union and Pacific Bell collectively bargained in good faith and agreed that GPS could be used to discipline employees. As part of any contractual negotiation, an employer may agree to the inclusion of a provision in a collective-bargaining agreement in return for other concessions from the union. *14 Penn Plaza LLC v. Pyett*, 129 S. Ct. 1456, 1464-65 (2009). Courts generally may not interfere in this bargained-for exchange. (*Id.*; *Utility Workers of Am. v. Southern Cal. Edison,* 852 F.2d 1083, 1086 (9th Cir. 1998) ("to the best of our knowledge, ... no court has held that the right to be free from

36

drug testing cannot be negotiated away...").  It is undisputed that CWA and Pacific Bell entered into a valid agreement governing the use of GPS records by Pacific Bell.  The agreement between the CWA and Pacific Bell is valid and must be honored.

As Pacific Bell and the Union collectively bargained for the use of GPS data, Plaintiff cannot offer expert testimony challenging its accuracy and usage.  Caloyannides' opinions on GPS are inadmissible to create a genuine issue of material fact.  The only relevant inquiry is whether Pacific Bell used and relied on the GPS data.

Even assuming his opinions on the use and accuracy of GPS data are admissible, Defendants object to Caloyannides' affidavit on the grounds that he lacks personal knowledge, fails to consider all the facts in the record, and his expert opinions violate Rule 702 of the Federal Rules of Evidence.[18]

Under the Federal Rules of Evidence, expert testimony is admissible if: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Fed.R.Evid. 702.  As a general matter:

---

[18] Defendants did not offer any expert testimony to contradict Caloyannides' opinion regarding the use of GPS.  Instead, they rely on the declaration of Steve Larson, Manager of Vehicle Tracking Systems since 2001, who is familiar with the subject GPS units and stated that they are "extremely accurate" and "extremely reliable." (Larson Dec. ¶ 5.)  Larson also stated that if the GPS unit "is not functioning properly, the report will indicate there is a problem." (Id.)   There is no evidence in the record to suggest that Plaintiff's GPS system malfunctioned on October 17, 2005.

> The subject of an expert's testimony must be "scientific ... knowledge." The adjective "scientific" implies a grounding in the methods and procedures of science. Similarly, the word "knowledge" connotes more than subjective belief or unsupported speculation.... [I]n order to qualify as "scientific knowledge," an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation- i.e., "good grounds," based on what is known. In short, the requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability.

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-90, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (footnotes omitted). Based upon the foregoing principles, the Daubert Court discussed four factors which a trial court may use to determine the admissibility of proposed expert testimony: "testing, peer review, error rates, and 'acceptability' in the relevant scientific community." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (citation omitted) (holding that Daubert analysis also "applies to the testimony of engineers and other experts who are not scientists").

In this case, Plaintiff offers the affidavit of Michael Caloyannides, who holds a PhD in Applied Mathematics and a Master of Science degree in Electric Engineering. Based upon his affidavit, Plaintiff plans to introduce Caloyannides' opinion that "it was irresponsible for the Company Defendants and Union Defendants to dismiss Mr. Smith solely based on this @road GPS information." Defendants argue, correctly, that Mr. Caloyannides' opinion is inadmissible because it does not meet the requirements of Rule 702. He is not legally trained and cannot offer a legal conclusion.

38

1   It cannot be fairly disputed that Caloyannides is qualified,

2   based upon his education and experience, to testify as an expert in

3   the fields of GPS technology and computer forensics.  The problem

4   is not one of GPS expertise or experience, per se, but a lack of

5   expertise and experience with respect to the subject matter at

6   issue -- whether the Union Defendants breached the duty of fair

7   representation and whether the Pacific Bell dismissed Plaintiff

8   based solely on the @road GPS information, which is all beyond

9   Caloyannides' knowledge or his experience.

10   Mr. Caloyannides' lack of expertise in these critical areas is

11   best demonstrated by his argumentative opinion that it was

12   "irresponsible for the Company Defendants and Union Defendants to

13   dismiss Plaintiff solely based on GPS data."   Contrary to

14   Caloyannides' assertions, the Union Defendants neither suspended

15   Plaintiff nor terminated him in 2005; all adverse employment

16   actions taken against Plaintiff in 2005 were initiated and

17   implemented by Pacific Bell, his former employer.  Perhaps because

18   Mr. Caloyannides is unfamiliar with the appropriate legal standards

19   with respect to Plaintiff's claims, he completely disregards the

20   relevant facts, including that Plaintiff was terminated by Pacific

21   Bell for failure to safeguard company assets *and* for

22   misrepresenting facts during an investigation.  Caloyannides' GPS

23   expertise does not extend to Pacific Bell's employment decisions or

24   the grievance procedures administered by the Union.[19]   Mr.

25

26   [19] Caloyannides concludes, without an apparent basis in either
     expertise, experience, or acknowledged principles in the field of
27   employment practices, that he "would not trust this system for any
     purpose whatsoever beyond providing basic advisory information that
28   is understood to be inherently unreliable, and certainly not to

1  Caloyannides cannot address these critical issues based upon his
2  expertise and experience.

3       Defendants also contend that Caloyannides' affidavit lacks the
4  requisite reliability because it is based on incomplete facts and
5  selective documents.   Defendants rejoin that Caloyannides'
6  affidavit relies heavily on the mistaken belief that Plaintiff was
7  terminated solely based on GPS information.   According to
8  Defendants, this critical error, along with Caloyannides' limited
9  review of the record, led him to assert an alternative timeline
10 that is inconsistent with the undisputed evidence in this case.

11      If the basis for an expert's opinion is clearly unreliable,
12 the district court may disregard that opinion in deciding whether
13 a party has created a genuine issue of material fact. *See Daubert*,
14 509 U.S. at 596 (if "the trial court concludes that the scintilla
15 of [expert] evidence presented supporting a position is
16 insufficient to allow a reasonable juror to conclude that the
17 position more likely than not is true, the court remains free to
18 ... grant summary judgment").   Relevant expert testimony is
19 admissible only if an expert knows of facts which enable him to
20 express a reasonably accurate conclusion. *Jones v. Otis Elevator
21 Co.*, 861 F.2d 655, 662 (11th Cir. 1988).   Opinions derived from
22 erroneous data are appropriately excluded. *Slaughter v. Southern
23 Talc Co.*, 919 F.2d 304 (5th Cir. 1990).   Both the determination of

24 ───────────────────────────────
25 discharge an employee utilizing this system as the sole basis." It
   appears the Union and Pacific Bell considered this proposition when
26 they negotiated the side-letter agreement.  (See "Side Letter
   Agreement", Exh. B to Dec. of D. Flores, "GPS will not be used as
27 the sole basis for disciplinary action, but may be used to
   substantiate information obtained from other sources.") Most of
28 this opinion is a legal conclusion.

reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under Fed.R.Evid. 702. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

Caloyannides asserts that the "only plausible explanation" of the evidence is that "Plaintiff turned off his vehicle at 1:12 p.m. and it was stolen at 1:19 p.m." Caloyannides' timeline is inconsistent with the undisputed facts of this case and casts doubt on his competence and the reliability of his opinions. All of the evidence in the record supports the conclusion that Plaintiff's vehicle was stolen before 1:12 p.m.:

>    1.    Mr. Brown's cellular phone records indicating an incoming call from Plaintiff at 1:12 p.m. on October 17, 2005;
>
>    2.    The California Highway Patrol's report stating that an officer was notified of the vehicle theft at approximately 13:10 hours on October 17, 2005;
>
>    3.    The Sheriff's Department report stating that a deputy spotted the stolen vehicle at approximately 13:15 hours on October 17, 2005; and
>
>    4.    GPS data provided by @road indicated that Plaintiff's vehicle was in idle status between 1:02 and 1:11 p.m. and the engine was off between 1:12 p.m. and 1:19 p.m.

Caloyannides' timeline is also inconsistent with Plaintiff's own version of events, as communicated to the Sheriff's Deputies on the day of the theft and repeated in his deposition on August 1, 2007. According to Plaintiff, he parked the car near the corner of Nunes Road and Washington Street and began cable locating 200 yards away. He then noticed an individual enter the vehicle and take off westbound on Nunes Road. Plaintiff states that he lost track of the vehicle when it turned northbound on Ninth Street (toward Dora

Avenue). According to the Sheriff's report, Plaintiff's vehicle was spotted at 13:15 near the corner of Dora Avenue and Ninth streets, about a mile away from the intersection of Nunes and Washington.[20] At this time, the deputies observed two individuals flee the vehicle, apprehending one suspect in the backyard of 5312 8th street, a block from the corner of Dora and Ninth. Shortly thereafter, Plaintiff arrived at this location with a Sheriff's deputy.

According to Caloyannides, the above evidence does little to demonstrate that the vehicle was stolen before 1:12 p.m. on October 17th. Caloyannides states that a lack of calibration among time keeping devices – of the GPS provider, California Highway Patrol, cellular phone company, and Stanislaus County Sheriff's Department – contributed to the faulty timeline. He also blames daylight savings time. Caloyannides further states that "it is important to note that this [GPS] system ... could have been manipulated intentionally" and the electronic data "has been destroyed by the defendant companies." Caloyannides inferentially suggests that Pacific Bell and the Union conspired to fraudulently alter or destroy the GPS results to support his theory. This is unsupported by the record.

Caloyannides does not rely on accurate evidence to support his alternative timeline.[21] Caloyannides opinions are conclusory and

_____

[20] Dora Avenue and Nunes Street are parallel to one another. Ninth street is the main artery between the two streets.

[21] Caloyannides' opinions are based on his personal experience with GPS ("I would not trust this [GPS] system for any purpose whatsoever"), a hypercritical critique of Brown's GPS test on

argumentative, making them insufficient to raise genuine issues of fact and defeat summary judgment.[22]  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."); *see also Falls Riverway Realty, Inc. v. Niagara Falls*, 754 F.2d 49, 57 (2d Cir.1985) (Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment).

Under Daubert, a trial judge has an inescapable obligation to determine whether proffered expert testimony in a particular case is "scientific" and whether the proffered expert's "knowledge" will assist the trier of fact. *Daubert*, 113 S.Ct. at 2795.  To fulfill this obligation the court must determine that the proposed expert's testimony must be both "reliable" and "relevant."  *See U.S. v. City of Miami, Florida*, 115 F.3d 870, 873 (11th Cir. June 20, 1997) (stating that "[r]elevant expert testimony is admissible only if an expert knows of facts which enable him to express a reasonably accurate conclusion.").

---

October 18, 2005 ("the first event states that Mr. Brown stopped at 5851 Washington but the @road reflects 5927 Washington"), the @road disclaimer, and accusations of fraud.  Caloyannides does not provide any information concerning the GPS device attached to Plaintiff's vehicle on October 15, 2005; Caloyannides also readily admits that he needed additional information to complete his review of Pacific Bell's GPS devices, making his opinions incomplete. (Caloyannides Dec. ¶ 13.)

[22] In contrast to Caloyannides' affidavit, Mr. Larson states that the GPS device was affixed to Plaintiff's vehicle several years ago; it is extremely accurate and reliable; it indicates when the vehicle is idling and when it is turned on and off; and there was no problem with Plaintiff's GPS unit on October 17, 2005. (Larson Dec. ¶¶ 1-8.)

1    Taken cumulatively, Caloyannides' testimony is unreliable.

2  Consistent with the role of the district court as "gatekeeper", *see*

3  *General Elec. Co. v. Joiner*, 522 U.S. 136 (1997), Defendants'

4  objections to the Caloyannides affidavit are sustained.

5    Caloyannides' affidavit offers legal conclusions.

6  Caloyannides did not limit his opinions to the functioning and

7  accuracy of GPS; rather, Caloyannides opined as to the legal

8  standards which he believed to be derived from the collective

9  bargaining agreement and what standards should have governed the

10  conduct of Pacific Bell and the Union.  He did not testify about

11  common practice concerning GPS data, but rather opined what was

12  necessary to satisfy the CBA.  Such testimony is a legal conclusion

13  and is an inappropriate matter for expert testimony.  *See U.S. v.*

14  *Scholl*, 166 F.3d 964, 973 (9th Cir. 1999) (excluding expert

15  testimony offering a legal conclusion); *Aguilar v. International*

16  *Longshoremen's Union*, 966 F.2d 443, 447 (9th Cir.1992) (noting

17  matters of law are for the court's determination, not that of an

18  expert witness); *see also Marx & Co. v. Diners' Club, Inc.*, 550

19  F.2d 505, 509-10 (2d Cir.1977) (expert testimony consisting of

20  legal conclusions inadmissible).  Caloyannides' inappropriately

21  expressed legal conclusions on the issue of terminations under the

22  CBA.  His opinions are inadmissible.

23    Finally, Defendants object that Caloyannides never reaches

24  conclusions on the ultimate issues, such as whether the Union

25  breached its duty of fair representation based on the GPS's

26  functionality. Defendants' argument has merit.  Caloyannides' only

27  opinion concerning the union is that they "were irresponsible to

28  dismiss Mr. Smith solely based on this @road information."  Pacific

Bell's decision to terminate Plaintiff has no bearing on whether the union breached the duty of fair representation.  A survey of the current case law reveals there are few cases in which expert testimony on a union's duty of fair representation was found necessary or useful to a jury.  *See Pease v. Production Workers of Chicago and Vicinity Local 707*, 2003 WL 22012678 at *4-5 (summarizing the case law on expert testimony in fair representation cases and finding that Plaintiff's expert "would not be useful in helping the jury understand whether the Union's conduct was so fair outside a wide range of reasonableness as to be actionable.").

Defendants' objections are, for the most part, sustained. Those portions of Caloyannides' affidavit violating Rule 702 or containing conjecture, speculation, or legal conclusions will not be considered.  Caloyannides's assertions that are not supported by the record, by a demonstration of expert knowledge or by corroborating evidence, are insufficient to establish a genuine issue of material fact.

### 3. Deemed Admissions

In his Statement of Disputed Facts, Plaintiff relies on a number of his Requests for Admissions, asserting that the facts requested to be admitted or denied are deemed admitted because Defendants Local 9333 and District 9 did not timely respond to them.  As discussed in the memorandum decision concerning Defendants' Local 9333's and District 9's motions for summary judgment, Plaintiff's argument is without merit.  The record establishes that Plaintiff's counsel agreed to an extension of time

1  to allow District 9 and Local 9333 to respond to his requests for

2  admission.   Plaintiff's assertions in his Statement of Disputed

3  Facts that the Requests for Admission are deemed admitted because

4  Defendants' failed to timely respond is without merit.[23]

5

6  B.   Plaintiff's Statement of Disputed Facts

7       On February 29, 2008, Plaintiff filed a Statement of Disputed

8  Facts (Doc. 72,("PSDF").) in support of his opposition to Union

9  Defendants' motion for summary judgment.   Plaintiff's 73-page

10 Statement of Disputed Facts is a series of excerpts from purported

11 "deemed admissions" and summarized testimony of affiants John

12 Mastrangelo and Michael Caloyannides.   The Statement of Disputed

13 Facts is organized according to witness and deemed admission.  Most

14 of Plaintiff's "disputed facts" are taken verbatim from the deemed

15 admissions and affidavits of Mastrangelo and Caloyannides.  (Fact

16 Nos. 6, 10-172, 297, pp. 3-45, 71). Plaintiff's Statement of

17 Disputed Facts includes disputed facts that are immaterial (e.g.,

18 Fact No. 79, Mr. Dan Devine brought a loaded gun to work, but there

19 were shotgun shells on the seat next to the weapon, so it is of

20 little consequence to me and my workers).   The Statement of

21 Disputed Facts contains non-enumerated statements unaffiliated to

22 the indexed "disputed facts" (e.g., Doc. 72, 72:26-72:27, why

23

24      [23] Assuming arguendo that Plaintiff's Requests for Admissions

25 are deemed admitted, those deemed admissions are limited to
   District 9; they are not binding on the other defendants such as

26 Pacific Bell, Adam Brown, or Shane Spencer.  *See Castiglione v.*

27 *U.S. Life Ins. Co. in City of New ...*, 262 F.Supp.2d 1015, 1030
   (D.Az.2003), citing *Riberglass, Inc. v. Techni-Glass Industs.,*

28 *Inc.*, 811 F.2d 565, 567 (11th Cir.1987).

1   would the thief have dropped the bike at the back of the van unless
2   he had to pick up the keys to gain entry?).   Approximately fifty
3   "disputed facts" concern Plaintiff's deposition testimony.   These
4   facts are either undisputed or irrelevant to the ultimate issues of
5   this case.

6       At issue in this action is the effect of Plaintiff's failure
7   in many instances to provide support for the allegations in the
8   Complaint, and now in his opposition to summary judgment.   The
9   Eastern   District   of   California's   local   rules   have   strict
10  requirements regarding opposing summary judgment motions; the local
11  rules require litigants to a response to the movant's statement of
12  undisputed material facts (admitting or denying the facts with
13  citation to the record).   See E.D. Cal. R. 56-260(b).   The opposing
14  party may also file a concise "Statement of Disputed Facts," of all
15  additional material facts as to which there is a genuine issue
16  precluding summary judgment or adjudication.   *Id*.   Here, Plaintiff
17  did not file a response to Defendants' statement of undisputed
18  facts; rather, he filed a "Statement of Disputed Facts" as part of
19  his opposition to Defendants' motion.

20      Such rules are specifically designed to avoid the procedural
21  morass that has developed in this case.   When Plaintiff does not
22  file an opposition to the movant's undisputed facts, instead filing
23  a 73-page statement of disputed facts, it is difficult to identify
24  the universe of actual, material, factual disputes and the legal
25  efficacy of such "disputed facts."   The time required to decipher
26  the filings in this case imposed on limited judicial resources.

27      In light of the rulings on the objections to the affidavits of
28  Mastrangelo (Fact Nos. 60-99) and Caloyannides (Fact Nos. 6, 10-

59), as well as the determination concerning the deemed admissions (Fact Nos. 100-172), Plaintiff's Statement of Disputed Facts is insufficient to create a genuine issue of material fact.[24]

C.   Plaintiff's Third Cause of Action.

Plaintiff can only maintain his cause of action for breach of contract against Pacific Bell if he can maintain the corresponding breach of duty of fair representation claim against District 9 and the Local Union. *See Stevens v. Moore Business Forms, Inc.*, 18 F.3d 1443, 1447 (9th Cir. 1994) (individual employee cannot sue employer for breach of CBA containing mandatory arbitration clause absent a breach of duty of fair representation by employee's union).

Because Plaintiff cannot sustain his Fifth Cause of Action for breach of the duty of fair representation against the union defendants in handling Plaintiff's grievance and their refusal to pursue his subsequent arbitration, Plaintiff cannot sustain his corresponding cause of action for breach of contract against Pacific Bell for the conduct which gave rise to his grievances. Summary judgment is therefore GRANTED for Pacific Bell, Alan Brown, and Shane Spencer on Plaintiff's Third Cause of Action as well.

D.   Plaintiff's Sixth Cause of Action.

Pacific Bell moves for summary judgment in connection with the Sixth Cause of Action for defamation by slander and "blacklisting,"

_____

[24]   The remaining portions of Plaintiff's Statement of Disputed Facts are either irrelevant to the issues of this case, repetitive, admitted (but not material), or otherwise objectionable.

1   which is alleged against all Defendants.

2       In his sixth claim for relief, Plaintiff alleges that
3   Defendants Brown and Spencer uttered false and unprivileged
4   publications regarding him to fellow employees.   Specifically,
5   Plaintiff states that Brown unlawfully disclosed to his former co-
6   workers that he had been fired for lying during an investigation.
7   Plaintiff also claims that Spencer told Brown that he doubted
8   Plaintiff's version of events and would use GPS to prove it.

9       Slander is defined as "a false and unprivileged publication,"
10  uttered orally, which tends directly to injure the subject in
11  respect to his office, profession, trade or business.   Cal. Civ.
12  Code § 46.   The statutory definition of slander is very broad and
13  includes any language which, on its face, has a natural tendency to
14  injure a person with respect to her occupation. *Semple v. Andrews*,
15  27 Cal. App. 2d 228, 232,(1938).

16      The claim of "blacklisting" evolved from California Labor Code
17  Sections 1050 and 1054, which allow an employee to initiate
18  litigation against his former employer for misrepresentations made
19  after he has left employment that preclude him from finding future
20  employment. *Newberry v. Pacific Racing Asso*., 854 F.2d 1142, 1151-
21  1153 (9th Cir. 1988).   Section 1050 of the California labor Code
22  provides that "any person ... who, after having discharged an
23  employee from the service of such person ... by any
24  misrepresentation prevents or attempts to prevent the former
25  employee from obtaining employment, is guilty of a misdemeanor."
26  Cal. Lab. Code § 1050.   Section 1054 authorizes a civil action to
27  recover for violations of section 1050. *Id.* § 1054.

28      Defendants contend, however, that the statements made to

49

1   Pacific Bell employees regarding Plaintiff's dismissal are subject
2   to the common interest privilege codified at Cal. Civ. Code 47(c).
3   The common interest privilege is a qualified privilege that applies
4   to a publication made without malice if "the communicator and the
5   recipient have a common interest and the communication is of a kind
6   reasonably calculated to protect or further that interest."
7   *Williams v. Taylor*, 129 Cal. App. 3d 745, 751 (Ct. App. 1982). The
8   privilege applies to a defendant acting to protect a pecuniary or
9   proprietary interest and between parties in a contractual,
10  business, or similar relationship. *Kashian v. Harriman*, 98 Cal.
11  App. 4th 892, 914 (Ct. App. 2002). California Courts have also
12  consistently interpreted the provision to apply in the employment
13  context. *Cuenca v. Safeway San Francisco Employees Fed. Credit
14  Union* 180 Cal. App. 3d 985, 995 (Ct. App. 1986).

15      "Application of the privilege involves a two-step analysis.
16  The defendant has the initial burden of showing the allegedly
17  defamatory statement was made on a privileged occasion, whereupon
18  the burden shifts to the plaintiff to show the defendant made the
19  statement with malice." *Id*. at 915. Malice is defined as "'a
20  state of mind arising from hatred or ill will, evidencing a
21  willingness to vex, annoy or injure another person.' Malice may
22  also be established by showing that defendants 'lacked reasonable
23  grounds to believe the statement true and therefore acted with
24  reckless disregard for plaintiff's rights.'" *Coastal Abstract
25  Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 736 (9th
26  Cir. 1999)(quoting *Lundquist v. Reusser*, 7 Cal. 4th 1193, 1204
27  (1994). Malice may not be inferred, however, from the
28  communication itself. *Noel v. River Hills Wilsons, Inc.*, 113 Cal.

1   App.4th 1363, 1370, 7 Cal. Rptr. 3d 216, 221 (Ct. App. 2003).

2        Here, Brown's statements were made to a fellow employee who,

3   during a staff meeting, asked why Plaintiff was terminated.  Brown

4   responded with the Company's reason for terminating Plaintiff -

5   that Plaintiff was dismissed for misrepresenting facts during an

6   investigation.   Plaintiff's  other  allegation  of  slander  is  a

7   communication made between two Pacific Bell employees - Plaintiff's

8   superiors,  Spencer  and  Brown  -  who  allegedly  stated  that  they

9   doubted Plaintiff's story.  Because these statements are presumed

10  to be privileged, Plaintiff has the burden to prove that the

11  statements  were  made  with  actual  malice  so  as  to  defeat  the

12  privilege. *Williams v Taylor*, 129 Cal. App. 3d 745, 752 (1982).

13  Specifically, Plaintiff must create a triable issue of fact whether

14  the statements were made with actual malice, i.e., "a state of mind

15  arising from hatred or ill will, evidencing a willingness to vex,

16  annoy, or injure another person." *Agarwal v Johnson*, 25 Cal. 3d

17  932, 944, 160 Cal. Rptr. 141, 603 P.2d 58 (1979).

18        In his complaint and opposition, Plaintiff fails to address §

19  47 and the requirement that the communication be made with "actual

20  malice."   Rather,  Plaintiff  provides  a  rote  incantation  of  the

21  legal elements and reiterates that Brown should not have told his

22  co-workers  the  reason  for  his  termination  and  that  Spencer  and

23  Brown were out to get him.  This is insufficient.  These statements

24  do not show that Brown or Spencer acted with "actual malice" when

25  making the statements at issue with respect to Plaintiff's claim

26  for  slander.    It  demonstrates  that  Brown  provided  candid  and

27  accurate responses to the questions posed by fellow Pacific Bell

28  employees and Spencer doubted Plaintiff's story.  This is subject

1  matter they had an interest in.  Plaintiff does not identify any
2  employer rule that makes his grievance proceeding confidential or
3  that prohibit persons at the company with knowledge of the reasons
4  for termination from giving a truthful response to an inquiry about
5  termination of Plaintiff's employment.  These were matters that the
6  communicator has an interest in within § 47 privilege.  Plaintiff
7  has failed to provide evidence demonstrating that there is a
8  triable issue of fact whether the statements were made with the
9  "actual malice" suffices to overcome the qualified privilege.

10      Plaintiff has failed to create a triable of fact whether the
11  disputed statements were made with actual malice or that they were
12  in any way related to a prospective employer.[25]  Defendants' motion
13  for summary judgment on the sixth cause of action is hereby
14  GRANTED.

15  //
16  //
17  //
18  //
19  //
20  //
21  //
22  //
23  //
24  //

25

26      [25] Plaintiff has no evidence from which it may be inferred that
27  Plaintiff applied for a position with the Napa Auto Parts store or
    that the unnamed technician acted on behalf of the Union Defendants
28  or Pacific Bell.

1

**VI.   CONCLUSION.**

2     For the reasons set forth above, Pacific Bell's, Shane

3 Spencer's, and Alan Brown's motion to strike is GRANTED and motion

4 for summary judgment is:

5     (1) GRANTED as to Plaintiff's third cause of action for breach

6 of contract.

7     (2) GRANTED as to Plaintiff's sixth cause of action for

8 slander and black listing.

9     Defendants shall submit a form of order consistent with this

10 memorandum decision within five (5) days of electronic service.

11 **IT IS SO ORDERED.**

12 **Dated:   August 11, 2009             /s/ Oliver W. Wanger       **
                                          **UNITED STATES DISTRICT JUDGE**
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28